Mark D. Sheridan
mark.sheridan@squirepb.com
Mark C. Errico
mark.errico@squirepb.com
Squire Patton Boggs (US) LLP
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973-848-5600

Attorneys for Plaintiff
National Union Fire Insurance
Company of Pittsburgh, Pa.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Plaintiff, <br><br> v. <br><br> BECTON, DICKINSON AND COMPANY, <br><br> Defendant. | Case No._____ <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), by and through its attorneys, Squire Patton Boggs (US) LLP, for its Complaint for Declaratory Judgment against Defendant Becton, Dickinson and Company ("BD"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, in which National Union seeks an adjudication of its rights and obligations under certain commercial umbrella liability insurance policies issued or allegedly issued to BD.

2. National Union seeks a declaration that it is not obligated to defend or indemnify BD in connection with two antitrust lawsuits entitled *Retractable Technologies Inc. v. Becton, Dickenson & Company, et al.*, Civil Action No. 5333*JG98 in the District Court of Brazoria County, Texas, and *Retractable Technologies Inc. v. Becton, Dickinson & Company, et al.*, Civil Action No. 5:01-cv-00036 in the United States District Court for the Eastern District of Texas, Texarkana Division (collectively, the "Underlying Actions").

3. The Underlying Actions were instituted against BD in 1998 and settled by it on July 2, 2004 for a payment of $100 million.  After more than 15 years following the filing of the first suit and nearly 10 years after the settlement, BD first notified National Union of the existence of the Underlying Actions and requested that National Union defend and indemnify it in connection with the defense and settlement of the Underlying Actions.

4. Declaratory Judgment is appropriate in this matter because BD seeks insurance coverage from National Union with respect to the Underlying Actions, and National Union disputes its obligation to provide such coverage.

## PARTIES

5. Plaintiff National Union is a Pennsylvania corporation with its principal place of business in New York, New York.

6. Upon information and belief, Defendant BD is a New Jersey corporation with its principal place of business in Franklin Lakes, New Jersey.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391 because BD resides in this District.

## THE UNDERLYING ACTIONS

### A. State Court Action

9. On August 3, 1998, Retractable Technologies Inc. ("RTI") commenced an antitrust lawsuit in Brazoria County, Texas against BD, Tyco International (U.S.) ("Tyco"), VHA, Inc. ("VHA"), and several Texas-based hospitals. That action was captioned *Retractable Technologies Inc. v. Becton, Dickenson & Company, et al.*, Civil Action No. 5333*JG98 (the "State Court Action").

10. RTI alleged that it "design[ed], develop[ed], manufacture[d], and market[ed] disposable syringes and blood collection tube holders," and that BD and Tyco were "large corporations that also manufacture[d] disposable syringes and blood collection tube holders."

11. RTI alleged that the named defendants "contracted among themselves and many other hospitals, doctors and other health care organizations to exclude RTI from selling [its] Safety Devices to hospitals, clinics and medical organizations throughout the United States."

12. RTI asserted claims against the named defendants for violation of the Texas Enterprise and Antitrust Act.

13. RTI sought common law and statutory damages, injunctive relief, and attorneys' fees and other costs.

14. Upon information and belief, RTI dismissed the State Court Action.

### B. Federal Court Action

15. On January 31, 2001, RTI commenced an antitrust lawsuit in the United States District Court for the Eastern District of Texas against BD and Tyco, as well as VHA, Novation

LLC, and Premier, Inc., which were alleged to be "administrative 'middlemen' between medical device manufacturers and healthcare providers." That action was captioned *Retractable Technologies Inc. v. Becton, Dickinson & Company, et al.*, Civil Action No. 5:01-cv-00036 (the "Federal Court Action"). (The State Court Action and the Federal Court Action are collectively referred to herein as the "Underlying Actions".)

16. RTI alleged that the named defendants "conspired to eliminate . . . competition . . . and maintain monopoly power among hospitals and healthcare providers," "tortuously interfered with [RTI's] existing prospective business relationships and contracts," and "used disparaging words against [RTI] and its products, and that such words [were] grounded in falsity and made with malice."

17. RTI asserted claims for (1) violation of state and federal antitrust laws, (2) conspiracy to monopolize trade, (3) tortious interference with business relationships, (4) business disparagement, and (5) common law conspiracy.

18. RTI sought actual, punitive, and statutory damages, as well as injunctive relief and attorneys' fees and other costs.

19. On July 2, 2004, RTI and BD executed a settlement agreement, whereby RTI agreed to dismiss its claims against BD in exchange for a payment of $100 million (the "2004 Settlement").

20. The 2004 Settlement also released BD and RTI "from any and all causes of action, demands, damages, costs, debts, liabilities, losses or claims of any kind" that either party had or would have in the future, but only to the extent such claims "accrued on or at any time prior to the [settlement]."

