# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | : | Case No. 2:14-cv-4318-CCC-JBC |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | Return Date:  May 18, 2015 |
|  | : |  |
| BECTON, DICKINSON AND COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

---

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

**McCarter & English, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Attorneys for Defendant
Becton, Dickinson and Company

Of Counsel
     Anthony Bartell
     Ira Gottlieb

On The Brief
     Anthony Bartell
     Mario S. Russo

ME1 20205033v.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF THE CASE ...................................................................................2

A.      National Union's Insurance Policies ..............................................................2

        1.      The 1994 and 1997 Policies ................................................................2

        2.      The 1999 Policy ..................................................................................3

B.      The Underlying Retractable Action................................................................5

C.      National Union's Coverage Denial ................................................................6

ARGUMENT

POINT I

THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE THE
INSURER DOES NOT, BECAUSE IT CANNOT, SATISFY THE HIGH STANDARDS
FOR SECURING A JUDGMENT ON THE PLEADINGS .......................................7

POINT II

THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE A
GENUINE FACTUAL ISSUE EXISTS AS TO WHETHER BD'S ALLEGED LATE
NOTICE APPRECIABLY PREJUDICED THE INSURER .......................................9

A.      National Union Can Escape Its Coverage Obligations Only By Proving It
        Suffered Appreciable Prejudice ....................................................................9

B.      A Genuine Issue Of Material Fact Exists As To Whether National Union Suffered
        Appreciable Prejudice...................................................................................14

POINT III

THIS COURT SHOULD DENY NATIONAL UNION'S MOTION FOR JUDGMENT
ON ITS 1999 POLICY BECAUSE THAT POLICY EXPLICITLY EXCUSES BD'S
UNINTENTIONAL FAILURE TO COMPLY WITH ITS TERMS AND CONDITIONS........19

POINT IV

THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE A
TRIABLE ISSUE EXISTS AS TO WHETHER BD BREACHED THE POLICIES'
NOTICE PROVISIONS...................................................................................21

A.      A Genuine Factual Issue Exists As To When BD's Risk Management Department
        Received Notice Of The Underlying Claim.................................................................21

B.      Triable Issues Prevent Preliminary Disposition Of The Pre-Notice Defense Cost
        Issue ..........................................................................................................................22

POINT V

THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE BD'S
COVERAGE CLAIM FALLS SQUARELY WITHIN THE POLICIES' INSURING
AGREEMENTS.............................................................................................................................23

POINT VI

THIS COURT SHOULD DENY NATIONAL UNION'S MOTION TO DISMISS BD'S
BAD FAITH COUNTERCLAIM BECAUSE A TRIABLE ISSUE EXISTS AS TO
WHETHER THE INSURER CONDUCTED A GOOD FAITH INVESTIGATION OF
BD'S COVERAGE CLAIM ..........................................................................................................28

CONCLUSION.............................................................................................................................30

ME1 20205033v.1

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Amerada Hess Corp. v. Zurich Ins. Co.,
   29 F. App'x 800 (3d Cir. 2002) .................................................................................. 26

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ...................................................................................................... 8

Berne v. Cont'l Ins. Co.,
   753 F.2d 27 (3d Cir. 1985) ......................................................................................... 25

British Ins. Co. of Cayman v. Safety Nat'l Cas.,
   335 F.3d 205 (3d Cir. 2003) ................................................................................. passim

Caldon, Inc. v. Peerless Ins.,
   217 F. App'x 176 (3d Cir. 2007) ................................................................................ 26

Caldwell Trucking PRP Grp. v. Spaulding Composites, Co.,
   890 F. Supp. 1247 (D.N.J. 1995) ............................................................................... 23

Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,
   817 F. Supp. 1136 (D.N.J. 1993) ......................................................................... passim

Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,
   89 F.3d 976 (3d Cir. 1996) .................................................................................... passim

Cont'l Ins. Co. v. Beecham, Inc.,
   836 F. Supp. 1027 (D.N.J. 1993) ....................................................................... 9, 14, 19

Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.,
   10 F.3d 144 (3d Cir. 1993) ......................................................................................... 20

CSR Ltd. v. Cigna Corp.,
   No. 95-2947 (HAA), 2006 WL 436113 (D.N.J. Feb. 22, 2006).............................. 15

Gulf Oil Corp. v. C.I.R.,
   914 F.2d 396 (3d Cir. 1990) ....................................................................................... 20

Haardt v. Farmer's Mut. Fire Ins. Co. of Salem Cnty.,
   796 F. Supp. 804 (D.N.J. 1992) ............................................................................ 10, 14

Hatco Corp. v. W.R. Grace & Co.,
   801 F. Supp. 1334 (D.N.J. 1992) .......................................................................... 16, 17

Jablonski v. Pan Am. World Airways, Inc.,
    863 F.2d 289 (3d Cir. 1988) ...................................................................................... 7, 8, 21

Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.,
    88 F. Supp. 2d 360 (D.N.J. 2000) ............................................................................ 16, 17, 18

Lake v. Aetna Life Ins. Co.,
    No. 13–5889, 2014 WL 5339325 (D.N.J. Oct. 21, 2014) ....................................................... 8

McDowell-Wellman Eng'g Co. v. Hartford Acc. & Indem. Co.,
    711 F.2d 521 (3d Cir. 1983) ................................................................................................ 25

New Hampshire Ins. Co. v. Diller,
    678 F. Supp. 2d 288 (D.N.J. 2010) ...................................................................................... 20

N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,
    No. 11-CV-0630 DMC JAD, 2011 WL 6887130 (D.N.J. Dec. 27, 2011) ............................ 30

Newmark v. Principi,
    283 F.3d 172 (3d Cir. 2002) ................................................................................................ 18

NN&R, Inc. v. One Beacon Ins. Grp.,
    No. CIV. 03-5011 (JBS), 2006 WL 1765077 (D.N.J. June 26, 2006) .................................. 29

Pennbarr Corp. v. Ins. Co. of N. Am.,
    976 F.2d 145 (3d Cir. 1992) ................................................................................................ 25

Permasteelisa CS Corp. v. Columbia Casualty Co.,
    377 F. App'x 260 (3d Cir. 2010) ..................................................................................... 23, 27

Pittston Co. v. Allianz Ins. Co.,
    905 F. Supp. 1279 (D.N.J. 1995) .................................................................................... 10, 18

Pittston Co. v. Sedgwick James of New York, Inc.,
    971 F. Supp. 915 (D.N.J. 1997) .......................................................................................... 18

Riehl v. Travelers Ins. Co.,
    772 F.2d 19 (3d Cir. 1985) .................................................................................................. 20

Ripepi v. Am. Ins. Cos.,
    349 F.2d 300 (3d Cir. 1965) ................................................................................................ 26

Rosenau v. Unifund Corp.,
    539 F.3d 218 (3d Cir. 2008) ......................................................................................... passim

SC Holdings, Inc. v. A.A.A. Realty Co.,
    935 F. Supp. 1354 (D.N.J. 1996) .................................................................................. passim

iv

Shelly v. Johns-Manville Corp.,
798 F.2d 93 (3d Cir. 1986) ..................................................................................7, 21

Transportes Ferreos de Venezuela II CA v. NKK Corp.,
239 F.3d 555 (3d Cir. 2001) .............................................................................passim

United States v. Manzo,
712 F.3d 805 (3d Cir. 2013) ....................................................................................14

**STATE CASES**

Allstate Ins. Co. v. Grillon,
105 N.J. Super. 254 (App. Div. 1969)......................................................................14

Am. Centennial Ins. Co. v. Warner-Lambert Co.,
293 N.J. Super. 567 (Ch. Div. 1995).......................................................................11

Bacon v. Am. Ins. Co.,
131 N.J. Super. 450 (Ch. Div. 1974)........................................................... 23, 26, 27

Baen v. Farmers Mut. Fire Ins. Co. of Salem Cnty.,
318 N.J. Super. 260 (App. Div. 1999)................................................................ 15, 26

Carmichael v. Bryan,
310 N.J. Super. 34 (App. Div. 1998).......................................................................20

Cooper v. Gov't Emp. Ins. Co.,
51 N.J. 86 (1968).......................................................................................... 9, 11, 21

DeMasi v. Lexington Ins. Co.,
No. A-3206-08T3, 2010 WL 3075674 (N.J. Super. Ct. App. Div. July 23, 2010)...........11, 13

Doto v. Russo,
140 N.J. 544 (1995)........................................................................................ 24, 25

Fielder v. Stonack,
141 N.J. 101 (1995)..................................................................................................14

Flomerfelt v. Cardiello,
202 N.J. 432 (2010)....................................................................................... 20, 25

GAF Corp. v. Hartford Accident & Indem. Co.,
No. L-980-97 (N.J. Super. Ct. Law Div., Somerset Cty., July 23, 1999) .............................29

