# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Plaintiff, <br><br> v. <br><br> BECTON, DICKINSON AND COMPANY, <br><br> Defendant. | Case No. 2:14-cv-4318-CCC-JBC <br><br> Hon. Claire C. Cecchi, U.S.D.J. <br> Hon. James B. Clark, III, U.S.M.J. <br><br> Return Date: May 18, 2015 |

## REPLY BRIEF IN FURTHER SUPPORT OF MOTION
## FOR JUDGMENT ON THE PLEADINGS

Mark D. Sheridan
Mark.Sheridan@squirepb.com
Attorney ID: 039961999
Mark C. Errico
Mark.Errico@squirepb.com
Attorney ID: 033631998
SQUIRE PATTON BOGGS (US) LLP
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973-848-5600
Facsimile: 973-848-5601

Attorneys for Plaintiff
National Union Fire Insurance
Company of Pittsburgh, Pa.

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.     BD FAILS TO ESTABLISH THAT IT IS ENTILED TO COVERAGE. .......................... 1

II.    BD VITIATED COVERAGE BY VIOLATING CONDITIONS PRECEDENT. ............. 3

        A.     The Occurrence Endorsement Does Not Replace The Conditions. ........................ 3

        B.     NU Is Not Required To Prove Appreciable Prejudice. ........................................... 6

        C.     Appreciable Prejudice Exists As A Matter Of Law. ............................................... 7

III.   BD IS NOT ENTITLED TO REIMBURSEMENT OF DEFENSE COSTS. .................... 9

IV.   BD'S COUNTERCLAIM FOR BAD FAITH FAILS AS A MATTER OF LAW. ............ 9

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Bacon v. Am. Ins. Co.,
    131 N.J. Super. 450 (Law Div. 1974) ..................................................................................1

Badiali v. N.J. Mfr's. Ins. Group,
    220 N.J. 544 (2015) ......................................................................................................10, 11

Berne v. Cont'l Ins. Co.,
    753 F.2d 27 (3d Cir. 1985)...................................................................................................2

Cay Divers, Inc. v. Raven,
    812 F.2d 866 (3d Cir. 1987)...............................................................................................10

Chem. Leaman v. Aetna Cas. & Sur. Co.,
    89 F.3d 976 (3d Cir. 1996)...................................................................................................8

Cooper v. Gov't Employees Ins. Co.,
    51 N.J. 86 (1968) .................................................................................................................6

Demasi v. Lexington Ins. Co.,
    2010 N.J. Super. Unpub. LEXIS 1762 (App. Div. July 23, 2010) ......................................7

Diebold, Inc. v. Cont'l Cas. Co.,
    719 F. Supp. 2d 451 (D.N.J. 2010) ............................................................................4, 9, 11

Ethicon, Inc. v. Aetna Cas. and Sur. Co.,
    805 F. Supp. 203 (S.D.N.Y. 1992).......................................................................................8

Eye Center, P.A. v. Princeton Ins. Co.,
    394 N.J. Super. 557 (App. Div. 2007) .................................................................................6

Gazis v. Miller,
    186 N.J. 224 (2006) .........................................................................................................6, 7

Griggs v. Bertram,
    88 N.J. 347 (1982) ...............................................................................................................4

Hager v. Gonsalves,
    398 N.J. Super. 529 (App. Div. 2008) .............................................................................6, 7

Hudson Universal v. Aetna Ins. Co.,
    987 F. Supp. 337 (D.N.J. 1997).........................................................................................10

Kitchnefsky v. Nat'l Rent-A-Fence of Amer., Inc.,
    88 F. Supp. 2d 360 (D.N.J. 2000) ........................................................................................8

Lincoln Nat'l Life Ins. Co. v. Schwartz,
    2011 U.S. Dist. LEXIS 62031 (D.N.J. June 9, 2011) ..............................................................10

Lydon v. Chubb Grp. of Ins. Cos.,
    2012 N.J. Super. Unpub. LEXIS 2068 (App. Div. Aug. 30, 2012) ...........................................7

McDowell-Wellman Eng'g Co. v. Hartford Acc. & Indem. Co.,
    711 F.2d 521 (3d Cir. 1983)......................................................................................................2

N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,
    2011 U.S. Dist. LEXIS 149162 (D.N.J. Dec. 27, 2011) ..........................................................11

