NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,** | : : : | Civil Action No. 14-4318 (CCC) |
| Plaintiffs, | : : | MEMORANDUM OPINION |
| v. | : : | |
| **BECTON, DICKINSON AND CO., et al.,** | : : | |
| Defendants. | : : | |

**CLARK, Magistrate Judge**

      Currently pending before the Court is Defendant Becton, Dickinson and Company's ("BD" or "Defendant") motion for leave to file and serve an amended answer. [Docket Entry No. 58]. Plaintiff National Union Fire Insurance Company of Pittsburgh, PA. ("NU" or "Plaintiff") opposes BD's motion. [Docket Entry No. 62]. The Court has fully reviewed and considered all arguments made in support of, and in opposition to, this motion. The Court considers each motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons set forth more fully below, BD's motion for leave to file and serve an amended answer is GRANTED.

**I.   BACKGROUND**

      By way of background, between October 1, 1994 through October 1, 2002, NU sold to BD three commercial umbrella insurance policies, dated October 1, 1994, October 1, 1997, and October 1, 2002 (collectively "the Policies"). [See Docket Entry Nos. 28-4, 28-5, 28-6]. Each of these policies contained a "notice" provision prior to NU's description of coverage under the policies. [*See* Docket Entry Nos. 28-4, 28-5, 28-6.]

1

On August 3, 1998, Retractable Technologies Inc. ("RTI") commenced an antitrust lawsuit in Texas state court against BD, several Texas hospitals, and others. [Docket Entry No. 1 ¶¶ 9-11]. RTI dismissed this action on February 5, 2001 to pursue the claims in federal court in a separate action filed on January 31, 2001 in the United States District Court for the Eastern District of Texas, captioned *Retractable Technologies Inc. v. Becton, Dickinson & Company*, Civil Action No. 5:01-cv-00036 (collectively, the "RTI Action"). [Docket Entry No. 1 ¶¶ 14-16]. In 2002, during the RTI Action, RTI propounded written discovery demanding that BD "[f]or the years 1997 to present, produce any and all documents relating to BD's liability insurance." (*See* Declaration of Mark Sheridan ("Sheridan Dec."), at Ex. 1.) BD declined to produce any documents, stating that "[w]ith respect to this litigation, [BD] has no insurance policy that covers this case." (*See id.*) On July 2, 2004, BD settled the RTI Action. [Docket Entry No. 7 ¶¶ 19-20.]

Several years later, on June 13, 2014, BD sent a letter to NU requesting that NU provide coverage for BD's defense and settlement costs arising from the RTI Action. (Sheridan Dec., at Ex. 7.) In response, NU filed its Complaint in this matter on July 9, 2014, seeking a declaration that it is not obligated to defend or indemnify BD in connection with the RTI Action. [Docket Entry No. 1]. In paragraph 34 of the Complaint, NU alleges that "[p]rior to these demands by letter dated June 13, 2014, BD had neither notified [NU] of, nor requested coverage for, the [RTI Action]." [*Id.*, at ¶ 34]. BD filed its Answer on August 19, 2014, admitting the allegation contained in Paragraph 34. [Docket Entry No. 7 ¶ 34].

During the early stages of discovery in this matter, BD maintained its admission to paragraph 34 of the Complaint. Notably, NU's First Set of Interrogatories required BD to "IDENTIFY whether YOU made NATIONAL UNION aware of the claims which form the subject matter of the RTI ACTION before YOUR letter to NATIONAL UNION dated June 13, 2014."

2

(Sheridan Dec., at Ex. 2.)  In response, BD stated "that it thus far has uncovered no information indicating it made National Union aware of the RTI ACTION claims before June 13, 2014.  BD, however, presently knows not whether National Union knew of the RTI ACTION claims prior to June 13, 2014."  (Sheridan Decl., at Ex. 3.)