## THE POLICIES

21. National Union issued to named insured BD the following commercial umbrella liability insurance policies: Policy No. BE 3091479, originally effective from October 1, 1994 to October 1, 1996 and subsequently extended by endorsement to October 1, 1997 (the "1994-97 Policy"); Policy No. BE 9328155, originally effective from October 1, 1997 to October 1, 2000 but subsequently cancelled by endorsement effective October 1, 1999 (the "1997-99 Policy"); and Policy No. BE 3574259, effective from October 1, 1999 to October 1, 2002 (the "1999-2002 Policy") (collectively, the "Policies").

22. National Union also entered into a Casualty Facultative Reinsurance Agreement with Bedins Vermont Indemnity Company, Certificate No. 7540746, effective from October 1, 2002 to October 1, 2003 (the "2002-03 Reinsurance Policy").

23. The Polices and the 2002-03 Reinsurance Policy each contain various conditions and provisions precedent to coverage.

24. The 1994-97 Policy and the 1997-99 Policy contain, among others, the following provisions:

**VI.   Conditions**

*  *  *

**F.**   Duties in The Event Of An **Occurrence**, Claim Or **Suit**

    **1.**   You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy. To the extent possible, notice should include:

        **a.**   how, when and where the **Occurrence** took place;

        **b.**   the names and addresses of any injured persons and witnesses; and

        **c.**   the nature and location of any injury or damage arising out of the **Occurrence.**

  **2.**  If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

  **3.**  You and any other involved **Insured** must:

    **a.** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

    **b.** authorize us to obtain records and other information;

    **c.** cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

    **d.** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance applies.

  **4.**  No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

25. By endorsements, the 1994-97 Policy and the 1997-99 Policy contain the following provision applicable to Condition F:

> Knowledge of an Occurrence: It is understood and agreed that knowledge of an occurrence, claim or suit by any agent, servant or employee of the Insured shall not constitute knowledge by the Insured unless notice of such occurrence, claim or suit is received by the Director of Risk Management at corporate headquarters as stated in Item 1 of the Declarations Page.

26. The 1999-2002 Policy contains, among others, the following provisions:

**VII.** **CONDITIONS – APPLICABLE TO COVERAGES A AND B**

* * *

  **F.** **Duties in The Event of An Occurrence, Claim Or Suit**

    1. You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

      a. how, when and where the **Occurrence** took place;

      b. the names and addresses of any injured persons and any witnesses; and

      c. the nature and location of any injury or damage arising out of the **Occurrence.**

2. If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing:

      a. under Coverage A, as soon as practicable and in accordance with the reporting provisions of **Scheduled Underlying Insurance.**

      b. under Coverage B, as soon as practicable.

Written notice should be mailed or delivered to: AIG Excess Casualty Claim Department, 70 Pine Street, New York, NY 10270.

3. You and any other involved **Insured** must:

      a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

      b. authorize us to obtain records and other information;

      c. cooperate with us in the investigation, settlement or defense of the claim or **Suit**;

      d. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4. No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

27. By endorsement, the following provision was added to Condition F of the 1999-2002 Policy:

       5.      Your failure to give first report of a claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer.  However, you shall report any such **Occurrence** to us with a reasonable time once you become aware of such error.

28.    By endorsement, the 1999-2002 Policy contains the following provision:

> Knowledge of an **Occurrence**, claim or **Suit** by your agent, servant or employee shall not in itself constitute knowledge by you, unless the individual(s) designated in the schedule below has received notice of such **Occurrence**, claim or **Suit** from said agent, servant or employee.

29.    The 2002-03 Reinsurance Policy provides that National Union "will indemnify [Bedins Vermont Indemnity Company] those sums in excess of the Company Retention that it becomes legally obligated to pay by reason of the **Insured's** liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** that takes place during the Effective/Expiration Dates of this Reinsurance Agreement and is caused by an **Occurrence** happening anywhere in the world."

30.    The 2002-03 Reinsurance Policy further provides that "[t]he Company shall promptly notify the Reinsurer in writing, of any **Occurrence**, accident, event, claim, suit or circumstance, and any developments subsequent thereto, which in the opinion of the Company, without regard to consideration of liability, could reasonably involve this Reinsurance Agreement."

31.    The 2002-03 Reinsurance Policy further provides that "[w]hile the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and shall be given the opportunity, at its request, with the full cooperation of the Company, to appoint counsel at its own expense and to become associated with the Company and the Company's representatives in the defense of any claims, suits, or proceedings involving this Reinsurance Agreement."

## BD'S TENDER

32. By letter dated June 13, 2014, BD demanded that National Union provide coverage under the "insurance policies [it] sold to BD from October 1, 1994 to October 1, 2003" for "BD's defense and indemnity costs arising from the [Underlying Actions]."

33. BD further claimed that because the Underlying Actions "allege[d] claims potentially covered by [the] Policies" and BD "settled these claims for a payment of $100 million," National Union "must pay BD's defense and settlement costs arising from the [Underlying Actions]."

34. Prior to these demands by letter dated June 13, 2014, BD had neither notified National Union of, nor requested coverage for, the Underlying Actions.