Gazis v. Miller,
186 N.J. 224 (2006).........................................................................................passim

Gazis v. Miller,
378 N.J. Super. 59 (App. Div. 2005)........................................................................16

v

Gibson v. New Jersey Mfrs. Ins. Co.,
   261 N.J. Super. 579 (App. Div. 1993)...................................................................................20

Griggs v. Bertram,
   88 N.J. 347 (1982)........................................................................................................ 14, 26

Hager v. Gonsalves,
   398 N.J. Super. 529 (App. Div. 2008)....................................................................... 10, 11, 13

James v. Fed. Ins. Co.,
   5 N.J. 21 (1950)............................................................................................................21, 25

Jankowski v. Welch,
   135 N.J.L. 437 (Sup. Ct. 1947) ............................................................................................14

Judson v. Peoples Bank & Trust Co. of Westfield,
   17 N.J. 67 (1954)...................................................................................................................28

Kampf v. Franklin Life Ins. Co.,
   33 N.J. 36 (1960)...................................................................................................................25

Kievit v. Loyal Protective Life Ins. Co.,
   34 N.J. 475 (1961)................................................................................................................23

Martin v. Fireman's Fund Ins. Co.,
   No. A-4206-09T1, 2011 WL 1584333 (N.J. Super. Ct. App. Div. Apr. 28, 2011) ...............11

Med. Inter Ins. Exch. of N.J. v. Health Care Ins. Exch.,
   278 N.J. Super. 513 (App. Div. 1995)..................................................................................11

Morales v. Nat'l Grange Mut. Ins. Co.,
   176 N.J. Super. 347 (Ch. Div. 1980)....................................................................................15

New Jersey Eye Center, P.A v. Princeton Ins. Co.,
   2004 WL 6004458 (N.J. Super. Ct. Law Div. Mar. 16, 2004) .............................................11

New Jersey Eye Center, P.A. v. Princeton Ins. Co.,
   394 N.J. Super. 557 (App. Div. 2007)..................................................................................11

Ohaus v. Cont'l Cas. Ins. Co.,
   292 N.J. Super. 501 (App. Div. 1996)..........................................................................passim

Peskin v. Liberty Mut. Ins. Co.,
   219 N.J. Super. 479 (App. Div. 1987)..........................................................................passim

Pickett v. Lloyd's,
   131 N.J. 457 (1993)..............................................................................................................28

vi

President v. Jenkins,
    180 N.J. 550 (2004)...........................................................................................23

Princeton Gamma-Tech, Inc. v. Hartford Ins. Grp.,
    No. SOM-L-1289-91 (N.J. Super. Ct. Law Div., Somerset Cty., June 5, 1997) ....................29

Prudential Prop. & Cas. Ins. Co. of N.J. v. Nardone,
    332 N.J. Super. 126 (Ch. Div. 2000)....................................................................10

Royal Ins. Co. v. Rutgers Cas. Ins. Co.,
    271 N.J. Super. 409 (App. Div. 1994)..................................................................25

Sandler v. N.J. Realty Title Ins. Co.,
    36 N.J. 471 (1962)..........................................................................................24

Sauer v. Preserver Ins. Grp.,
    No. A-6134-08T1, 2010 WL 2560035 (N.J. Super. Ct. App. Div. May 27, 2010) ...............11

Sealed Air Corp. v. Royal Indem. Co.,
    404 N.J. Super. 363 (App. Div.), certif. denied, 196 N.J. 601 (2008) ...................................24

Shebar v. Sanyo Bus. Sys. Corp.,
    111 N.J. 276 (1988)........................................................................................20

Simonetti v. Selective Ins. Co.,
    372 N.J. Super. 421 (App. Div. 2004)...........................................................20, 25

SL Industries, Inc. v. Am. Motorists Ins. Co.,
    128 N.J. 188 (1992)....................................................................................22, 23

Solvents Recovery Serv. of New England v. Midland Ins. Co.,
    218 N.J. Super. 49 (App. Div. 1987)...........................................................passim

Twp. of Irvington v. Coregis Ins. Co.,
    No. A-2434-08T3, 2010 WL 1330022 (N.J. Super. Ct. App. Div. Apr. 7, 2010) .................11

Zuckerman v. Nat'l Union Fire Ins. Co.,
    100 N.J. 304 (1985).........................................................................................11

**STATE STATUTES**

N.Y. Ins. Law § 3420(c)(2)(B) ...............................................................................18

**RULES**

Rule 12(c) ...................................................................................................passim

**OTHER AUTHORITIES**

5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1368 (3d ed. 2004) ....................................................................................................................8

## PRELIMINARY STATEMENT

National Union asks this Court to disregard a half century of settled New Jersey "late notice" law.  Despite National Union's best efforts at linguistic alchemy, New Jersey law remains clear as crystal that an insurer can escape coverage based on its policyholder's late notice only if the insurer proves such notice caused it appreciable prejudice.  National Union gives the Court no legitimate reason to ignore this rock solid precedent.

National Union cannot prove it suffered appreciable prejudice here.  National Union irretrievably lost no substantial rights arising from BD's conduct.  The insurer cannot point to a single witness or document no longer available for deposition or review.  The voluminous underlying case files, in fact, remain available for National Union's inspection.  National Union also cannot possibly prove it likely would have defended successfully against the underlying action.  BD litigated and resolved the underlying action using one of the best law firms in the country.  National Union, in any event, would have refused to associate in BD's defense of the underlying action.  The insurer -- had it received earlier notice of the underlying action -- would have denied coverage based upon the numerous other coverage defenses articulated in its belated coverage declination letter and in its Complaint and Answer to BD's Counterclaims.  National Union, in short, suffered no prejudice from BD's alleged late notice.

A material fact issue exists as to whether BD even breached the policies' notice provisions.  The policies' Knowledge of Occurrence Endorsements require BD to provide notice of an occurrence to National Union only after specified BD individuals/entities receive notice of the occurrence.  National Union neither demonstrates, nor even alleges, these individuals/entities received notice of the underlying Personal Injury and/or Advertising Injury claim for which BD seeks coverage.

National Union, moreover, ignores completely its Unintentional Errors and Omission

1

Endorsement.  This Endorsement excuses BD's unintentional failure to comply with the 1999 policy's terms and/or conditions, including any applicable late notice condition.  National Union neither demonstrates, nor even alleges, BD intentionally failed to comply with any policy term and/or condition.  This Court cannot draw an inference of intent against non-movant BD on this Rule 12(c) motion.

With its other arguments floundering, National Union attempts to rewrite its insuring agreements to exclude BD's coverage claim.  The insuring agreements require National Union to pay all sums BD becomes "legally obligated to pay."  BD indisputably became "legally obligated to pay" the underlying plaintiff after settling its hotly contested lawsuit.

National Union, lastly, cannot dismiss BD's bad faith Counterclaim because, at the very least, a genuine issue of material facts exists as to whether National Union conducted a good faith investigation of BD's coverage claim.

## STATEMENT OF THE CASE

Policyholder Becton, Dickinson and Company ("BD") seeks coverage from plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") for defense and indemnity costs arising from underlying false advertising/product disparagement claims.

### A.     National Union's Insurance Policies

National Union sold to BD, for millions of dollars in premiums, commercial umbrella insurance policies.  These policies impose on National Union no duty to defend BD against underlying lawsuits.  Although the policies allow National Union to associate in BD's defense of underlying lawsuits, National Union would have rejected such association here.  Infra at 16.

### 1.     The 1994 and 1997 Policies

BD purchased from National Union the following policies:

- BE 3091479, effective October 1, 1994 through October 1, 1997 (hereinafter, "1994 Policy"); and

- BE 9328155, effective October 1, 1997 through October 1, 1999 (hereinafter, "1997 Policy").

The 1994 and 1997 Policies provide coverage to BD for, among other things, claims alleging Personal Injury and Advertising Injury.  See Certification of Anthony Bartell ("Bartell Cert."), Exhibit ("Ex.") A.  The Policies specifically require National Union to:

> pay on behalf of [BD] those sums in excess of the Retained Limit that [BD] becomes legally obligated to pay by reason of liability imposed by law or assumed by [BD] under an **Insured Contract** because of . . . **Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.

Id.

The 1994 and 1997 Policies contain Knowledge of Occurrence Endorsements, which provide that:

> knowledge of an occurrence, claim or suit by any agent, servant or employee of [BD] shall not constitute knowledge by [BD] unless notice of such occurrence, claim or suit is received by the Director of Risk Management.

See Bartell Cert., Ex. B.[1]  BD, therefore, must provide notice of an occurrence to National Union only after BD's "Director of Risk Management" receives notice thereof.