Nat'l Union Fire Ins. Co v. Mead Johnson & Co. LLC,
    735 F.3d 539 (7th Cir. 2013) ..................................................................................................4, 5

NN&R, Inc. v. One Beacon Ins. Group,
    2006 U.S. Dist. LEXIS 43109, at *11, *39 (D.N.J. June 26, 2006) ........................................11

On Air Entm't Corp. v. Nat'l Indem. Co.,
    210 F.3d 146 (3d Cir. 2000).......................................................................................................9

Permasteelisa CS Corp. v. Columbia Cas. Co.,
    377 F. App'x 260 (3d Cir. Apr. 27, 2010) ................................................................................1

Pickett v. Lloyd's,
    131 N.J. 457 (1993) .................................................................................................................10

Pittston Co. v. Allianz Ins. Co.,
    905 F. Supp. 1279 (D.N.J. 1995) ..............................................................................................9

Ripepi v. Am. Ins. Cos,
    349 F.2d 300 (3d Cir. 1965)...................................................................................................2, 4

Robeson Indus. Corp. v. Hartford Accident & Indem. Co.,
    178 F.3d 160 (3d Cir. 1999)....................................................................................................11

SC Holdings, Inc. v. A.A.A. Realty Co.,
    935 F. Supp. 1354 (D.N.J. 1996) ..............................................................................................5

Schor v. FMS Financial Corp.,
    357 N.J. Super. 185 (App. Div. 2002) ......................................................................................2

Shaler ex rel. Shaler v. Toms River Obstetrics & Gynecology Assocs.,
    383 N.J. Super. 650 (App. Div. 2006) ......................................................................................4

SL Indus., Inc. v. Am. Motorists Ins. Co.,
    128 N.J. 188 (1992) ...................................................................................................................9

Transportes Ferreos de Venezuela II CA v. NKK Corp.,
    239 F.3d 555 (3d Cir. 2001)..................................................................................................8

Universal-Rundle Corp. v. Commercial Union Ins. Co.,
    319 N.J. Super. 223 (App. Div. 1999) ...................................................................................10

Wacker-Ciocco v. Government Emples. Ins. Co.,
    2015 N.J. Super. LEXIS 38 (App. Div. Mar. 16, 2015) ........................................................10

**INTRODUCTION**

BD petitions this Court to allow it to pursue indemnification from National Union ("NU"), even though BD failed to tender a lawsuit for sixteen years and settled that lawsuit nearly ten years ago for $100 million without NU's knowledge or consent.[1]  Despite BD's best efforts to ignore the Policies' actual terms, improperly shift burdens, and distort the law, NU is entitled to judgment on the pleadings under these extraordinary circumstances.

**ARGUMENT**

**I.     BD FAILS TO ESTABLISH THAT IT IS ENTILED TO COVERAGE.**

NU is obligated to indemnify BD only for those sums that BD becomes "legally obligated to pay" by means of a judgment or a settlement to which NU consents.  Because it is undisputed that BD failed to obtain NU's consent before settling the RTI Action in 2004, NU has no obligation to indemnify BD.  Undeterred, BD argues, without any support, that it was "legally obligated to pay" when it entered into the settlement with RTI in 2004, even though it never informed NU of the claim asserted against it, much less the settlement.  BD is incorrect.

First, New Jersey law is clear that the plain meaning of the phrase "legally obligated to pay" is that "the insured must have in hand a final judgment of damages or a settlement agreement of 'proper' form, that is, one involving the insurer as well as the claimant."  Bacon v. Am. Ins. Co., 131 N.J. Super. 450, 459 (Law Div. 1974); Permasteelisa CS Corp. v. Columbia Cas. Co., 377 F. App'x 260, 264-65 (3d Cir. Apr. 27, 2010).  Here, it is undisputed that BD has neither a final judgment nor a settlement to which NU consented.

Second, any review of the relevant terms of the Policies in their proper context as a whole supports the interpretation found by the court in Bacon.  Indeed, in New Jersey, an insurance contract must be read as a whole to determine what the parties reasonably intended by its terms.

---

[1] All capitalized terms not defined herein are as defined in National Union's opening brief.

Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002).  Here, BD ignores the "no-action" and "voluntary payments" clauses in the Policies and attempts to construe the insuring agreement in isolation, which violates settled principles of insurance contract interpretation.  Id.  When the applicable provisions of the insuring agreement and the "no-action" and "voluntary payments" clauses are read together (as they must), they confirm that indemnity arises only after a court's determination of liability or a settlement to which NU consents.  (Dkt. 28-4, Dkt. 28-5, Dkt. 28-6) (stating that insured will have no right of action against NU unless "you have complied with all the terms of this policy; and . . . the amount you owe has been determined with our consent or by actual trial and final judgment"); (stating that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense . . . without [NU's] consent."); (Dkt. 28 at 8-9).

BD cites three decisions for the dubious proposition that "a policyholder becomes 'legally obligated to pay' when it settles underlying claims—even without the insurer's consent." (Dkt. 34, at 25-26.)  Not one of these decisions, however, was decided under New Jersey law, and two of the decisions do not even address the "legally obligated to pay" language.  Berne v. Cont'l Ins. Co., 753 F.2d 27, 28–30 (3d Cir. 1985) (addressing coverage arising out of injuries caused by accidental gun shot in Virgin Islands); McDowell-Wellman Eng'g Co. v. Hartford Acc. & Indem. Co., 711 F.2d 521, 528 (3d Cir. 1983) (applying Ohio law); Ripepi v. Am. Ins. Cos, 349 F.2d 300, 301–03 (3d Cir. 1965) (applying Pennsylvania law, court found that insurer had timely notice of claim and was able to participate in underlying settlement, but refused).

BD attempts to distinguish Bacon and Permasteelisa by arguing that because the RTI Action resulted in a lawsuit, any resulting settlement constitutes a legal obligation to pay.  Aside from the absence of support in the Policies' language or applicable case law, BD's attempted distinction fails as a matter of logic.  Bacon and related decisions recognize that the "legally

2

obligated to pay" language exists to support an insurer's right to participate in the litigation and to protect the insurer from later being forced to indemnify matters where it has been prevented from participating in the investigation, defense, and settlement.  Those concerns exist whether a settlement results from a filed lawsuit or a pre-lawsuit negotiation.  Simply put, BD has no argument that it was "legally obligated to pay" any of the amounts it seeks.[2]

## II.   BD VITIATED COVERAGE BY VIOLATING CONDITIONS PRECEDENT.

It is undisputed that BD settled the RTI Action in 2004 for $100 million without (a) notifying NU of its pendency and (b) obtaining (or even seeking) NU's consent.  (Dkt. 7 ¶ 34.)  Thus, BD vitiated coverage by voluntarily making a payment without NU's consent and by failing to satisfy the notice provisions in the Policies.

In recognition of these breaches, BD argues that all conditions precedent to coverage were replaced by certain endorsements and attempts to impose on NU the burden of demonstrating that BD's various breaches were not excused.  Neither argument has merit.

### A.   The Occurrence Endorsement Does Not Replace The Conditions.

BD contends that the Knowledge of an Occurrence Endorsement ("KOE") removes its obligation to refrain from making any voluntary payments and to notify NU unless its "Director of Risk Management" is aware of the Occurrence.  (Dkt. 34, at 21.)  Not so.

By its express terms, the KOE only modifies Condition F of the Policies, i.e., Duties in the Event of an Occurrence, Claim or Suit.  (Dkt. 34-3, 34-6.)  Specifically, the KOE states that

---

[2]  BD asserts that even if it had properly notified NU of the RTI Action and requested consent to settle, NU "still would have [wrongly] denied coverage completely based upon the numerous other coverage defenses articulated in its belated coverage declination letter . . . and in its Complaint and Answer to BD's Counterclaims."  (Dkt. 34 at 26 n. 21, 34).  The statement—often repeated—is false and is nothing more than speculation.  In fact, NU expressly reserved rights under the Personal Injury coverage part of the 1994 and 1997 Policies.  (Dkt. 34-12, at 5-6.)  Thus, the only reasonable inference is that, given the opportunity, NU could have exercised its right to associate in BD's defense and would have participated in settlement discussions.