On the other hand, BD's October 21, 2014 written discovery requests sought the "complete underwriting files" for the Policies.  (*See* Certification of Anthony Bartell, "Bartell Cert.", at Ex. F).  NU objected to this request for several reasons, including relevancy and privilege.  (*See* Bartell Cert., Ex. G).  Not able to resolve the issue by way of a deficiency letter, BD sought intervention of this Court to address the production of the underwriting files. (*See* Bartell Cert., Ex. H; Docket Entry No. 38.)  After conducting a status telephone conference on May 27, 2015, the Court ordered NU to produce all documents and information regarding the Policies' underwriting files and drafting history.  [*See* Docket Entry No. 43].  NU produced these documents on June 19, 2015 as directed by the Court.  (*See* Bartell Cert., Ex. I.)  Included in the June 19, 2015 production was BD's 1998 Annual Report, which included a reference to the RTI Action.  NU thereafter supplemented its production, producing BD's 2001 Annual Report and BD's 2001 Form 10-K Filing—both of which referenced the RTI Action.

Based upon the production of 2001 Annual Report, the 2001 Form 10-K Filing, and the 1998 Annual Report (collectively referred to as the "Underwriting Files"), BD filed the instant motion to amend seeking to deny the allegations made in Paragraph 34 of the Complaint. Specifically, BD sought to amend its admission to Paragraph 34 to the following: "Paragraph 34 contains conclusions of law to which BD need not respond. To the extent Paragraph 34 contains factual allegations or other allegations to which BD must respond, then BD denies such allegations."  BD does not seek to make any other amendments to the Complaint.

3

## II.  THE PARTIES' POSITIONS

### A. Defendant's Position

BD contends that its motion for leave to amend should be granted under FED. R. CIV. P. 16(b)(4) because it was diligent in seeking leave soon after receiving the Underwriting Files. BD initially learned of the facts underlying its proposed amendment in June 2015, and deferred filing its motion for leave until after NU produced additional documents on September 21, 2015. Upon receiving the Underwriting Files, BD discovered that it had previously made NU aware of the RTI Action. BD was not aware of this sooner because it did not keep a file tracking the documents it submitted to NU in the course of purchasing the 1999 policy or the 2002 reinsurance certificate.

BD also argues that leave to amend should be granted under FED. R. CIV. P. 15. BD denies any bad faith or dilatory motive on their part. Nor can they be blamed for any delay in filing the motion, as the Underwriting Files were not produced by NU for more than eight (8) months after they were first requested. BD further disclaims any prejudice to NU by the amendment. Depositions have not been taken and any additional discovery arising from the amendment could be quickly completed.

### B. NU's Position

NU vehemently opposes BD's motion for leave to amend on several bases. First, NU argues that BD's proposed amendment would be futile. It claims that BD's submission of the Underwriting Files to NU's underwriters does not satisfy BD's notice obligations under the pertinent policies. NU also claims that BD violated the policies by unilaterally settling the RTI Action. Based on these two violations, NU believes that BD's proposed amendment would be *ipso facto* futile.

NU also argues that the proposed amendment would bar BD's insurance claim under the six-year statute of limitations for contract actions. Since BD did not bring a claim within six years of the RTI Action settlement, BD's claims would be barred because the statute of limitations begins to run when the insured's liability is determined—when BD settled the RTI action. As such, BD had until July 2, 2010 to file its action but failed to do so.

Lastly, NU argues that BD's motion for leave to amend is untimely. BD created the Underwriting Files and should have been aware of their contents. As such, BD unduly delayed in filing its motion to amend.