## COUNT I—DECLARATORY JUDGMENT

**(No Duty to Defend or Indemnify BD under the Policies for the Underlying Actions)**

35. National Union repeats and reiterates each and every allegation contained in Paragraphs 1 through 34 as though fully set forth at length herein.

36. An actual controversy exists between National Union and BD concerning whether, and to what extent, National Union owes insurance coverage to BD in connection with the Underlying Actions.

37. Coverage for the Underlying Actions, if any, is barred because BD failed to perform its obligations and comply with the terms, conditions, and provisions of the Policies.

38. BD breached the notice provisions of the Policies by failing to advise National Union of the Underlying Actions until more than 15 years after the filing of the Underlying Actions and nearly 10 years after BD entered into the 2004 Settlement.

39. By failing to comply with the notice provisions of the Policies, BD deprived National Union of its contractual right to participate in the defense and settlement negotiations of any claim or suit which might create liability on the part of National Union under the terms of the Policies.  As a result, National Union was appreciably prejudiced.

40. BD breached the voluntary payments provisions of the Policies by voluntarily making payments, assuming obligations, and incurring expenses in connection with the Underlying Actions and the 2004 Settlement without National Union's consent.

41. By failing to comply with such provisions of the Policies, BD deprived National Union of its contractual right to evaluate and consent to any settlement of any suit which might create liability on the part of National Union under the terms of the Policies.

42. Pursuant to the terms of the Policies, National Union therefore has no duty to defend or indemnify BD in connection with the Underlying Actions.

43. National Union is entitled to a declaration that it has no obligation under the Policies to defend or indemnify BD in connection with the Underlying Actions.

## COUNT II—DECLARATORY JUDGMENT

### (N.J.S.A. § 2A:14-1 Bars BD's Claim for Coverage)

44. National Union repeats and reiterates each and every allegation contained in Paragraphs 1 through 43 as though fully set forth at length herein.

45. An actual controversy exists between National Union and BD concerning whether, and to what extent, National Union owes insurance coverage to BD in connection with the Underlying Actions.

46. BD failed to assert a claim for coverage until more than six years from the date its liability was established in connection with the Underlying Actions.

47. Pursuant to the applicable statute of limitations, N.J.S.A. § 2A:14-1, National Union is entitled to a declaration that BD's claim for insurance coverage in connection with the Underlying Actions is time-barred.

### COUNT III—DECLARATORY JUDGMENT

**(No Coverage for the Underlying Actions under the Policies)**

48. National Union repeats and reiterates each and every allegation contained in Paragraphs 1 through 47 as though fully set forth at length herein.

49. An actual controversy exists between National Union and BD concerning whether, and to what extent, National Union owes insurance coverage to BD in connection with the Underlying Actions.

50. BD's request for insurance coverage in connection with the Underlying Actions is barred and precluded, or limited in whole or in part, by the provisions, terms, exclusions, definitions, and limitations of the Policies.

51. National Union is entitled to a declaration that it has no obligation under the Policies to defend or indemnify BD in connection with the Underlying Actions.

### COUNT IV—DECLARATORY JUDGMENT

**(BD is not entitled to Coverage under the 2002-03 Reinsurance Policy)**

52. National Union repeats and reiterates each and every allegation contained in Paragraphs 1 through 51 as though fully set forth at length herein.

53. An actual controversy exists between National Union and BD concerning whether, and to what extent, National Union owes insurance coverage to BD under the 2002-03 Reinsurance Policy in connection with the Underlying Actions.

54. BD is not entitled to insurance coverage under the 2002-03 Reinsurance Policy in

connection with the Underlying Actions because the 2002-03 Reinsurance Policy is a Casualty Facultative Reinsurance Agreement with Bedins Vermont Indemnity Company.

55. Accordingly, National Union's obligations under the 2002-03 Reinsurance Policy, if any, apply only with respect to Bedins Vermont Indemnity Company.

56. National Union is entitled to a declaration that it has no obligation under the 2002-03 Reinsurance Policy to defend or indemnify BD in connection with the Underlying Actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff National Union respectfully requests entry of judgment in its favor and against BD as follows:

A. A declaration that National Union has no duty to defend or indemnify BD under the Policies in connection with the Underlying Actions;

B. A declaration that BD's claim for insurance coverage in connection with the Underlying Actions is barred by the applicable statute of limitations;

C. A declaration that National Union has no duty to defend or indemnify BD under the 2002-03 Reinsurance Policy in connection with the Underlying Actions; and

D. An award of costs and such other relief as this Court deems just and equitable under the circumstances.

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By:   /s Mark D. Sheridan
　　　Mark D. Sheridan
　　　mark.sheridan@squirepb.com
　　　Mark C. Errico
　　　mark.errico@squirepb.com
　　　Squire Patton Boggs (US) LLP

- 13 -

Dated: July 9, 2014

One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973-848-5600

Attorneys for Plaintiff
National Union Fire Insurance
Company of Pittsburgh, Pa.