## 2. The 1999 Policy

National Union also sold to BD Commercial Umbrella Liability Policy number BE 3574259, effective October 1, 1999 through October 1, 2002 (hereinafter, "1999 Policy").  The

---

[1]     These Endorsements replace Condition F of the 1994 and 1997 Policies, which sets forth BD's "Duties In The Event Of An **Occurrence**, Claim or **Suit**."

1999 Policy divides coverage into two parts: Coverage A and Coverage B.  See Bartell Cert., Ex. C.[2]

Coverage A "follow[s] the terms, definitions, conditions and exclusions of" underlying Lumbermens Mutual Casualty Company primary policy number 5AA 045 369-00, effective October 1, 1999 through October 1, 2003 (hereinafter, "LMC Policy").  See id.[3] Coverage A requires National Union to:

> pay on behalf of [BD] those sums in excess of the total applicable limits of [the LMC Policy] that [BD] becomes legally obligated to pay as damages provided the damages would be covered by [the LMC Policy] . . . .

Id.

The LMC Policy provides coverage to BD for, among other things, claims alleging Personal Injury and Advertising Injury.  See Bartell Cert., Ex. D.  The LMC Policy provides specifically that LMC (and, therefore, National Union) must:

> pay those sums that [BD] becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.

Id.

The LMC Policy contains a Knowledge/Notice of Occurrence Endorsement, which requires that:

> [i]n the event of an occurrence, notice containing particulars sufficient to identify you and also, reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured party or parties and of available witnesses, . . . be given by you to us, or any of our

---

[2]    BD believes the underlying claim falls within Coverage A of the 1999 Policy.  If, however, this Court finds Coverage A inapplicable, then BD seeks reimbursement under Coverage B.

[3]    The 1999 Policy's Coverage B provides backup coverage to BD for claims, including Personal Injury and Advertising Injury claims, not covered by the LMC Policy.  See Bartell Cert., Ex. C.

> authorized agents, as soon as practicable, after such notice has
> been received by the Becton Dickinson Corporate Risk
> Management Department.

Bartell Cert., Ex. E.  This Endorsement also states that:

> knowledge of an occurrence by the agent, servant or employee of
> yours shall not in itself constitute knowledge by you unless the
> Becton Dickinson and Company Director of Corporate Risk
> Management shall have received such notice.

Id.[4]  BD, therefore, must provide notice of an occurrence to National Union only after BD's

"Corporate Risk Management Department" and/or "Director of Corporate Risk" receives notice

of such occurrence.  See id.

The LMC Policy, moreover, contains an Unintentional Errors and Omission

Endorsement, which states:

> that inadvertent error to comply with policy terms and/or
> conditions will not invalidate or affect coverage.

See Bartell Cert., Ex. F.[5]  National Union, therefore, cannot deny BD coverage without proving

BD intentionally failed to comply with the Policy's terms or conditions.

BD hereinafter refers collectively to the 1994 Policy, the 1997 Policy, the 1999 Policy,

and the LMC Policy as the "Policies."

**B.      The Underlying Retractable Action**

Retractable Technologies, Inc. ("RTI") sued BD and others in the United States District

Court for the Eastern District of Texas in an action captioned *Retractable Technologies, Inc. v.*

---

[4]      This Endorsement replaces Conditions 2(a), (b), (c) and (d) of the LMC Policy, and the
1999 Policy's corresponding conditions, which set forth BD's "Duties In The Event Of An
Occurrence Offense, Claim or Suit."

[5]      This Endorsement purportedly modifies coverage under the LMC Policy's
"Products/Completed Operations Liability Coverage Part."  See Bartell Cert., Ex. F.  Because,
however, the LMC Policy contains no such Coverage Part, the Endorsement must apply to the
entire LMC Policy.

*Becton, Dickinson and Company et al.*, Civil Action No. 5:01-CV-036, ("Underlying Action"). RTI alleged BD engaged in conduct covered by the Personal Injury and/or Advertising Injury provisions of the Policies.  BD incurred substantial defense and indemnity costs litigating and ultimately settling the Underlying Action.

## C.      National Union's Coverage Denial

By letter dated June 13, 2014, BD asked National Union to pay its defense and indemnity costs arising from the Underlying Action.  See Bartell Cert., Ex. H.  Twenty-six (26) days after BD sent its coverage request, National Union filed this action.  National Union filed this action: (a) without first communicating substantively with BD by telephone or letter; (b) without first requesting from BD a single document or other piece of information relating to the Underlying Action or BD's coverage claim; (c) without first sending BD a reservation of rights or declination of coverage letter; and (d) without first conducting the objectively reasonable investigation of BD's coverage claim required by New Jersey law.

National Union seeks a judgment declaring it need provide no coverage for the Underlying Action.  The Complaint alleges BD provided late notice to National Union of the Underlying Action.  The Complaint alleges further that notwithstanding BD's alleged late notice, coverage for the Underlying Action:

> is barred and precluded, or limited in whole or in part, by the provisions, terms, exclusions, definitions, and limitations of the Policies.

Compl. ¶ 50 (Bartell Cert., Ex. I).

BD Counterclaimed against National Union for a declaration of coverage on August 19, 2014.  National Union's Answer to BD's Counterclaim asserts (14) Affirmative Defenses, including:

> Coverage under the Policies is barred, in whole or in part, because the Underlying Action does not allege damages because of Advertising Injury that take place during the Policy Period and are caused by an occurrence.

Pl.'s Answer to Def.'s Countercls. 9 (Bartell Cert., Ex. J).

On August 11, 2014, fifty-nine (59) days after BD sent its coverage request, and thirty-three (33) days after National Union filed this action, the insurer finally sent to BD a sixteen (16) page, single spaced letter denying coverage for theUnderlying Action.  See Bartell Cert., Ex. K. National Union's coverage declination letter articulates numerous grounds for denying coverage. The insurer, for just one example, reiterates its defense that the Underlying Action does "not allege damages because of **Advertising Injury** that take place during the Policy Period and are caused by an **Occurrence** under the 1994 and 1997 Policies."  See id. at 3.

## ARGUMENT

### POINT I

### THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE THE INSURER DOES NOT, BECAUSE IT CANNOT, SATISFY THE HIGH STANDARDS FOR SECURING A JUDGMENT ON THE PLEADINGS

This Court cannot grant National Union's motion for judgment on the pleadings unless the insurer clearly establishes: (1) "no material issue of fact remains to be resolved"; and (2) it deserves "judgment as a matter of law."  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988)); accord SC Holdings, Inc. v. A.A.A. Realty Co., 935 F. Supp. 1354, 1360 (D.N.J. 1996) (citing Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986)).  National Union fails to satisfy either of these elements.

This Court analyzes National Union's motion by "viewing the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to" BD.  Rosenau,

539 F.3d at 221 (quoting Jablonski, 863 F.2d at 290–91); accord SC Holdings, Inc., 935 F. Supp. at 1360.  National Union cannot prevail if BD's pleading "raises issues of fact that, if proved, would defeat recovery."  Lake v. Aetna Life Ins. Co., No. 13–5889 (JEI/KMW), 2014 WL 5339325, at *3 (D.N.J. Oct. 21, 2014) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004)).

Courts grant Rule 12(c) motions only if the non-movant could secure "no relief . . . under any set of facts that could be proved."  Doe v. Div. of Youth & Family Servs., 148 F. Supp. 2d 462, 497 (D.N.J. 2001) (quoting Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991)).  The Court need not decide whether the non-moving party ultimately will prevail at trial but only whether it can offer evidence to support its claims.  See Payan v. GreenPoint Mortg. Funding, Inc., 681 F. Supp. 2d 564, 568 (D.N.J. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)); Doe, 148 F. Supp. 2d at 497.

This Court can grant National Union judgment on the pleadings only by violating each of the above principles.  National Union can prevail only if the Court (among other things):

- draws numerous inferences against the non-movant BD, including that BD acted in bad faith by failing allegedly to provide timely notice of the Underlying Action;

- views the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to National Union;

- disregards completely (1) numerous policy Endorsements sold to BD by National Union, and (2) the terms of the LMC Policy, to which the 1999 Policy follows form; and

- accepts as true the insurer's sweeping and unsupported legal conclusions.