3

the Policies are "amended to include the following." (Id.)  Nowhere in the KOE does it state that any terms of the Policies are *replaced or modified*.  BD's obligations to refrain from making voluntary payments and to notify NU of any claim or suit remain unchanged.[3]

Even if the KOE did replace Condition F, BD's assertion that NU must prove that BD's Director of Risk Management knew about the six-year lawsuit with RTI and subsequent $100 million settlement to prevail on this motion is both incorrect as a matter of law and factually absurd.  The insured bears the burden of showing that a claim lies within the policy's coverage, including proving compliance with conditions precedent to coverage.  Griggs v. Bertram, 88 N.J. 347, 366-67 (1982); Shaler ex rel. Shaler v. Toms River Obstetrics & Gynecology Assocs., 383 N.J. Super. 650, 662 (App. Div. 2006) (finding no coverage where insured failed to establish condition was satisfied).  Moreover, it is the insured's obligation to provide information where, as here, the insured "is far more likely to know, or have superior access to, facts relevant to" the dispositive coverage issue.  Diebold, Inc. v. Cont'l Cas. Co., 719 F. Supp. 2d 451, 465 (D.N.J. 2010) (explaining that where insurer would not have same access to information as insured, insured must provide all relevant information); Griggs, 88 N.J. at 366-67 (finding that insured must prove information supporting coverage because it had control of case and opportunity to learn all essential information).

BD has not established that there is any material issue of fact because only BD possesses evidence of whether its Director of Risk Management was aware of the RTI Action and its $100 million settlement.  To be sure, BD has offered nothing in its pleadings or in opposition to this

---

[3] The Seventh Circuit rejected a similar argument in Nat'l Union Fire Ins. Co v. Mead Johnson & Co. LLC, 735 F.3d 539, 543 (7th Cir. 2013).  There, the court held that a knowledge of an occurrence endorsement amended only the provision regarding notice of an occurrence: "The fact that the notice provision relating to a claim or suit was not amended to require notice to the Director of Risk Management can't be considered an oversight, though oversight or not [the insured] would be bound by the amendment's unequivocal language." Id.  The Seventh Circuit described the argument as a "frivolous interpretation" and censured it. Id. at 544.

4

motion in support of its failure to notify NU of the filing of the RTI Action in 1998 or subsequent settlement in 2004 until its belated notice in 2014.  In fact, BD admits that it neither notified NU of, nor requested coverage for, the RTI Action.  (Dkt. 7 ¶ 34.)  The record also reflects that BD regularly notified its shareholders of the status of the RTI Action and subsequent settlement in its annual 10-k filings.[4]  (Dkt. 28-7 to 28-13.)  Thus, notwithstanding BD's silence, any inference that BD's Director of Risk Management did not know about the RTI Action and subsequent $100 million settlement, would be unreasonable in these circumstances.  Mead Johnson & Co. LLC, 735 F.3d at 543 ("[I]t would be absurd to allow a company served with a summons and complaint or other legal claim to obtain an indefinite extension of its duty of notice simply by hiding the claim from its Director of Risk Management.  Especially when the claim is as large as [the insured's] claim, filed by a competitor who had obtained more than $46 million from [the insured] in settlement of two previous suits.")

Given the absence of any contravening factual statements proffered by BD both on this motion and in its pleadings, there is no "reasonable inference" here for this Court to conclude other than that both BD and BD's Director of Risk Management had knowledge of the RTI Action.  SC Holdings, Inc. v. A.A.A. Realty Co., 935 F. Supp. 1354, 1360 (D.N.J. 1996).[5]

---

[4]  BD's public filings establish that BD was aware of the RTI Action without the need to impute knowledge from the Director of Risk Management.  (Dkt. 28, at 24-25.)

[5]  BD's argument that the 1999 Policy excuses BD's failure to comply with its terms and conditions fares no better.  First, the 1999 Policy does not follow form with respect to the LMC's Policy's Unintentional Errors and Omissions Endorsement because the endorsement conflicts with the notice conditions of the 1999 Policy.  (Dkt. 28-6, at NU000376.)  Thus, the provisions of the 1999 Policy apply in this circumstance.  Second, even if the endorsement did apply, for the same reasons above, there is no reasonable basis to infer that BD was unaware of the RTI Action and inadvertently did not tender the suit and subsequent settlement to National Union.