### III.    LEGAL STANDARD

The decision to grant or deny leave to amend is committed to the sound discretion of the Court. *Gay v. Petsock,* 917 F.2d 768, 772 (3d Cir. 1990). The threshold issue in resolving a motion to amend is the determination of whether the motion is first governed by Rule 16 of the Federal Rules of Civil Procedure." *Watson v. Sunrise Senior Living Servs., Inc.*, No. CIV.A. 10-230 (KM), 2015 WL 1268190 at *1 (D.N.J. Mar. 18, 2015) (citing *Karlo v. Pittsburgh Glass Works*, LLC, No. 10–1283(NBF), 2011 WL 5170445, at *2 (W.D.Pa. Oct. 31, 2011)). Unlike the "more lenient" standard applied under Rule 15, Rule 16 applies a stricter standard. *Watson*, 2015 WL 1268190 at *5. "Rule 16... requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445 at *2 (citing Fed.R.Civ.P. 16(b)(4)). "Only once the party has shown sufficient 'good cause' to amend the Rule 16 Order to extend the motion to amend deadline will the court evaluate the proposed amendment under Rule 15(a). If the moving party is unable to demonstrate 'good cause', the Court will deny the motion and will not proceed to a Rule 15 analysis." *Korrow v. Aaron's, Inc.*, No. 10-cv-6317 (MAS)(LHG), 2014 U.S. Dist. LEXIS 90777 at *16 (D.N.J. 2014).

While there sometimes might be "tension" between the standards of the two Rules, *Karlo*, 2011 WL 5170445 at *2 n. 3, Third Circuit courts "have consistently reached the same conclusion: a party seeking to amend the pleadings after the deadline set by the Court must satisfy the requirements of Rule 16(b)(4)—i.e., that party must show 'good cause.'" *Id.* at *2; *see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir.2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

To demonstrate good cause under Rule 16, the moving party must show "due diligence." *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d. Cir. 2010). Typically, when analyzing the moving party's diligence, courts consider whether the movant "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Smith v. Honeywell Int'l, Inc.*, No. 10–CV–03345 (ES/JAD), 2014 WL 301031 at *6 (D.N.J. Jan. 27, 2014) (citations omitted). Further, "good cause may be satisfied if the movant shows that the delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Phillips v. Grebon*, No. 04–5590(GEB), 2006 WL 3069475 at *6 (D.N.J. Oct. 27, 2006) (citation omitted). Moreover, if a movant knew about the need to file a motion to amend before the deadline expired, or if the movant did not satisfactorily explain the delay, the court may deny the motion. *See, e.g., Dimensional Commc'n., Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir.2005).

If the movant satisfies Rule 16, he must then satisfy Rule 15. Pursuant to FED. R. CIV. P. 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may

deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Delay alone is insufficient to deny a request for leave to amend, *see Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d. Cir. 1984), but the moving party "must demonstrate that its delay in seeking to amend is satisfactorily explained." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotations omitted). Courts will deny a request for leave to amend where delay becomes undue, such as when its accommodation creates an "unwarranted burden on the court…[and] unfair burden on the opposing party." *Adams v. Gould*, 739 F.2d 858 at 868.

Prejudice will be considered "undue" when it rises to such a level that the non-moving party would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence…" *Harrison*, 113 F.R.D. at 468 (internal quotations omitted). In evaluating the extent of any alleged prejudice, the court looks to the hardship on the non-moving party if the amendment were granted. *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories." *Cureton*, 252 F.3d at 273. The court of appeals has stated that "prejudice to the non-moving party is the touchstone for the denial of…amendment." *See Cornell & Co. v. Occupational Safety and Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).

**IV.    DISCUSSION**

   *A.  Federal Rule 16*

The October 17, 2014 Pretrial Scheduling Order provided the parties until December 12, 2014 to amend the pleadings. [Docket Entry No. 15.] Since BD filed its motion to amend after this deadline, and no other extensions were granted, the Court must first assess whether good cause exists under Rule 16 to modify the Pretrial Scheduling Order.