## POINT II

## THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE A GENUINE FACTUAL ISSUE EXISTS AS TO WHETHER BD'S ALLEGED LATE NOTICE APPRECIABLY PREJUDICED THE INSURER

### A.   National Union Can Escape Its Coverage Obligations Only By Proving It Suffered Appreciable Prejudice

National Union asks this Court to disregard fifty (50) years of settled New Jersey law confirming it can escape coverage only by proving BD's alleged late notice caused it appreciable prejudice.[6]   See, e.g., Cont'l Ins. Co. v. Beecham, Inc., 836 F. Supp. 1027, 1047 (D.N.J. 1993) (citing New Jersey cases requiring the insurer to prove appreciable prejudice); British Ins. Co. of Cayman v. Safety Nat'l Cas., 335 F.3d 205, 212 (3d Cir. 2003); Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 561 (3d Cir. 2001); Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 89 F.3d 976, 996 (3d Cir. 1996); Cooper v. Gov't Emp. Ins. Co., 51 N.J. 86, 94 (1968); Peskin v. Liberty Mut. Ins. Co., 219 N.J. Super. 479, 481 (App. Div. 1987).[7]

New Jersey law also requires National Union to prove appreciable prejudice to prevail on those policy provisions relating to notice.  The Appellate Division, in Solvents Recovery Service of New England v. Midland Insurance Co., 218 N.J. Super. 49 (App. Div. 1987), confirmed an insurer must prove it suffered appreciable prejudice resulting from its policyholder's alleged breach of the policy provisions requiring the insured to:

- • provide "written notice of an occurrence" as soon as practicable;

---

[6]   BD agrees with National Union that this Court must interpret the Policies under New Jersey law.  See Pl.'s Mot. J. Pleadings 8, Dkt. #28.

[7]   Peskin, contrary to plaintiff's mistaken contention (Pl.'s Mot. J. Pleadings 17–18, Dkt. #28): (1) held a policyholder's 11.5-year delay in providing notice to its excess insurer did not constitute prejudice as a matter of law; and (2) remanded the case to determine whether the excess insurer, in fact, had suffered appreciable prejudice.  Id. at 481–83.

- "immediately forward to the [insurer] every relevant document";

- "cooperate with the [insurer]"; and

- "not, except at [the insured's] own cost, voluntarily make any payment, assume any obligation or incur any expense other than first aid to others at the time of accident."

Id. at 53–55; accord Prudential Prop. & Cas. Ins. Co. of N.J. v. Nardone, 332 N.J. Super. 126, 138 (Ch. Div. 2000); Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 817 F. Supp. 1136, 1160 (D.N.J. 1993), aff'd in part and remanded, 89 F.3d 976 (3d Cir. 1996).[8]

The appreciable prejudice requirement applies equally to the situation where the policyholder settles the underlying action without the insurer's consent.  See Pittston Co. v. Allianz Ins. Co., 905 F. Supp. 1279, 1295 (D.N.J. 1995), rev'd and remanded o.g. sub nom., Pittston Co. Ultramar Am. v. Allianz Ins. Co., 124 F.3d 508 (3d Cir. 1997); see also NKK Corp., 239 F.3d at 562–63 (applying appreciable prejudice doctrine and finding no such prejudice where insured settled the underlying case before notice); Chem. Leaman Tank Lines, Inc., 89 F.3d at 996–97 (applying appreciable prejudice doctrine and finding no such prejudice where insured tendered notice years after settling with the EPA).

National Union does not, because it cannot, point to a single apposite case which requires this Court to reverse five decades of New Jersey appreciable prejudice law.  The insurer, instead, relies on easily distinguishable opinions dealing not with "occurrence" policies, like those sold by National Union, but with "claims-made" policies.[9]  These opinions explain in detail the

---

[8]    Accord Haardt v. Farmer's Mut. Fire Ins. Co. of Salem Cnty., 796 F. Supp. 804, 809 (D.N.J. 1992); Hager v. Gonsalves, 398 N.J. Super. 529, 534 (App. Div. 2008); Ohaus v. Cont'l Cas. Ins. Co., 292 N.J. Super. 501, 511 (App. Div. 1996).

[9]    Claims-made policies respond to claims made against the insured, and reported by the policyholder to the insurer, during the policy period.  Notice, therefore, constitutes the triggering event under the policies.  National Union sold occurrence policies to BD which apply to bodily

10

courts' reasons for withholding application of the appreciable prejudice doctrine to claims-made policies.  See Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304 (1985); Gazis v. Miller, 186 N.J. 224, 229 (2006); Med. Inter Ins. Exch. of N.J. v. Health Care Ins. Exch., 278 N.J. Super. 513, 521 (App. Div. 1995).[10]

The very cases cited by National Union confirm New Jersey courts always apply the appreciable prejudice doctrine to occurrence policies.  See, e.g., Gazis, 186 N.J.at 228 ("[A]n insurance carrier may not forfeit coverage unless the carrier proves both 'a breach of the notice provision and a likelihood of appreciable prejudice.'"); Cooper, 51 N.J. at 94 ("[T]he carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice.").[11]

New Jersey courts indisputably apply the appreciable prejudice doctrine to scenarios not involving the "compensation [of] tort victims in automobile accidents."  See Pl.'s Mot. J. Pleadings 16–17, Dkt. #28.  The appreciable prejudice standard applies universally and

---

injury or property damage which occurs during the policy period or to an "offense" which BD allegedly commits during the policy period.  See Bartell Cert., Ex. A, C, D.

[10]    National Union discusses extensively New Jersey Eye Center, P.A. v. Princeton Insurance Co., 394 N.J. Super. 557 (App. Div. 2007), without once mentioning to this Court that the opinion deals exclusively with a professional liability insurance policy which provided coverage on a "claims-made" basis.  See New Jersey Eye Center, P.A v. Princeton Ins. Co., 2004 WL 6004458 (N.J. Super. Ct. Law Div. Mar. 16, 2004) (related decision confirming policy provided coverage on a claims-made basis).  That case, therefore, simply bears no relevance to this Court's analysis of National Union's occurrence-based policies.

[11]    Accord Martin v. Fireman's Fund Ins. Co., No. A-4206-09T1, 2011 WL 1584333, at *1– 2 (N.J. Super. Ct. App. Div. Apr. 28, 2011); DeMasi v. Lexington Ins. Co., No. A-3206-08T3, 2010 WL 3075674, at *9–10 (N.J. Super. Ct. App. Div. July 23, 2010); Sauer v. Preserver Ins. Grp., No. A-6134-08T1, 2010 WL 2560035, at *1 (N.J. Super. Ct. App. Div. May 27, 2010); Twp. of Irvington v. Coregis Ins. Co., No. A-2434-08T3, 2010 WL 1330022, at *3 (N.J. Super. Ct. App. Div. Apr. 7, 2010); Hager, 398 N.J. Super. at 534; Ohaus, 292 N.J. Super. at 511; Peskin, 219 N.J. Super. at 481; Solvents Recovery Serv. of New England, 218 N.J. Super. at 53– 55 (App. Div. 1987); Am. Centennial Ins. Co. v. Warner-Lambert Co., 293 N.J. Super. 567, 575 n.2 (Ch. Div. 1995).

ME1 20205033v.1

uniformly, regardless of the factual context and/or the insured's (or the underlying claimant's) financial wellbeing. See, e.g., NKK Corp., 239 F.3d 555 (applying appreciable prejudice doctrine where the underlying action and settlement involved multiple commercial entities); Gazis, 186 N.J. at 229–30 (recognizing "Cooper's principles have been applied in a variety of contexts" and citing cases).

National Union distorts Gazis v. Miller, 186 N.J. 224 (2006), to manufacture support for its coverage-defeating position. The Court there dealt only with the question of whether an "occurrence-based excess liability" insurer must prove appreciable prejudice to escape coverage based on late notice. Id. at 225. The Court answered with a resounding "yes," confirming the Appellate Division's earlier ruling in Peskin v. Liberty Mutual Insurance Co., 219 N.J. Super. 479 (App. Div. 1987). Gazis, in short, requires National Union to prove BD's alleged late notice caused it appreciable prejudice.

National Union nevertheless attempts to make a silk purse out of a sow's ear. The insurer ignores completely the existence of policy language, not present here, which complicated the Gazis Court's analysis. The policy there, unlike National Union's Policies, required the insured to provide notice "no more than 120 days after" the accident. Id. at 226. This policy language added to the Gazis policy a claims-made/reported dimension missing entirely from National Union's excess policies. The Court nevertheless required the insurer to prove appreciable prejudice arising from notice given well after this 120 reporting period.

The Gazis Court also never conditioned application of the appreciable prejudice rule on the presence of an automobile accident victim. No legitimate coverage distinction exists between auto accident victims and, as here, a competitor and the general buying public allegedly harmed by BD's alleged false advertising. A "strong public policy" still exists "in favor of

12

spreading the risk of protecting [such] innocent victims." Id. at 232. It also makes no difference for coverage purposes that BD possessed the financial wherewithal to settle the Underlying Action without insurer money. The Gazis Court rejected the insured's size and sophistication as a relevant factor in its analysis. Id.[12] Gazis, in short, supports denial of National Union's motion for judgment on the pleadings.