### B.     NU Is Not Required To Prove Appreciable Prejudice.

BD maintains that "appreciable prejudice" is required for every violation of the Policies' conditions.  As the New Jersey Supreme Court's recent statement on "appreciable prejudice" makes clear, BD's argument is premised on a misunderstanding of current law.  Gazis v. Miller, 186 N.J. 224, 228-33 (2006).  In Gazis, the Court held the "appreciable prejudice" rule originally articulated in Cooper v. Gov't Employees Ins. Co., 51 N.J. 86, 90 (1968), only applies in situations "close enough to th[e] [setting involving potentially uncompensated accidental tort victims] in Cooper to justify its extension."  Id. at 231.  The Court was clear that it "d[id] not mean to suggest that every notice provision in an insurance setting can be discarded in favor of an 'appreciable prejudice' requirement."  Id. at 233.  Gazis thus precludes a Court from applying "appreciable prejudice" automatically as BD suggests, instead demanding that the rule is required only where the case presents circumstances implicating the original rationale underlying the rule.  Id.; Hager v. Gonsalves, 398 N.J. Super. 529, 538 (App. Div. 2008).

Notably, the cases relied upon by BD were decided before Gazis.[6]  Moreover, BD's citation to Gazis is from the Court's description of Cooper, not from the holding in Gazis that a Court should determine whether the circumstances were "close enough" to Cooper to justify "extension" of the "appreciable prejudice" rule to other factual circumstances.  186 N.J. at 231-33.  BD simply has no rebuttal to the requirement in Gazis that courts must apply "appreciable prejudice" based on whether the circumstances further the rationale articulated in Cooper.

Nor does BD's position reconcile with authority holding that an insured's unilateral and unauthorized settlement breached the "voluntary payments" condition regardless of whether the insurer could show that it suffered "appreciable prejudice."  Eye Center, P.A. v. Princeton Ins.

---

[6]  Nor do BD's cited decisions make the broad holdings it claims.  Those decisions involved instances where insureds acted in good faith in settling environmental-contamination lawsuits for which liability under applicable federal law was clear. (Dkt. 28, at 14.)

Co., 394 N.J. Super. 557, 570-71 (App. Div. 2007). BD's only mention of Eye Center is its half-hearted attempt to distinguish the case by noting that Eye Center involved a claims-made policy. (Dkt. 34, at 10-11.) BD does not, because it cannot, explain how that fact matters. Although some courts have highlighted the differences between the notice requirements of occurrence-based and claims-made policies, Gazis, 186 N.J. at 229-30, New Jersey courts have not drawn any distinction regarding the "voluntary payments" condition because it operates uniformly regardless of the type of policy.

There is no basis to impose an "appreciable prejudice" requirement to the Policies' conditions, especially where, as here, the circumstances do not involve the risk that accidental tort victims will go uncompensated. Rather, the egregious facts here demonstrate that a sophisticated, corporate insured excluded NU from all aspects of a six-year antitrust lawsuit and $100 million settlement and must now face the consequences of those decisions.

### C. Appreciable Prejudice Exists As A Matter Of Law.

Even if the Court applied an "appreciable prejudice" standard to one or more of the Policies' conditions, BD is not entitled to coverage. Initially, nothing establishes that BD acted in good faith, which is "a precondition of obtaining the benefit of the . . . 'appreciable prejudice' rule." Hager v. Gonsalves, 398 N.J. Super. 529, 538 (App. Div. 2008); Demasi v. Lexington Ins. Co., 2010 N.J. Super. Unpub. LEXIS 1762, at *25 (App. Div. July 23, 2010).

BD does not dispute the existence of this requirement, instead arguing, without any applicable support, that its "good faith" is a fact issue requiring discovery. (Dkt. 34, at 28-29.) But the covenant of good faith and fair dealing in insurance contracts is measured through objective reasonableness, not subjective intent. Lydon v. Chubb Grp. of Ins. Cos., 2012 N.J. Super. Unpub. LEXIS 2068, at *45 (App. Div. Aug. 30, 2012). BD is not entitled to a reasonable inference that it engaged in objectively reasonable conduct because its conduct was

7

anything but reasonable.  The undisputed facts demonstrate that BD withheld tender of a lawsuit until it had been fully litigated and settled, preventing NU from participating in any form in both the defense and settlement of the case.  It then further delayed for an additional ten years before finally demanding payment for the $100 million unauthorized settlement.

Even if this Court infers that BD's conduct was objectively reasonable, "appreciable prejudice" exists as a matter of law.  The issue becomes whether the insurer has irretrievably lost its ability to participate in any meaningful way in the underlying action.  (Dkt. 28, at 20.)  NU lost every single contractual right, including its ability to evaluate coverage, to associate in BD's defense,[7] to participate in settlement discussions, to insist on an allocation between covered and uncovered damages in the settlement agreement, and to consider the RTI Action in the underwriting process involving future policies.