Here, good cause exists because there is no evidence that BD "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Smith*, 2014 WL 301031 at *6 (citations omitted). Currently at issue is whether BD should be allowed to amend its admission of Paragraph 34 of the Complaint to a denial, after discovery revealed that documents referencing the RTI Action were provided to NU during the course of purchasing the 1999 policy and the 2002 reinsurance certificate. BD explains that it could not make this denial earlier because it did not track what files were submitted to NU for underwriting. While failure to track these documents may have been neglectful, this neglect is excusable taking into account the sixteen-year time period and the data storage capabilities at that time.

Moreover, accepting BD's explanation as plausible, the documents themselves do not establish their transmission to NU on their face. Thus, almost sixteen years later, it is not inexcusable for BD to only now learn what documents it provided to NU through NU's document production. Because NU produced these documents after the deadline to file a motion to amend—well after they were first requested *via* discovery—good cause exists for modifying the Pretrial Scheduling Order.

B.  *Federal Rule 15*

Since good cause exists under Rule 16, this Court must next assess whether leave to amend should be given under Rule 15.

For the same reasons establishing good cause under Rule 16, the Court finds that BD did not delay in bringing the instant motion to amend. In its opposition, NU argues that BD delayed in bringing its motion to amend because BD prepared the Underwriting Files, and thus should have uncovered them many years earlier. But NU's logic is flawed. It is not the documents themselves that caused BD to file its motion to amend, but the fact that they were contained in NU's underwriting documents. After receiving those files, BD did not unduly delay in bringing the instant motion. BD requested NU's underwriting files as early as October 31, 2014. [*See* Docket Entry No. 58-2 at 5]. NU refused to produce these documents until June 19, 2015, and only after it was ordered by the Court to do so. [*See id.* at 6-7; Docket Entry No. 43]. NU then produced additional documents relevant to the instant motion on September 21, 2015. [*See id.* at 6-7]. Less than ten (10) days later, BD filed its motion to amend.

NU also makes several arguments about the futility of BD's proposed Amended Answer. In the interest of judicial economy, the Court declines to engage in a detailed futility analysis at this juncture. The Court finds that those arguments are better suited to be raised in the context of a motion for judgment on the pleadings.[1]  Because the District Court's Order administratively terminated NU's motion for judgment on the pleadings *without prejudice* so that this Court may

---

[1] The Court is aware that these arguments were indeed made initially in the context of a motion for judgment on the pleadings. [Docket Entry No. 28.] In that motion, NU's futility arguments challenged BD's fulfillment of its obligations under the relevant policies. However, the administrative termination of that motion constrains this Court to address the amendments only. Because NU's motion was terminated without prejudice—inherently allowing NU to re-file its motion for judgment on the pleadings—the Court finds that such arguments are better addressed at that time.

9

first decide on the BD's motion to amend, the Court finds that NU will not be prejudiced by incorporating those arguments into a renewed motion.  [*See* Docket Entry No. 64].

Importantly, the Court does not find that NU will be unduly prejudiced by granting BD's motion.  In granting the motion, NU will not be unfairly disadvantaged or deprived of the opportunity to present facts or evidence as it may re-file its motion for judgment on the pleadings.  Here, BD is simply correcting an answer to the Complaint based on facts uncovered during written discovery.  Depositions have not been taken, and little if any additional written discovery appears necessary.  Indeed, NU's opposition is devoid of any position regarding the need for additional discovery or increased litigation costs.

Accordingly, the Court finds that BD's amendment should be permitted.  The clarification that BD made NU aware of the RTI Action prior to June 2014 is a minor amendment and not prejudicial to NU.  Furthermore, NU's futility arguments are preserved because the right to move for judgment on the pleadings was implicitly reserved by the District Court's Order.  As such, in light of the foregoing, and the consideration that leave is generally "freely given," BD's first motion for leave to file an amended answer is GRANTED.

V. **CONCLUSION**

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 20th day of May, 2016,

**ORDERED** that Becton, Dickinson, and Co.'s Motion for Leave to Amend its Answer is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court terminate the aforementioned motion [Docket Entry No. 58] accordingly.

s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**