This Court should reject National Union's invitation to graft a "good faith" precondition on the appreciable prejudice rule. While some lower courts discuss generally "good faith," none of those courts -- and certainly not the New Jersey Supreme Court -- ever requires a policyholder to demonstrate good faith to secure the appreciable prejudice standard. See Solvents Recovery Serv. of New England, 218 N.J. Super. at 54–56 (noting "no allegation that the insured acted other than in good faith throughout," but not requiring that the insured demonstrate its "good faith," and remanding case to afford insurer opportunity to prove it suffered appreciable prejudice); DeMasi, 2010 WL 3075674, at *10 (noting that "[a]rguably, the absence of good faith by plaintiff renders it unnecessary for us to apply the 'appreciable prejudice' rule," but nevertheless applying the rule); Hager, 398 N.J. Super. at 534, 538 (applying appreciable prejudice rule after noting "we do not need to explore [the good faith] suggestion further to decide the present appeal."); Ohaus, 292 N.J. Super. at 511 (noting that "where the insured has acted in good faith, an exclusion barring coverage for the insured's voluntary assumption of an obligation only applies where the insurer can establish 'appreciable prejudice,'" but not requiring that the insured demonstrate it acted in "good faith," and remanding case for appreciable prejudice determination).

---

[12]    National Union cannot credibly contend the Gazis Court would have ruled differently had the Archdiocese paid Gazis in full rather than assign him its coverage rights against the excess insurer.

Even if the New Jersey Supreme Court has modified its appreciable prejudice holdings to add a "good faith" requirement (which it has not), this Court, on this Rule 12(c) motion, cannot draw an inference that BD acted in bad faith.  See Rosenau, 539 F.3d at 221.  "Bad faith" means "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will."  United States v. Manzo, 712 F.3d 805, 811 (3d Cir. 2013) (citations omitted).

National Union neither demonstrates, nor even alleges, BD ever acted with dishonest purpose or ill will.  See Griggs v. Bertram, 88 N.J. 347, 366 (1982) (noting "the general assumption that in the absence of contrary evidence, persons act fairly, honestly, and in good faith.").  Any good faith issue, in any event, raises an inherently factual question this Court cannot resolve on the pleadings.  See New Jersey Title Ins. Co. v. Caputo, 163 N.J. 143, 156 (2000); see also Fielder v. Stonack, 141 N.J. 101, 132 (1995) (holding good faith determination must await "a presentation of all the evidence through direct and cross-examination and until an opportunity has been afforded to observe the demeanor of the witness[ ]." (citation omitted)); accord Jankowski v. Welch, 135 N.J.L. 437, 439 (Sup. Ct. 1947).

**B.    A Genuine Issue Of Material Fact Exists As To Whether National Union Suffered Appreciable Prejudice**

National Union bears the burden of proving BD's alleged late notice caused it appreciable prejudice.  Safety Nat'l Cas., 335 F.3d at 212 (citing Cooper, 51 N.J. 86); Beecham, Inc., 836 F. Supp. at 1048 (citing New Jersey cases); Haardt, 796 F. Supp. at 809; Solvents Recovery Serv. of New England, 218 N.J. Super. at 55.  The issue presents "a  factual question unique to each case."  Beecham, Inc., 836 F. Supp. at 1048; Allstate Ins. Co. v. Grillon, 105 N.J.

Super. 254, 260 (App. Div. 1969); Morales v. Nat'l Grange Mut. Ins. Co., 176 N.J. Super. 347, 351 (Ch. Div. 1980).

National Union can demonstrate appreciable prejudice only by proving: (1) it irretrievably lost substantial rights; **and** (2) it likely would have defended successfully against the Underlying Action. Safety Nat'l Cas., 335 F.3d at 212; NKK Corp., 239 F.3d at 561; Chem. Leaman Tank Lines, Inc., 89 F.3d at 996; CSR Ltd. v. Cigna Corp., No. 95-2947 (HAA), 2006 WL 436113, at *15 (D.N.J. Feb. 22, 2006) (citing Beecham, Inc., 836 F. Supp. at 1048); Baen v. Farmers Mut. Fire Ins. Co. of Salem Cnty., 318 N.J. Super. 260, 271 (App. Div. 1999) (citing Morales, 176 N.J. Super. 347)).

National Union cannot prove appreciable prejudice with "mere conjecture or suspicions." NKK Corp., 239 F.3d at 561 (citing Molyneaux v. Molyneaux, 230 N.J. Super. 169 (App. Div. 1989)). National Union, moreover, "must establish more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim." Chem. Leaman Tank Lines, Inc., 817 F. Supp. at 1158 (quoting Morales, 176 N.J. Super. at 355). National Union "must show that substantial rights have been *irretrievably* lost." Id. (emphasis in original); accord NKK Corp., 239 F.3d at 561 (quoting Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc., 88 F. Supp. 2d 360, 368 (D.N.J. 2000)). Such rights include the availability of witnesses, the ability to discover information regarding the covered incident(s), the preparation and preservation of demonstrative and illustrative evidence, and the ability of experts to opine on the dispute. Chem. Leaman Tank Lines, Inc., 817 F. Supp. at 1158 (quoting Morales, 176 N.J. Super. at 355); accord NKK Corp., 239 F.3d at 561.

National Union also must demonstrate a "likelihood of success . . . in defending against the underlying claim." Chem. Leaman Tank Lines, Inc., 817 F. Supp. at 1158 (requiring that the

15

insurer "show the likelihood that it would have had a meritorious defense had it been informed of the accident in a timely fashion.") (quoting Morales, 176 N.J. Super. at 355–56); accord Kitchnefsky, 88 F. Supp. 2d at 368–70; Solvents Recovery Serv. of New England, 218 N.J. Super. at 55.

National Union fails to prove the appreciable prejudice necessary to escape its coverage obligations.  It bears repeating that National Union sold to BD excess policies which state explicitly that the insurer "will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured." See, e.g., Bartell Cert., Ex. A.  Although National Union can participate in its policyholder's defense, the insurer never would have associated in BD's litigation of the Underlying Action.  National Union -- had it received earlier notice of the Underlying Action -- would have denied coverage completely based upon the numerous other coverage defenses articulated in its belated coverage declination letter (Bartell Cert., Ex. K) and in its Complaint and Answer to BD's Counterclaims (Bartell Cert., Ex. I, J).  National Union, as a matter of law, suffered no prejudice from BD's alleged late notice.  See Gazis v. Miller, 378 N.J. Super. 59, 67–68 (App. Div. 2005) (holding insurer suffered no prejudice where it would not have done anything differently had policyholder provided earlier notice), aff'd, 186 N.J. 224 (2006); accord Solvents Recovery Serv. of New England, 218 N.J. Super. at 55; Hatco Corp. v. W.R. Grace & Co., 801 F. Supp. 1334, 1372 (D.N.J. 1992).

National Union's sworn Interrogatory answers articulate as follows its alleged prejudice:

> BD's failure to notify National Union of the existence of the RTI ACTION and the SETTLEMENT AGREEMENT until June 13, 2014 caused National Union to irretrievably lose all of its contractual rights under the POLICIES, including the right and opportunity to participate in the defense and settlement of the RTI ACTION, or to be apprised of and involved in the RTI ACTION

16

> prior to the SETTLEMENT AGREEMENT, or to have any
> knowledge whatsoever of the RTI ACTION.  Moreover, BD's
> failure to inform National Union of its request for insurance
> coverage until 2014 deprived National Union of the opportunity to
> manage the risk, if any, under the POLICIES.

Pl.'s Resp. to Interrog. No. 20 (Bartell Cert., Ex. L).  Case after case finds National Union's

alleged detriment insufficient to establish appreciable prejudice.  See, e.g., NKK Corp., 239 F.3d

at 561; Kitchnefsky, 88 F. Supp. 2d at 368 (quoting Morales, 176 N.J. Super. at 355); Chem.

Leaman Tank Lines, Inc., 817 F. Supp. at 1158; Molyneaux, 230 N.J. Super. at 178; Hatco

Corp., 801 F. Supp. at 1372.  A contrary conclusion would render the appreciable prejudice

standard illusory and allow insurers to escape coverage in nearly every late notice case.[13]

National Union fails to identify a single document or witness (material or otherwise)

irretrievably lost or even presently unavailable.  See Chem. Leaman Tank Lines, Inc., 817 F.

Supp. at 1158–59.[14]  National Union cannot dispute that "a wealth of relevant documentary

evidence remains intact."  See Chem. Leaman Tank Lines, Inc., 89 F.3d at 996 (quoting Chem.

Leaman Tank Lines, Inc., 817 F. Supp. at 1159).  The entire Underlying Action file, in fact,

remains available to National Union.  National Union, in short, has lost no substantial rights due

to BD's alleged failure to comply with any Policy conditions.  See id. at 996.