The cases BD cites to dispute NU's prejudice are notably different.  (Dkt. 34, at 16-18.) Kitchnefsky v. Nat'l Rent-A-Fence of Amer., Inc., 88 F. Supp. 2d 360, 366-68 (D.N.J. 2000) (finding no irretrievable loss of rights where notice given two months before settlement and insurer's counsel attended settlement conference and did not object); Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 563 (3d Cir. 2001) (finding no irretrievable loss of rights where insurer had notice five months before settlement and participated in settlement conference); Chem. Leaman v. Aetna Cas. & Sur. Co., 89 F.3d 976, 997 (3d Cir. 1996) (finding no irretrievable loss of rights where insured entered consent decree with EPA before notifying insurer since CERCLA imposes strict liability).  None of these cases can be compared to BD's tender of a lawsuit settled for $100 million nearly a decade after resolution.

---

[7] BD contends that National Union's inability to participate in the RTI Action is unimportant because BD used expensive lawyers.  If such a rule existed, the size of an insured's pocket book would dictate whether it could ignore its obligations under the Policies. Ethicon, Inc. v. Aetna Cas. and Sur. Co., 805 F. Supp. 203, 205-06 (S.D.N.Y. 1992).  No such rule exists.

8

The only reasonable inference is that because BD failed to notify NU of its claim and settlement until a decade later, NU irretrievably lost all of its rights under the Policies. BD thus vitiated coverage whether "appreciable prejudice" applies or not.

### III. BD IS NOT ENTITLED TO REIMBURSEMENT OF DEFENSE COSTS.

Ignoring controlling precedent barring an insured from recovering defense costs incurred before tender, BD invites this Court to create new law, contending that NU must prove that BD breached the Policies' notice conditions in order to establish an absence of liability for pre-tender defense expenses. But even the cases relied upon by BD recognize that the reason an insurer has no liability for pre-tender defense costs has nothing to do with an insured's breach of a policy's notice provision and everything to do with an insurer's lack of responsibility for payment of defense costs until it is aware of the underlying action. SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 200 (1992) ("[W]hen the insured's delay in providing relevant information prevents the insurer from assuming control of the defense, the insurance company is liable only for that portion of the defense costs arising after it was informed of the facts triggering the duty to defend."); Pittston Co. v. Allianz Ins. Co., 905 F. Supp. 1279, 1312 (D.N.J. 1995), rev'd in part on other grounds, 124 F.3d 508 (3d Cir. 1997). It is undisputed here that BD failed to tender the RTI Action until June 13, 2014 and all defense costs were incurred before that date. Thus, no defense costs are reimbursable and judgment on the pleadings is warranted.[8]

### IV. BD'S COUNTERCLAIM FOR BAD FAITH FAILS AS A MATTER OF LAW.

BD cannot dispute that absent a finding of coverage its counterclaim for bad faith fails as a matter of law. On Air Entm't Corp. v. Nat'l Indem. Co., 210 F.3d 146, 153 n.11 (3d Cir. 2000); Diebold, 719 F. Supp. 2d at 468 (rejecting bad faith claim premised on an alleged failure

---

[8] NU also has no duty to defend where, as here, BD contends its primary insurer has a duty to defend. (Dkt. 28-4, Dkt. 28-5, Dkt. 28-6).

to investigate and to provide "coverage position" until after suit was filed because New Jersey law "does not support its bad faith claim insofar as it is independent from the coverage dispute").

Instead, BD opposes dismissal by making one argument—that if coverage exists, the "fairly debatable" standard originally articulated in Pickett v. Lloyd's, 131 N.J. 457 (1993) does not apply because its counterclaim is based on allegations of unreasonable claims handling rather than the denial of insurance coverage. (Dkt. 34, at 29-30.) BD is incorrect.