---

[13]     National Union adds in its brief that BD's alleged late notice harmed its underwriting
activities.  The Appellate Division explicitly has rejected this argument as constituting
appreciable prejudice.  Solvents Recovery Serv. of New England, 218 N.J. Super. at 55 (rejecting
insurer's contention "that prejudice is inescapable because of underwriting considerations which
will have been interfered with by reason of the failure to apprise the company of the pending
claims and litigation," and explaining that "[i]f, as [the insurer] alleges, prospective coverage
might properly have been cancelled or rates increased if the insurer had knowledge of the claim,
that is an independent matter and should not affect the present issue relating to coverage at the
time of a particular occurrence.").

[14]     The Third Circuit, in any event, has rejected an insurer's argument that "the loss of a
[key] piece of physical evidence will per se establish substantial prejudice."  Transportes Ferreos
de Venezuela II CA v. NKK Corp., 239 F.3d 555, 561 (3d Cir. 2001).

National Union also cannot explain how it would have achieved a better outcome in the Underlying Action than that secured by BD.  National Union certainly does not, because it cannot, prove BD settled the Underlying Action for an unreasonable amount or following collusive and/or bad faith dealings between the parties.  See NKK Corp., 239 F.3d at 562–63 (requiring the insurer to prove unreasonableness and collusion/bad faith to escape coverage); accord Kitchnefsky, 88 F. Supp. 2d at 369–70; Ohaus, 292 N.J. Super. at 512.

BD litigated the Underlying Action with Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), a well-respected law firm of more than 800 lawyers whose clients include many of the largest corporations and financial institutions in the United States and throughout the world.  See Paul, Weiss, Rifkind, Wharton & Garrison LLP, http://www.paulweiss.com (last visited April 17, 2015).  National Union cannot credibly demonstrate it would have hired more appropriate counsel or achieved a better outcome than that secured by Paul Weiss.

Recognizing New Jersey law obviates its coverage-defeating arguments, National Union relies exclusively on decisions from other states and federal circuits to manufacture appreciable prejudice as a matter of law.  See Pl.'s Mot. J. Pleadings 20–22, Dkt. #28.  These opinions, of course, cannot bind this Court.  See Newmark v. Principi, 283 F.3d 172, 174 (3d Cir. 2002); Pittston Co. v. Sedgwick James of New York, Inc., 971 F. Supp. 915, 919 (D.N.J. 1997).[15] These out-of-state/circuit cases, moreover, contradict numerous Third Circuit decisions applying New Jersey law.  See, e.g., NKK Corp., 239 F.3d at 562–63 (finding no appreciable prejudice despite fact insured had settled underlying case before giving notice); Chem. Leaman Tank Lines, Inc., 89 F.3d at 996–97 (finding no appreciable prejudice even though insured tendered

---

[15]    National Union, almost amusingly, also relies on N.Y. Ins. Law § 3420(c)(2)(B).  See Pl.'s Mot. J. Pleadings 20, Dkt. #28.  That statute reflects New York, not New Jersey, law. National Union's reliance on that statute demonstrates only the paucity of New Jersey authority supporting its contentions.

notice four years after settling with the EPA); Pittston Co. v. Allianz Ins. Co., 905 F. Supp. 1279, 1295 (D.N.J. 1995) (holding that "where an insured settles a claim against it without the permission of the insurer, the insurer must, nonetheless, demonstrate prejudice before being relieved of its policy obligations."), rev'd and remanded o.g. sub nom., Pittston Co. Ultramar Am. v. Allianz Ins. Co., 124 F.3d 508 (3d Cir. 1997).

National Union bears the burden of demonstrating it suffered appreciable prejudice. See Safety Nat'l Cas., 335 F.3d at 212 (citing Cooper, 51 N.J. 86); Beecham, Inc., 836 F. Supp. at 1048 (citing New Jersey cases). The insurer does not, and will not, establish it suffered such prejudice as a result of BD's alleged breach of any Policy conditions. The appreciable prejudice issue, at the very least, raises a question of fact subject to discovery and a plenary hearing. BD deserves an opportunity to question National Union's claims handlers about (among other issues): (1) how, if at all, BD's alleged late notice prejudiced National Union; (2) how, if at all, National Union irretrievably lost significant rights as a result of BD's alleged late notice; (3) how, if at all, BD's alleged late notice rendered documents and/or witnesses unavailable to National Union; (4) how, if at all, National Union would have achieved a better Underlying Action outcome than that secured by BD; and (5) how, if at all, the underlying settlement resulted from bad faith dealings between the parties.

### POINT III

**THIS COURT SHOULD DENY NATIONAL UNION'S MOTION FOR JUDGMENT ON ITS 1999 POLICY BECAUSE THAT POLICY EXPLICITLY EXCUSES BD'S UNINTENTIONAL FAILURE TO COMPLY WITH ITS TERMS AND CONDITIONS**

National Union's 1999 Policy incorporates the LMC Policy's Unintentional Errors and Omission Endorsement, which states:

19

> that inadvertent error to comply with policy terms and/or conditions will not invalidate or affect coverage.

See Bartell Cert., Ex. F.  National Union, therefore, cannot deny BD coverage without proving BD intentionally failed to comply with the Policy's terms or conditions.[16]

National Union neither alleges nor demonstrates BD intentionally failed to comply with any policy term and/or condition.  And the Court, on this motion, certainly cannot draw an inference of intent against non-movant BD.  See Rosenau, 539 F.3d at 221; SC Holdings, Inc., 935 F. Supp. at 1360.  Even if National Union had alleged BD intentionally ignored any Policy obligations, which it did not, such intent constitutes an inherently factual question incapable of judgment on the pleadings.  See Gibson v. New Jersey Mfrs. Ins. Co., 261 N.J. Super. 579, 585 (App. Div. 1993); Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 148 (3d Cir. 1993); Gulf Oil Corp. v. C.I.R., 914 F.2d 396, 407 (3d Cir. 1990); New Hampshire Ins. Co. v. Diller, 678 F. Supp. 2d 288, 304 n.20 (D.N.J. 2010); Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988); Riehl v. Travelers Ins. Co., 772 F.2d 19, 24 (3d Cir. 1985); Carmichael v. Bryan, 310 N.J. Super. 34, 49 (App. Div. 1998).  This Court, therefore, should reserve for the jury the question of whether BD acted intentionally.  See Coolspring Stone Supply, Inc., 10 F.3d at 148 (finding an insured's state of mind an issue of fact for the jury).  The Court certainly should not resolve this factual issue before the parties depose a single witness.[17]

---

[16]    The Policy, at the very least, contains an ambiguity in whether the Endorsement applies to BD's Personal Injury and Advertising Injury coverage claim (supra at 5 n.5), and the Court must resolve this ambiguity in BD's favor.  Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004); Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010).

[17]    A question remains as to whether certain other Policy Endorsements also excuse BD's alleged failure to comply with the Policies' terms and/or conditions.  See, e.g., Bartell Cert., Ex. G.  BD will continue conducting discovery against National Union to determine the meaning and application of these Endorsements.

20

## POINT IV

## THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE A TRIABLE ISSUE EXISTS AS TO WHETHER BD BREACHED THE POLICIES' NOTICE PROVISIONS

Before a court even reaches the appreciable prejudice question, the insurer must prove its policyholder breached the policy's notice provisions. Chem. Leaman Tank Lines, Inc., 817 F. Supp. at 1158 (citing Cooper, 51 N.J. at 94); Fed. Ins. Co. v. Purex Indus., Inc., 972 F. Supp. 872, 880 (D.N.J. 1997); Gazis, 186 N.J. at 228. National Union bears the burden of proving such breach (Cooper, 51 N.J. at 94), and the insurer cannot meet its burden here.

**A.    A Genuine Factual Issue Exists As To When BD's Risk Management Department Received Notice Of The Underlying Claim**

The Policies require BD to provide notice to National Union of an occurrence only after BD's Corporate Risk Management Department, Director of Corporate Risk, or Director of Risk Management "shall have received such notice."  See Bartell Cert., Ex. B, E.  National Union, on this Rule 12(c) motion, bears the burden of proving "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  Rosenau, 539 F.3d at 221 (quoting Jablonski, 863 F.2d at 290); accord SC Holdings, Inc., 935 F. Supp. at 1360 (citing Shelly, 798 F.2d at 97 n.4).  National Union neither demonstrates, nor even alleges, whether and when the individual/entity specified in the Policies received notice of the Personal Injury and/or Advertising Injury claim for which BD seeks coverage.  National Union does nothing more than assert "BD" allegedly knew of the Underlying Action in 1998 and the Underlying Settlement in 2004.  See Pl.'s Mot. J. Pleadings 25, Dkt. #28.  National Union, however, drafted unilaterally Policy language which requires BD to provide notice to National Union only after the specified BD individual/entity receives "notice" thereof.  See Bartell Cert., Ex. B, E.  National Union fails abysmally to establish the very event which triggers BD's alleged obligation to provide notice

"as soon as practicable" to National Union.  This question, at the very least, raises an issue of fact incapable of summary resolution.