In Pickett, the New Jersey Supreme Court analyzed the "fairly debatable" rule in varied circumstances, including denials of coverage as well as "when the issue involves . . . inattention to payment of a valid, uncontested claim." Id. at 473-74. The Court concluded that the standard for either scenario is "essentially the same." Id. at 474. Decisions following Pickett not only applied the "fairly debatable" standard to the denial of coverage benefits, but also to allegations of an inadequate investigation. Hudson Universal v. Aetna Ins. Co., 987 F. Supp. 337, 341 (D.N.J. 1997); Universal-Rundle Corp. v. Commercial Union Ins. Co., 319 N.J. Super. 223, 249-51 (App. Div. 1999) (applying Pickett to claim for bad faith failure to conduct thorough investigation); Wacker-Ciocco v. Government Emples. Ins. Co., 2015 N.J. Super. LEXIS 38, at *13 (App. Div. Mar. 16, 2015) (accepting Pickett applies to alleged bad faith claims handling). In fact, less than two months ago, the New Jersey Supreme Court rejected BD's argument here—that Pickett does not apply to allegations of inadequate claims handling. Badiali v. N.J. Mfr's. Ins. Group, 220 N.J. 544, 559 (2015).

Thus, to impose liability for bad faith whether for denial of benefits or for inadequate claims handling, BD must demonstrate that no debatable reasons existed for NU's lawsuit.[9] Id.; Hudson Universal, 987 F. Supp. at 341. BD cannot satisfy that standard. The information NU

---

[9] An insurer's decision to file a declaratory judgment action cannot give rise to a claim for bad faith. Cay Divers, Inc. v. Raven, 812 F.2d 866, 871 (3d Cir. 1987); Lincoln Nat'l Life Ins. Co. v. Schwartz, 2011 U.S. Dist. LEXIS 62031 *19 (D.N.J. June 9, 2011).

received from BD's untimely tender and relevant policy language provided every reason for NU to conclude that BD failed to satisfy the insuring agreements and breached multiple provisions of the Policies. (Dkt. 28 at 28-29.) Moreover, BD conceded that before its tender on June 13, 2014, it "had neither notified [NU] of, nor requested coverage for, the [RTI Actions]." (Dkt. 1 ¶ 34; Dkt. 7 ¶ 34.) BD also admitted that it voluntarily settled the RTI Action for $100 million without ever involving NU. (Dkt. 1, ¶¶ 3, 32-34, Dkt. 7, ¶¶ 3, 32-34.) This case therefore presents the exact situation where courts dismiss a bad faith claim as a matter of law. Badiali, 220 N.J. at 560 (affirming dismissal of bad faith claim because "language of the policy itself provided a rational, and indeed valid, reason" to dispute the claim); N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 2011 U.S. Dist. LEXIS 149162, at *22 (D.N.J. Dec. 27, 2011).

      None of the cases cited by BD alter this conclusion (two of which are unpublished and do not even appear in electronic databases). For instance, in the two-page GAF Corp. v. Hartford Accident & Indem. Co. order, the court does not cite a single case supporting its conclusions and actually denies the insured's request "to conduct discovery regarding the Insurers' behavior in allegedly delaying and refusing to pay pre-1996 defense costs." (Dkt. 34, at 29.) Moreover, the GAF court's unsupported dicta that the insured's bad faith claims "are allegations that could be sustainable absent a finding of a coverage obligation" is in direct conflict with New Jersey law. Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 167-69 (3d Cir. 1999) (rejecting that "New Jersey law allows for the imposition of tort liability against an insurer for bad faith even when the insured was not entitled to coverage under the policy"); Diebold, 719 F. Supp. 2d at 468. In NN&R, Inc. v. One Beacon Ins. Group, the court did not address an alleged inadequate investigation, but rather a delay in fully processing an otherwise valid claim that was timely tendered to the insurer. 2006 U.S. Dist. LEXIS 43109, at *11, *39 (D.N.J. June 26, 2006). Likewise, in Princeton Gamma-Tech, Inc. v. Hartford Ins. Grp., the Court made no

holdings regarding bad faith claims handling, but rather only stated that an insurer had an obligation to attempt to locate a missing policy before it could suggest a "fairly debatable" reason existed for denial of coverage under that policy's language. (Dkt. 34, at 29.)

Thus, regardless of the court's rulings on NU's other requests for judgment, BD's claim for bad faith must be dismissed as a matter of law.

## CONCLUSION

For these reasons and those in NU's opening brief, NU respectfully requests that the Court grant its Motion.

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

By: /s/ Mark Sheridan
Mark D. Sheridan
Mark.Sheridan@squirepb.com
Attorney ID: 039961999
Mark C. Errico
Mark.Errico@squirepb.com
Attorney ID: 033631998
One Riverfront Plaza
Newark, New Jersey 07102

Dated: May 11, 2015

Attorneys for Plaintiff
National Union Fire Insurance
Company of Pittsburgh, Pa.