National Union alleges, with no support whatsoever, that "the sole purpose of the [Policies' Knowledge of Occurrence Endorsements] is to identify the individuals at BD from whom knowledge of an occurrence could be imputed to the company."   See Pl.'s Mot. J. Pleadings 25, Dkt. #28.   The Policy language certainly fails to reflect this "sole purpose." Neither BD nor this Court, moreover, need take National Union's word on this crucial point. Without full discovery from National Union (including depositions), neither this Court nor BD can know the true purpose of these Endorsements.  The Court and BD, without full discovery, also cannot know what constitutes sufficient "notice" to the specified BD individual/entity.  BD, therefore, will continue conducting discovery against National Union to determine the meaning and application of the Policies' Knowledge of Occurrence Endorsements.[18]

**B.     Triable Issues Prevent Preliminary Disposition Of The Pre-Notice Defense Cost Issue**

National Union fails to prove BD breached the Policies' notice conditions.  This open, triable issue prevents this Court from prematurely resolving the issue of "pre-notice expenses." SL Industries, Inc. v. American Motorists Insurance Co., 128 N.J. 188 (1992), and Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co., 817 F. Supp. 1136 (D.N.J. 1993), on

---

[18]     BD, likewise, never breached the Policies' cooperation and/or voluntary payment conditions.   The Policies' Knowledge of Occurrence Endorsements replace entirely those conditions (as well as Policy language governing the insured's forwarding of any suit papers). See Bartell Cert., Ex. B, E.  BD's obligations under those conditions, in any event, flow directly from its obligations under the Policies' notice provisions.  If, therefore, BD possesses no obligation to provide notice to National Union, then it obviously need not comply with the Policies' cooperation or voluntary payment conditions.  A contrary conclusion defies logic. National Union fails to prove BD provided untimely notice or that it breached the Policies' notice requirements.  It follows logically then that BD did not breach the Policies' cooperation and/or voluntary payment conditions.  The question whether BD breached these conditions, at the very least, raises a triable issue incapable of judgment on the pleadings.

which National Union relies, apply only where the policyholder failed to provide notice pursuant to the policy's terms. SL Industries, Inc., 128 N.J. at 199–201; Chem. Leaman Tank Lines, Inc., 817 F. Supp. at 1160–61.  National Union, again, cannot prove BD breached the Policies' notice provisions.

Because National Union fails to satisfy its burden of proof on the breach issue, the Court should deny its motion for judgment on the pleadings.[19]

## POINT V

### THIS COURT SHOULD DENY NATIONAL UNION'S MOTION BECAUSE BD'S COVERAGE CLAIM FALLS SQUARELY WITHIN THE POLICIES' INSURING AGREEMENTS

National Union attempts an end run around New Jersey's appreciable prejudice standard through a rather audacious act of linguistic alchemy.  The insurer's machinations, however, violate New Jersey's fundamental principles of insurance policy interpretation, one of which requires a court to construe liberally insurance policies "to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'"  President v. Jenkins, 180 N.J. 550, 563 (2004) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)); accord

---

[19]     The Court also should reject as meritless National Union's suggestion that the Policies' "no action" clauses somehow prevent BD from pursuing coverage.  See Pl.'s Mot. J. Pleadings 8, Dkt. #28.  National Union, again, has not established BD failed to comply with the Policies' notice conditions.  Even if National Union met its burden, which it has not, the LMC Policy's Unintentional Errors and Omission Endorsement excuses any such failure under the 1999 Policy.  See Bartell Cert., Ex. F.  New Jersey courts, moreover, hold clearly that "no action" clauses do "not preclude an insured from seeking a declaration of the insurer's duty to provide coverage and a defense."  Caldwell Trucking PRP Grp. v. Spaulding Composites, Co., 890 F. Supp. 1247, 1258 (D.N.J. 1995) (citing cases).  National Union, in any event, forgets that **it** commenced this coverage action, not BD.  The insurer, therefore, relies mistakenly on Bacon v. American Insurance Co., 131 N.J. Super. 450 (Ch. Div. 1974), wherein the insured commenced a coverage action against its insurer.  National Union also distorts completely the facts and holding of Permasteelisa CS Corp. v. Columbia Casualty Co., 377 F. App'x 260 (3d Cir. 2010).  That case, as BD describes below, does not construe or enforce a "no-action" clause or hold that such clause barred coverage for the insured's claim.

Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471, 479 (1962); Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 375 (App. Div.), certif. denied, 196 N.J. 601 (2008).  Courts evaluating disputed policy language must consider whether the insurer could have drafted more precise language which "would have put the matter beyond reasonable question."  Doto v. Russo, 140 N.J. 544, 557 (1995) (quoting Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 7 (1961)).  Accepting National Union's coverage-defeating position requires this Court to violate New Jersey's well-settled insurance policy interpretation principles.

National Union's position requires this Court to conflate various, unrelated policy provisions and read into the Policies' insuring agreements terms and restrictions not expressly or implicitly contained therein.  The 1994 and 1997 Policies' insuring agreements provide that National Union:

> will pay on behalf of [BD] those sums in excess of the Retained Limit that [BD] becomes legally obligated to pay by reason of liability imposed by law or assumed by [BD] under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.

See Bartell Cert., Ex. A.  Coverage A of the 1999 Policy similarly provides that National Union:

> will pay on behalf of [BD] those sums in excess of the total applicable limits of [the LMC Policy] that [BD] becomes legally obligated to pay as damages provided the damages would be covered by [the LMC Policy] . . . .

See Bartell Cert., Ex. C.  Neither of these insuring agreements: (i) states that only a settlement to which National Union consents triggers its coverage obligations under the Policies; (ii) cross references or incorporates any other policy provision; or (iii) defines the phrase "legally

obligated to pay."  National Union, therefore, prevails only if this Court allows the insurer to rewrite its Policy language to prevail in this lawsuit.[20]

If National Union wanted to "make clear that BD only becomes 'legally obligated to pay' after a court's determination of liability or a settlement to which National Union consents" (Pl.'s Mot. J. Pleadings 8, Dkt. #28), then the insurer easily could have drafted insuring agreements effectuating this intent.  See Doto, 140 N.J.at 557 (quoting Mazzilli, 35 N.J. at 7). National Union, instead, drafted insuring agreements devoid of any reference to settlements to which the insurer consents, and the insurer now must bear the consequences of its drafting decision.  See Pennbarr Corp. v. Ins. Co. of N. Am., 976 F.2d 145, 155 (3d Cir. 1992) ("The law will not make a better contract for the parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other." (quoting James v. Fed. Ins. Co., 5 N.J. 21, 24 (1950))); accord Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010); Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004); Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J. Super. 409, 416 (App. Div. 1994); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).

Third Circuit courts make clear a policyholder becomes "legally obligated to pay" when it settles underlying claims—even without the insurer's consent.  See, e.g., Berne v. Cont'l Ins. Co., 753 F.2d 27, 28–30 (3d Cir. 1985) (holding primary and excess policies with insuring agreements containing "legally obligated to pay" language covered policyholder's underlying settlement, to which insurers did not consent); McDowell-Wellman Eng'g Co. v. Hartford Acc. & Indem. Co., 711 F.2d 521, 528 (3d Cir. 1983) (holding policyholder "became legally obligated to pay [underlying plaintiff] . . . on November 23, 1977, the date of [underlying] settlement," to

---

[20]     BD, at the very least, identifies an ambiguity in whether the phrase "legally obligated to pay" encompasses its coverage claim.  The Court must resolve this ambiguity in BD's favor. Simonetti, 372 N.J. Super. at 428; Flomerfelt, 202 N.J. at 441.

which the insurer did not consent); <u>Ripepi v. Am. Ins. Cos.</u>, 349 F.2d 300, 301–03 (3d Cir. 1965) (holding policyholder became "legally obligated to pay" when, without insurer's consent, it settled underlying case); <u>accord</u> <u>Caldon, Inc. v. Peerless Ins.</u>, 217 F. App'x 176, 178–79 (3d Cir. 2007); <u>Amerada Hess Corp. v. Zurich Ins. Co.</u>, 29 F. App'x 800, 807 (3d Cir. 2002).[21]

National Union does not, because it cannot, point to a single apposite case holding otherwise.  The insurer, instead, relies on easily distinguishable opinions dealing with an insured's voluntary payment of alleged damages without (1) a pending lawsuit, or (2) a release or settlement agreement arising therefrom.  <u>Bacon v. American Insurance Co.</u>, 131 N.J. Super. 450 (Ch. Div. 1974), for example, involved a policyholder (an industrial paper distributor) that allowed its customer (a textile printing concern) to withhold $16,755.80 from the policyholder because it allegedly sold the customer defective paper.  <u>Id.</u> at 453–54.  The customer neither filed a lawsuit against, nor entered into a formal settlement with, the policyholder.  <u>Id.</u> at 454.  The policyholder nevertheless claimed it became "legally obligated to" the customer and, therefore, sought to recover from its insurer the withheld payment.  <u>Id.</u> at 454.  The trial court held the underlying matter "ha[d] not reached a point at which it can be said that [the policyholder was] 'legally obligated' to pay damages to [its customer] and that [the insurer] [wa]s, therefore, liable to plaintiffs to cover [the policyholder] for such a payment."  <u>Id.</u> at 458.

---

[21]    New Jersey courts, moreover, hold that where, as here, an insurer wrongfully refuses coverage to its insured, the insurer remains liable for any reasonable settlement agreement in which the insured enters.  <u>See</u> <u>Griggs</u>, 88 N.J. at 364; <u>Baen</u>, 318 N.J. Super. at 269.  Even if BD had provided earlier notice of its coverage claim, National Union still would have denied coverage completely based upon the numerous other coverage defenses articulated in its belated coverage declination letter (Bartell Cert., Ex. K) and in its Complaint and Answer to BD's Counterclaims (Bartell Cert., Ex. I, J).  National Union, moreover, cannot prove BD settled the Underlying Action for an unreasonable amount or following collusive and/or bad faith dealings between the parties.  National Union, therefore, remains liable for the Underlying Settlement.

RTI, unlike the customer in <u>Bacon</u>, obviously filed the Underlying Action against BD. That Action, unlike the situation in <u>Bacon</u>, resulted in a formal, legally binding and enforceable settlement agreement.  The Underlying Action, in short, "reached a point at which it can be said that [BD was] 'legally obligated' to pay damages to [RTI]."  <u>See</u> <u>Bacon</u>, 131 N.J. Super. at 458.

National Union, for similar reasons, relies mistakenly on <u>Permasteelisa CS Corp. v. Columbia Casualty Co.</u>, 377 F. App'x 260 (3d Cir. 2010).  That case involved a policyholder who sought reimbursement, under its professional liability policy, for costs voluntarily incurred to remediate defects in a construction project before the policyholder received any lawsuit for such defects.  <u>Id.</u>at 261–62.  The underlying claimant had filed "no formal claim" against the policyholder, and the parties had entered into no settlement agreement.  <u>Id.</u> at 262.  The court determined the policyholder never became "legally obligated to pay" for purposes of insurer indemnification.  <u>Id.</u> at 265–67.  The court concluded no "legal obligation to pay" exists "in the absence of a final judgment or settlement."  <u>Id.</u> at 266.

RTI, as noted previously, not only filed the Underlying Action against BD seeking damages, but entered into a formal, legally binding and enforceable settlement agreement with BD.  <u>Permasteelisa</u> recognizes such circumstances give rise to a "legal obligation" sufficient to trigger an insurer's defense and indemnification obligations.  <u>See id.</u> at 266.

Because National Union recognizes New Jersey and Third Circuit law obviate its coverage-defeating position, the insurer relies extensively on decisions from other states and federal circuits to suggest a settlement does not constitute a legal obligation under an insurance policy.  <u>See</u> Pl.'s Mot. J. Pleadings 10, Dkt. #28.  These out-of-state/circuit opinions cannot bind this Court and, more importantly, contradict numerous New Jersey and Third Circuit decisions on this issue.

National Union cannot shirk its obligations by arguing BD's coverage claim falls outside the Policies' insuring agreements.  Because such argument lacks a legitimate basis in both fact and law, National Union cannot secure judgment on the pleadings.

**POINT VI**

**THIS COURT SHOULD DENY NATIONAL UNION'S MOTION TO DISMISS BD'S BAD FAITH COUNTERCLAIM BECAUSE A TRIABLE ISSUE EXISTS AS TO WHETHER THE INSURER CONDUCTED A GOOD FAITH INVESTIGATION OF BD'S COVERAGE CLAIM**

The Supreme Court holds that where, as here,

> the subjective elements of . . . good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain.  The telltale factor of demeanor in the presence of the trier of fact often assumes such vital importance in such cases that the opposing party should generally not be denied the opportunity to have the moving party, or its officers, appear on the witness stand before the trial of fact.

Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 76 (1954).

The "fairly debatable" standard, on which National Union relies exclusively, does not apply to BD's bad faith Counterclaim.  Pickett v. Lloyd's, 131 N.J. 457 (1993) makes clear this standard applies only to assertions the insurer denied coverage in bad faith.  Id. at 481 ("In the case of denial of benefits, bad faith is established by showing that no debatable reasons existed for denial of the benefits.").  BD does not predicate its bad faith claim on National Union's denial of coverage.  BD, instead, contends National Union conducted a bad faith, objectively unreasonable investigation of BD's coverage claim before filing this action and before concluding the Policies afford BD no coverage.[22]

---

[22]    National Union cannot argue seriously it "possessed all of the information it needed" to deny BD's coverage claim.  The insurer, for one example, knew not whether and when BD's

28

Numerous New Jersey courts have rejected National Union's illogical proposition that an insurance company cannot commit bad faith absent a finding of coverage.  See, e.g., GAF Corp. v. Hartford Accident & Indem. Co., No. L-980-97, at 4 (N.J. Super. Ct. Law Div., Somerset Cty., July 23, 1999) ("[The policyholder's] bad faith claims do not rest solely on an allegation that the Insurers, in bad faith, denied [the policyholder's] environmental claims.  [The policyholder] also alleges that the Insurers breached their duties of good faith and fair dealing by, among other things, failing to investigate [the policyholder's] claims and failing to conduct objectively reasonable investigations, which are allegations that could be sustainable absent a finding of coverage obligation."); Princeton Gamma-Tech, Inc. v. Hartford Ins. Grp., No. SOM-L-1289-91, at 316 (N.J. Super. Ct. Law Div., Somerset Cty., June 5, 1997) ("[T]he insurance contract requires carriers to serve their insureds in good faith.  Case law defines the relationship as a fiduciary one, which imposes an even higher duty of good faith.  Bad faith, therefore, may consist simply of the failure to carry out one's affirmative obligations.")[23]; NN&R, Inc. v. One Beacon Ins. Grp., No. CIV. 03-5011 (JBS), 2006 WL 1765077 (D.N.J. June 26, 2006) (dismissing policyholder's claim that insurer denied coverage in bad faith, but denying summary disposition on policyholder's claim that insurer engaged in bad faith claims processing).

---

Risk Management Department and/or Director of Risk Management received notice of the Underlying Action sufficient to trigger BD's notice obligations under the Policies.

[23]    The Princeton Gamma-Tech court recognized that the insurer's broad application of Pickett's "fairly debatable" standard -- echoed here by National Union -- would encourage insurers "to undertake no [coverage] inquiry and hope that the lack of information is sufficient to create a 'fairly debatable' reason for declining coverage."  Id. at 379.  The court refused to allow insurers to escape their "affirmative duties to promptly, fairly and honestly evaluate each claim, to reach a valid coverage determination and to articulate the reasons for that determination so that the insured may be guided by it."  Id. at 317.  The court found such conduct "entirely inconsistent with [New Jersey] law."  Id. at 379.

ME1 20205033v.1

BD's bad faith claim falls squarely within the holdings of these cases.  National Union, again, filed this action: (a) without first communicating substantively with BD by telephone or letter; (b) without first requesting from BD a single document or other piece of information relating to the Underlying Action or BD's coverage claim; and (c) without first sending BD a reservation of rights or declination of coverage letter.[24]  Neither this Court nor BD, without full discovery (including depositions), can determine the scope of National Union's investigation, if any, of BD's coverage claim.

## CONCLUSION

The Court should deny National Union's motion for judgment on the pleadings.

> McCARTER & ENGLISH, LLP
> Four Gateway Center
> 100 Mulberry Street
> Newark, NJ 07102
> Phone:  (973) 639-2062
> Fax:  (973) 297-3846
> Email:  abartell@mccarter.com
> Attorneys for Defendant
>
>
> s/ Anthony Bartell
> By: Anthony Bartell (A 0079)

Dated:  April 20, 2015

---

[24]     National Union cannot escape the consequences of its bad faith conduct with New Jersey Title Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, No. 11-CV-0630 DMC JAD, 2011 WL 6887130 (D.N.J. Dec. 27, 2011).  See Pl.'s Mot. J. Pleadings 27–28, Dkt. #28. National Union there, unlike here, issued its coverage declination letter either one or two years **before** the policyholder commenced its coverage action.  Id. at *3, *7.  National Union here, in contrast, sent BD its coverage declination letter fifty-nine (59) days after BD sent its coverage request and thirty-three (33) days after the insurer filed this action.

ME1 20205033v.1