## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | : | Case No. 2:14-cv-4318-CCC-JBC |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | Return Date:  July 3, 2017 |
|  | : |  |
| BECTON, DICKINSON AND COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

---

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO QUASH PLAINTIFF'S ATTORNEY DEPOSITION SUBPOENA OR, ALTERNATIVELY, FOR A PROTECTIVE ORDER

---

**McCarter & English, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Attorneys for Defendant
Becton, Dickinson and Company

Of Counsel
    Anthony Bartell

On The Brief
    Anthony Bartell
    Mario S. Russo

ME1 24949766v.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF THE CASE .....................................................................................3

A.    The Underlying Retractable Action.................................................................3

B.    National Union's Pleadings And Coverage Denial .........................................3

C.    National Union's Dismissal Motion ...............................................................4

D.    National Union's Rule 30(b)(6) Deposition Notice .......................................5

E.    This Court's June 5, 2015 Ruling...................................................................6

F.    National Union's Attorney Deposition Subpoena...........................................6

ARGUMENT

POINT I

FEDERAL RULE 45(d)(3) REQUIRES THIS COURT TO QUASH THE SUBPOENA
BECAUSE IT SEEKS INFORMATION AND COMMUNICATIONS PROTECTED BY
THE WORK PRODUCT AND/OR ATTORNEY-CLIENT PRIVILEGES .................................9

A.    The Subpoena Seeks Testimony Protected By The Work Product And/Or
      Attorney-Client Privileges .............................................................................10

B.    No Privilege Exceptions Or Waivers Apply ..................................................13

POINT II

THIS COURT ALTERNATIVELY SHOULD GRANT BD'S PROTECTIVE ORDER
MOTION BECAUSE BD DEMONSTRATES GOOD CAUSE FOR BARRING
DISCLOSURE OF ITS PRIVILEGED INFORMATION.........................................................21

CONCLUSION........................................................................................................23

ME1 24949766v.1

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*,
  No. CIV.A. 13-1140 SRC, 2014 WL 7073466 (D.N.J. Dec. 15, 2014) ....................... 8, 9, 20

*Blakey v. Cont'l Airlines, Inc.*,
  No. CIV. 93-2194 (WGB), 1995 WL 464477 (D.N.J. June 16, 1995) .................................. 10

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
  89 F.3d 976 (3d Cir. 1996) ...................................................................................... 17

*Cont'l Ins. Co. v. Beecham, Inc.*,
  836 F. Supp. 1027 (D.N.J. 1993) ......................................................................... 16

*Fed. Trade Comm'n v. Grolier Inc.*,
  462 U.S. 19 (1983) ................................................................................................. 10

*Frontier Ref., Inc. v. Gorman-Rupp Co.*,
  136 F.3d 695 (10th Cir. 1998) ............................................................................. 11

*George v. Siemens Indus. Automation, Inc.*,
  182 F.R.D. 134 (D.N.J. 1998) .............................................................................. 16

*In re Grand Jury Proceedings*,
  604 F.2d 798 (3d Cir. 1979) ................................................................................ 11

*Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*,
  No. CIV.A. 11-3684 DMC, 2014 WL 1494517 (D.N.J. Apr. 16, 2014) ............................... 20

*Malibu Media, LLC v. John Does 1-11*,
  No. CIV.A. 12-7726 KM, 2013 WL 1504927 (D.N.J. Apr. 11, 2013) .................................. 9

*N. River Ins. Co. v. Phila. Reins. Corp.*,
  797 F. Supp. 363 (D.N.J. 1992) ....................................................................... 15, 16

*NL Indus., Inc. v. Commercial Union Ins. Co.*,
  144 F.R.D. 225 (D.N.J. 1992) ........................................................................... *passim*

*Pittston Co. v. Allianz Ins. Co.*,
  143 F.R.D. 66 (D.N.J. 1992) ........................................................................... 13, 15

*Remington Arms Co. v. Liberty Mut. Ins. Co.*,
  142 F.R.D. 408 (D. Del. 1992) .............................................................................. 15

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994) ......................................................................... 16

*Schmulovich v. 1161 Rt. 9 LLC*,
    No. CIV.A. 07-597FLW, 2007 WL 2362598 (D.N.J. Aug. 15, 2007) ......................... 8, 9, 20

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir. 1985) ................................................................... 9, 10, 11

*U.S. E.E.O.C. v. United Galaxy*,
    No. CIV.A. 10-4987 ES, 2011 WL 4072039 (D.N.J. Sept. 13, 2011).................................... 8

## STATE CASES

*Cooper v. Gov't Emp. Ins. Co.*,
    51 N.J. 86 (1968)........................................................................................ 16

*Cumberland Mut. Fire Ins. Co. v. Diedeich*,
    No. A-2110-93T1, 1995 WL 262281 (N.J. Super. Ct. App. Div. Mar. 13, 1995)................. 19

*Hebela v. Healthcare Ins. Co.*,
    370 N.J. Super. 260 (App. Div. 2004)................................................................. 19

*Morrone v. Harleysville Mut. Ins. Co.*,
    283 N.J. Super. 411 (App. Div. 1995)................................................................. 19

*Owens-Illinois, Inc. v. United Ins. Co.*,
    138 N.J. 437 (1994)..................................................................................... 19

*Peskin v. Liberty Mut. Ins. Co.*,
    219 N.J. Super. 479 (App. Div. 1987)................................................................. 16

*State v. Mauti*,
    208 N.J. 519 (2012)................................................................................ 17, 18

*United Jersey Bank v. Wolosoff*,
    196 N.J. Super. 553 (App. Div. 1984)........................................................ 10, 15, 17

## STATE STATUTES

*N.J.S.A.* § 2A:84A-20................................................................................... 10

## RULES

Fed. R. Civ. P. 26(b) ................................................................................. 8, 20

Fed. R. Civ. P. 45(d)(3)................................................................................... 9

N.J. R. Evid. 504......................................................................................... 10

iii

## PRELIMINARY STATEMENT

Plaintiff can secure only nonprivileged discovery relevant to the parties' insurance coverage dispute and proportional to the needs of the case.  Plaintiff cannot end run these limitations through an eleventh-hour third party subpoena served on defendant's underlying defense counsel.  This subpoena does not give plaintiff carte blanche to compel testimony regarding highly sensitive information falling squarely within the attorney-client privilege and/or work product doctrine.  The Court should quash this improper subpoena or issue a Protective Order protecting from disclosure defendant's privileged information.

Plaintiff offers nothing which requires this Court to depart from its June 5, 2015 attorney-client privilege/"at issue" ruling in this action.  The Court addressed there the exact same arguments regurgitated by plaintiff here, under nearly identical circumstances as exist here, and refused to allow plaintiff access to defendant's attorney-client and work product protected documents.

Plaintiff cannot twist and expand the "at issue" doctrine to secure defendant's privileged information.  Defendant placed no privileged communications at issue simply by seeking coverage for the underlying action.  New Jersey law, not defendant, established the appreciable prejudice standard and the factors for proving same.  Had plaintiff received the notice to which it now considers itself entitled, moreover, it never would have gained access to defendant's privileged information.  The insurer cannot transform its late notice defense into open season on the attorney-client privilege.

This Court should ask itself why plaintiff fights so vigorously to depose defendant's attorney and secure its privileged information.  Defendant proves herein that plaintiff needs neither to support its coverage defenses.  Plaintiff fights so hard to punish defendant for having the unmitigated audacity to seek coverage under the policies for which it paid millions in

premiums.   Plaintiff also (and perhaps more importantly) fights so hard to warn off other policyholders from daring to initiate steps enforcing their coverage rights.   Such reasons obviously cannot support the drastic step of abandoning the attorney-client privilege.

2

## STATEMENT OF THE CASE

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") filed this action to deprive defendant/policyholder Becton, Dickinson and Company ("BD") of insurance coverage for which it paid millions of dollars in premiums.

### A.    The Underlying Retractable Action

Retractable Technologies, Inc. ("RTI") sued BD and others in the United States District Court for the Eastern District of Texas in an action captioned *Retractable Technologies, Inc. v. Becton, Dickinson and Company et al.*, Civil Action No. 5:01-CV-036 ("Underlying Action"). RTI alleged BD engaged in conduct and caused loss covered by National Union's policies. BD incurred substantial fees and costs litigating and ultimately settling the Underlying Action.

### B.    National Union's Pleadings And Coverage Denial

National Union filed this action only twenty-six (26) days after BD asked the insurer to pay its defense and indemnity costs arising from the Underlying Action. *See* Certification of Anthony Bartell ("Bartell Cert."), Exhibit ("Ex.") A. National Union seeks a judgment declaring it need provide no coverage for the Underlying Action. National Union, not BD, first raised New Jersey's "appreciable prejudice" doctrine by alleging, in its Complaint, that "[b]y failing to comply with the notice provisions of the Policies, BD deprived National Union of its contractual right to participate in the defense and settlement negotiations of any claim or suit which might create liability on the part of National Union under the terms of the Policies" and, "[a]s a result, National Union was appreciably prejudiced." *See* Compl. ¶ 39, ECF No. 1.

National Union's Complaint asserts numerous coverage defenses unrelated to BD's alleged late notice. The Complaint, in fact, asserts in omnibus fashion that notwithstanding BD's alleged late notice, coverage for the Underlying Action:

> is barred and precluded, or limited in whole or in part, by the provisions, terms, exclusions, definitions, and limitations of the Policies.

Compl. ¶ 50, ECF No. 1.

BD, on August 19, 2014, Counterclaimed against National Union for a declaration of coverage. National Union's Answer to BD's Counterclaim asserts fourteen (14) Affirmative Defenses unrelated to late notice, including:

> Coverage under the Policies is barred, in whole or in part, because the Underlying Action does not allege damages because of Advertising Injury that take place during the Policy Period and are caused by an occurrence.

Pl.'s Answer to Def.'s Countercls. 9, ECF No. 11.

On August 11, 2014 -- fifty-nine (59) days after BD sent its coverage request, and thirty-three (33) days after National Union filed this action -- the insurer finally sent to BD a sixteen (16) page, single spaced letter denying coverage for the Underlying Action. *See* Bartell Cert., Ex. B. National Union's coverage declination letter articulates numerous grounds for denying coverage, most of which bear no relation to late notice. The insurer, for just one example, reiterates its defense that the Underlying Action does "not allege damages because of **Advertising Injury** that take place during the Policy Period and are caused by an **Occurrence** under the 1994 and 1997 Policies." *See id.* at 3.

## C.    National Union's Dismissal Motion

On March 13, 2015, National Union filed a Rule 12(c) motion for judgment on the pleadings. *See* Pl.'s Mot. J. Pleadings, ECF No. 28. National Union again argued it suffered appreciable prejudice from BD's alleged late notice. *See, e.g.*, Pl.'s Mot. J. Pleadings 15, 20–23, ECF No. 28-1. National Union reiterated its "appreciable prejudice" arguments in its dismissal

motion reply brief, which the insurer filed on May 11, 2015. *See, e.g.*, Pl.'s Reply Br. 7–9, ECF No. 42.

**D.      National Union's Rule 30(b)(6) Deposition Notice**

On April 15, 2015, National Union served on BD a Rule 30(b)(6) Deposition Notice seeking testimony on, among other topics:

- BD's "defense of the RTI ACTION";

- BD's "potential liability for disparagement in the RTI ACTION";

- "[t]he potential damages for disparagement faced by [BD] in the RTI ACTION";

- "[t]he SETTLEMENT AGREEMENT";

- "[a]ll fees and costs paid by [BD] in connection with the RTI ACTION";

- "[a]ll amounts paid by [BD] pursuant to the SETTLEMENT AGREEMENT that [BD] contend[s] are covered under the POLICIES";

- "[a]ll amounts paid by [BD] pursuant to the SETTLEMENT AGREEMENT that [BD] contend[s] are covered under any insurance policy other than the POLICIES";

- BD's "decision not to allocate the payment made pursuant to the SETTLEMENT AGREEMENT between the various counts asserted against [BD] in the RTI ACTION";

- BD's "responses to discovery requests in the RTI ACTION";

- BD's "decision to tender the RTI ACTION to NATIONAL UNION";

- BD's alleged "failure to make NATIONAL UNION aware of the claims which form the subject matter of the RTI ACTION until BD's letter dated June 13, 2014"; and

- "COMMUNICATIONS between [BD] and any PERSON which discuss, mention, or RELATE TO insurance coverage for the RTI ACTION including, without limitation, any

> COMMUNICATIONS with insurance companies, insurance agents, insurance brokers, or
> other intermediaries with whom [BD has] communicated."

*See* Bartell Cert., Ex. C.  BD will make available one or more corporate designees to testify on
these topics.

**E.     This Court's June 5, 2015 Ruling**

By letter dated April 16, 2015, National Union moved to compel production of BD
documents and communications falling within the attorney-client privilege and/or work product
doctrine.  *See* Pl.'s Apr. 16, 2015 Letter 3–5, ECF No. 32.  BD opposed National Union's
application on April 28, 2015.  *See* Def.'s Apr. 28, 2015 Letter 1–4, ECF No. 37.  This Court
(Clark, Mag. J.) addressed the exact same arguments made by National Union here, under the
exact same circumstances as exist here.  The Court refused to allow National Union to pierce the
attorney-client privilege, thereby denying the insurer access to "privileged information and
documents exchanged between [defendant] and its . . . counsel."  *See* Order 2, at ¶ 2, June 5,
2015, ECF No. 43.

**F.     National Union's Attorney Deposition Subpoena**

On March 1, 2017, less than one (1) month before the now extended fact discovery
deadline, National Union served deposition subpoenas on two attorneys representing BD in the
Underlying Action, Robert Atkins, Esq. of Paul, Weiss, Rifkind, Wharton & Garrison LLP and
W. David Carter, Esq. of Mercy Carter Tidwell, LLP.  *See* Bartell Cert., Exs. D, E.[1]  BD, that
same day, asked National Union to withdraw these subpoenas on the ground they seek privileged
information, but the insurer rejected BD's request.  *See* Bartell Cert., Ex. F.  BD and National

---

[1]     National Union incorrectly will assert it requested these attorney depositions in
December 2016.  The insurer, in truth, first raised in early 2017, through counsel discussions,
only the possibility of deposing one or more BD attorneys.  When BD voiced objections to such
depositions, National Union advised it would consider the matter further.

ME1 24949766v.1

Union continue discussing an accommodation that will moot Mr. Carter's deposition. This motion, therefore, pertains only to National Union's subpoena served on Mr. Atkins ("Subpoena").

National Union concedes the Subpoena seeks attorney deposition testimony regarding the following information/communications falling squarely within the attorney-client and work product privileges:

- "the basis for counsel's decisions in the RTI Action";

- "litigation strategies, the strength or weaknesses of settled claims, as well as the existence of non-liability reasons for settlement";

- counsel's "evaluation of whether the RTI Action qualified for [insurance] coverage";

- the strategy "avenues BD and its counsel evaluated and rejected";

- BD's "communications with its former attorneys [and] any analysis regarding the defense and settlement of the RTI Action";

- "BD's communications with underlying defense counsel in the RTI Action concerning the defense and settlement of the RTI Action, including any potential liability BD faced with respect to RTI's disparagement claim"; and

- "the nature of the communications and advice provided by BD's former defense counsel."

*See* Pl.'s Mar. 17, 2017 Letter 2–4, ECF No. 109.

BD sought leave to file this motion on March 7, 2017 (*see* Def.'s Mar. 7, 2017 Letter, ECF No. 105), and National Union opposed BD's leave request by letter dated March 17, 2017 (*see* Pl.'s Mar. 17, 2017 Letter, ECF No. 109). The parties participated in an April 28, 2017 Status Teleconference, during which the Court granted BD leave to file this motion. *See* Letter

Order 1–2, at ¶ 4, Apr. 28, 2017, ECF No. 119.  The parties participated thereafter in two (2) telephonic meet and confers to narrow and/or resolve further issues regarding the Subpoena.  The parties' meet and confer efforts unfortunately proved unsuccessful.

ME1 24949766v.1

## ARGUMENT

## POINT I

### FEDERAL RULE 45(d)(3) REQUIRES THIS COURT TO QUASH THE SUBPOENA BECAUSE IT SEEKS INFORMATION AND COMMUNICATIONS PROTECTED BY THE WORK PRODUCT AND/OR ATTORNEY-CLIENT PRIVILEGES

This Court has held clearly and unequivocally that "[d]iscovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)." *Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*, No. CIV.A. 13-1140 SRC, 2014 WL 7073466, at *3 (D.N.J. Dec. 15, 2014) (Clark, Mag. J.) (citation omitted); *see also Schmulovich v. 1161 Rt. 9 LLC*, No. CIV.A. 07-597FLW, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) ("A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under [Federal Rule] 26(b)(1)." (citation omitted)).  If a subpoena falls outside the scope of permissible discovery, then this Court should "[q]uash or modify it upon a timely motion by the party served."  *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *3 (citing Fed. R. Civ. P. 45(c)(3)); *Schmulovich*, 2007 WL 2362598, at *2 (citing same).

A party possesses "standing to bring a Motion to Quash . . . a subpoena upon a nonparty" where, as here, "the party claims a personal privilege in the production sought." *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *3 (citation omitted); *Schmulovich*, 2007 WL 2362598, at *2 ("[A] party to the action will have standing to quash or modify a non-party subpoena when it claims a privilege or privacy interest in the information sought from the nonparty." (citation omitted)); *accord U.S. E.E.O.C. v. United Galaxy*, No. CIV.A. 10-4987 ES, 2011 WL 4072039, at *2 (D.N.J. Sept. 13, 2011).

Federal Rule 26(b) permits parties to obtain discovery regarding only "**nonprivileged** matter . . . relevant to [its] claim or defense . . . ."  *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at

9

*2 (emphasis added) (quoting Fed. R. Civ. P. 26(b)(1)); *Schmulovich*, 2007 WL 2362598, at *1 (citing same).   This Court "must quash" a subpoena that seeks disclosure of privileged information "if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3); *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *3; *Schmulovich*, 2007 WL 2362598, at *2.[2]

## A.      The Subpoena Seeks Testimony Protected By The Work Product And/Or Attorney-Client Privileges

The work product doctrine protects from disclosure information "prepared in anticipation of litigation" unless the party seeking such information demonstrates a substantial need therefor and undue hardship arising therefrom. *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir.), *cert. denied*, 474 U.S. 903 (1985); *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 229 (D.N.J. 1992) (citation omitted).   Even if a party makes such showing, courts must "protect against disclosure" of "core" or "opinion" work product, which consists of "the mental impressions, conclusions, opinions, [and] legal theories of an attorney or other representative of a party concerning the litigation." *Sporck*, 759 F.2d at 316 (quoting Fed. R. Civ. P. 26(b)(3)); *NL Indus., Inc.*, 144 F.R.D. at 228–29 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).   "Core" or "opinion" work product, as opposed to "ordinary" work product, "includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses." *Sporck*, 759 F.2d at 316 (citations omitted).   Courts accord "core" or "opinion" work product "an almost absolute protection from discovery" because protecting such information remains "essential to the attorney's adversary role." *Id.*; *see also NL Indus., Inc.*, 144 F.R.D. at 229 ("Opinion work

---

[2]      National Union has relied on cases confirming this principle. *See, e.g.*, *Malibu Media, LLC v. John Does 1-11*, No. CIV.A. 12-7726 KM, 2013 WL 1504927, at *2 (D.N.J. Apr. 11, 2013) (recognizing Federal Rule 45(d)(3) requires courts to "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies"). *See* Pl.'s Mar. 17, 2017 Letter 2, ECF No. 109.

product, which includes an attorney's evaluation and strategy concerning a case, is almost always absolutely privileged." (citation omitted)).  Courts recognize "any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."  *Sporck*, 759 F.2d at 316 (citations omitted).

The attorney-client privilege protects communications between an attorney and his client made in confidence to obtain or provide legal advice.  *N.J.S.A.* § 2A:84A-20; N.J. R. Evid. 504; *Blakey v. Cont'l Airlines, Inc.*, No. CIV. 93-2194 (WGB), 1995 WL 464477, at *6 (D.N.J. June 16, 1995); *NL Indus., Inc.*, 144 F.R.D. at 229; *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 562 (App. Div. 1984).  The privilege recognizes "sound legal advice or advocacy serves public ends and rests on the need to 'encourage full and frank communication between attorneys and their clients.'"  *Wolosoff*, 196 N.J. Super. at 561 (citations omitted); *see also NL Indus., Inc.*, 144 F.R.D. at 229–30; *Blakey*, 1995 WL 464477, at *6.  New Jersey courts consistently hold that where the attorney-client privilege applies, "it must be given as broad a scope as its rationale requires."  *NL Indus., Inc.*, 144 F.R.D. at 230 (citations omitted); *Wolosoff*, 196 N.J. Super. at 561 (quoting *Ervesun v. Bank of N.Y.*, 99 N.J. Super. 162, 168 (App. Div.), *certif. denied*, 51 N.J. 394 (1968)).

Courts, including the United States Supreme Court, hold the attorney-client and work product privileges apply to information derived from, or created in connection with, an underlying litigation.  The Supreme Court, in *Federal Trade Commission v. Grolier Inc.*, 462 U.S. 19, 25 (1983), recognized "the literal language of [Federal Rule 26(b)(3)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation."  (Emphasis in original).  The Third Circuit, even before *Grolier*, held a

party can withhold from production in one matter attorney-client communications and work product created in another matter, particularly where the matters relate to one another. *In re Grand Jury Proceedings*, 604 F.2d 798, 803–04 (3d Cir. 1979); *accord Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 703 (10th Cir. 1998).

The Subpoena seeks testimony falling squarely within the work product doctrine. National Union, by its own admission, seeks deposition testimony regarding:

- "the basis for counsel's decisions in the RTI Action";

- "litigation strategies, the strength or weaknesses of settled claims, as well as the existence of non-liability reasons for settlement";

- counsel's "evaluation of whether the RTI Action qualified for [insurance] coverage";

- the strategy "avenues BD and its counsel evaluated and rejected"; and

- "BD's and its counsel's contemporaneous evaluation of the claims and damages in the RTI Action."

*See* Pl.'s Mar. 17, 2017 Letter 2–4, ECF No. 109.[3]  The above information constitutes precisely the type of "core" or "opinion" work product to which Third Circuit courts consistently afford "absolute protection from discovery."  *See Sporck*, 759 F.2d at 316 ("Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses.  Such material is accorded an almost absolute protection from discovery . . . ." (internal and external citations omitted)).

---

[3]    The Subpoena also seeks testimony on "BD's understanding of the asserted claims and defenses, rulings by the court, discovery and documents exchanged, settlement discussions, and representations made to RTI regarding insurance coverage."  *See* Pl.'s Mar. 17, 2017 Letter 2, ECF No. 109.  National Union can secure nonprivileged information responsive to this topic directly from BD's Rule 30(b)(6) representative(s), who will testify on BD's defense of the Underlying Action.

National Union also seeks privileged and highly sensitive testimony regarding:

- BD's "communications with its former attorneys [and] any analysis regarding the defense and settlement of the RTI Action";

- "BD's communications with underlying defense counsel in the RTI Action concerning the defense and settlement of the RTI Action, including any potential liability BD faced with respect to RTI's disparagement claim"; and

- "the nature of the communications and advice provided by BD's former defense counsel."

*See* Pl.'s Mar. 17, 2017 Letter 3–4, ECF No. 109.

The above communications fall squarely within the attorney-client privilege. The privilege protects this information from disclosure because (1) BD constitutes the subpoenaed attorney's client; (2) BD, in such capacity, asked the subpoenaed attorney, in his professional capacity, to render legal advice regarding the defense and settlement of the RTI Action; and (3) the subpoenaed attorney rendered such advice to BD.

The Subpoena, in short, seeks information protected by the work product and/or attorney-client privileges.[4]

## B.    No Privilege Exceptions Or Waivers Apply

National Union cannot secure attorney work product unless the insurer demonstrates (a) "a substantial need for the information" and, equally importantly, (b) it cannot secure the

---

[4]    National Union also purportedly seeks attorney testimony regarding alleged "relevant, non-privileged matters."  *See* Pl.'s Mar. 17, 2017 Letter 2, 5, ECF No. 109.  National Union, however, does not, because it cannot, identify such testimony.  Even if the insurer could identify such testimony, "any slight factual content [the attorneys' testimony] may have [would remain] outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."  *See Sporck*, 759 F.2d at 316 (citations omitted).

13

information "elsewhere without undue hardship."  *NL Indus., Inc.*, 144 F.R.D. at 229 (citing *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408 (D. Del. 1992)); *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 72 (D.N.J. 1992).  National Union cannot satisfy this high burden of proof.

National Union cannot prove it can obtain the subpoenaed information from no other source.  The insurer will secure all the information it allegedly needs from BD's Rule 30(b)(6) corporate designee(s).  Such designee(s), pursuant to National Union's Rule 30(b)(6) Deposition Notice, will testify about:

- BD's "defense of the RTI ACTION";[5]

- BD's "potential liability for disparagement in the RTI ACTION";

- "[t]he potential damages for disparagement faced by [BD] in the RTI ACTION";

- "[t]he SETTLEMENT AGREEMENT";

- "[a]ll fees and costs paid by [BD] in connection with the RTI ACTION";

- "[a]ll amounts paid by [BD] pursuant to the SETTLEMENT AGREEMENT that [BD] contend[s] are covered under the POLICIES";

- "[a]ll amounts paid by [BD] pursuant to the SETTLEMENT AGREEMENT that [BD] contend[s] are covered under any insurance policy other than the POLICIES";

- BD's "decision not to allocate the payment made pursuant to the SETTLEMENT AGREEMENT between the various counts asserted against [BD] in the RTI ACTION";

- BD's "responses to discovery requests in the RTI ACTION";

---

[5]     The parties have agreed to limit this topic to BD's "defense of the RTI Action, meaning the discovery requests and responses served by RTI and [BD], the dispositive motions filed by RTI and [BD], the expert reports served by RTI and [BD], the pleadings filed by RTI and [BD], and [BD's] decision to depose certain individuals."  *See* Bartell Cert., Ex. G.

14

- BD's "decision to tender the RTI ACTION to NATIONAL UNION";

- BD's alleged "failure to make NATIONAL UNION aware of the claims which form the subject matter of the RTI ACTION until BD's letter dated June 13, 2014"; and

- "COMMUNICATIONS between [BD] and any PERSON which discuss, mention, or RELATE TO insurance coverage for the RTI ACTION including, without limitation, any COMMUNICATIONS with insurance companies, insurance agents, insurance brokers, or other intermediaries with whom [BD has] communicated."

*See* Bartell Cert., Ex. C.  These topics unquestionably relate directly to the information National Union now says it needs from BD's attorney, *i.e.*, "(i) the defense and settlement of the RTI Action, (ii) BD's alleged good faith in requesting insurance coverage 10 years after its settlement with RTI, and (iii) BD's 'inadvertence' defense."  *See* Pl.'s Mar. 17, 2017 Letter 4–5, ECF No. 109.[6]  These topics echo almost verbatim the subjects about which National Union seeks attorney deposition testimony.  *See supra* at 7, 12.

National Union also cannot demonstrate a substantial need for BD's privileged information.  National Union allegedly needs attorney testimony to establish the second prong of New Jersey's appreciable prejudice test; *i.e.*, had the insurer received earlier notice of the Underlying Action, then it could have resolved same on terms more favorable to BD.  National Union, however, can secure the precise information it seeks through the nearly two (2) million pages of Underlying Action documents (*e.g.*, pleadings, motions, discovery requests/responses, document productions, etc.) BD has produced to the insurer (and, as mentioned above, through depositions of BD's corporate designee(s) and fact witnesses in this action).  These documents

---

[6]     National Union's March 17, 2017 letter to the Court ignores the insurer's Rule 30(b)(6) Deposition Notice and the deposition topics identified therein, all of which bear enormous relevance to the insurer's ability to secure from other sources the information it seeks through the Subpoena.  *See* Pl.'s Mar. 17, 2017 Letter, ECF No. 109.

identify, among other facts, the defenses BD asserted (and did not assert) in the Underlying Action, the discovery BD served (and did not serve) in the Underlying Action, the individuals BD deposed (and did not depose) in the Underlying Action, and the experts BD retained (and did not retain) in the Underlying Action. National Union, in short, needs no privileged attorney work product or testimony thereon.

National Union cannot bypass so easily the attorney-client privilege. New Jersey courts hold consistently that where the attorney-client privilege applies, "it must be given as broad a scope as its rationale requires." *Wolosoff*, 196 N.J. Super. at 561 (citation omitted). This Court agrees with this principle and routinely protects from production, in coverage litigation, attorney-client communications and work product generated in underlying matters. *See, e.g.*, *N. River Ins. Co. v. Phila. Reins. Corp.*, 797 F. Supp. 363 (D.N.J. 1992); *Pittston Co.*, 143 F.R.D. 66.

National Union cannot twist the "at issue" doctrine to secure the testimony of BD's underlying defense counsel. This Court applies the "at issue" doctrine only "when a party has asserted a claim or defense that he intends to prove through the use of privileged materials." *NL Indus., Inc.*, 144 F.R.D. at 232; *see also N. River Ins. Co.*, 797 F. Supp. at 370 (holding the "at issue" doctrine applies "only when [a] party has asserted a claim or defense that he intends to prove by disclosure of an attorney-client communication"); *accord Remington Arms Co.*, 142 F.R.D. at 415. Where a party will not rely on privileged communications to prove its case, the "at issue" doctrine becomes irrelevant because it "cannot be said [the party] is using the attorney-client privilege as a 'sword and shield' through selective disclosure of privileged documents."

16

*N. River Ins. Co.*, 797 F. Supp. at 370.[7]  BD will not prove its claims or defenses by disclosing or describing an attorney-client communication.

BD placed no privileged information "at issue" merely by seeking coverage for the Underlying Action.  If such argument supports the "at issue" exception, then the attorney-client privilege becomes meaningless in coverage litigation because every policyholder, in every coverage case, seeks coverage for an underlying claim.  Case after case finds this argument insufficient to pierce the privilege.  *See, e.g.*, *NL Indus., Inc.*, 144 F.R.D. at 233 (rejecting insurance company's argument that the policyholder impliedly waived privileges by attempting to obtain coverage).

New Jersey law and not BD, moreover, placed at issue National Union's "appreciable prejudice" proof burden.  New Jersey courts adopted and enforce the requirement that insurers, like National Union, demonstrate they suffered "appreciable prejudice" to escape coverage based on late notice.  *See, e.g.*, *Cont'l Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1047 (D.N.J. 1993) (citing New Jersey cases requiring the insurer to prove appreciable prejudice); *Cooper v. Gov't Emp. Ins. Co.*, 51 N.J. 86, 94 (1968); *Peskin v. Liberty Mut. Ins. Co.*, 219 N.J. Super. 479, 481 (App. Div. 1987).  National Union, in fact, first mentioned "appreciable prejudice" in this action by asserting, in its Complaint, that "[b]y failing to comply with the notice provisions of the Policies, BD deprived National Union of its contractual right to participate in the defense and

---

[7]  National Union's March 17, 2017 letter (ECF No. 109) cites cases confirming these principles.  *See, e.g.*, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (holding a policyholder places "in issue" the advice of counsel only "where the [policyholder] asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication"); *George v. Siemens Indus. Automation, Inc.*, 182 F.R.D. 134, 139 (D.N.J. 1998) (holding the "at issue" exception applies only "[w]hen a party to a lawsuit puts protected information at issue by making it relevant to the case, **and** the application of the privilege would deny the opposing party access to information vital to its defense." (emphasis added)).

settlement negotiations of any claim or suit which might create liability on the part of National Union under the terms of the Policies" and, "[a]s a result, National Union was appreciably prejudiced." *See* Compl. ¶ 39, ECF No. 1.

By inserting the "appreciable prejudice" standard into this action, New Jersey law also necessarily incorporates the factors courts consider in establishing such prejudice; *i.e.*, (1) whether the policyholder's untimely notice caused the insurer irretrievably to lose substantial rights (*i.e.*, unavailable witnesses and lost documents), and (2) whether, had the insurer received timely notice, it could have achieved a better outcome in the underlying litigation than that secured by its policyholder. *See, e.g.*, *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976 (3d Cir. 1996).[8]  If this Court accepts National Union's "at issue" argument, then every insurer, in every late notice case, can secure its policyholder's privileged material.  This Court (Clark, Mag. J.) previously denied an identical effort by National Union to twist and expand the "at issue" doctrine to secure BD's privileged documents.  *See* Order 2, at ¶ 2, June 5, 2015, ECF No. 43.  This Court considered carefully the exact same arguments regurgitated by National Union here, under the exact same circumstances as exist here, and refused to disregard the attorney-client and work product privileges.

National Union fails to demonstrate it cannot "secure[] from any less intrusive source" the information it needs to prove appreciable prejudice.  *See State v. Mauti*, 208 N.J. 519, 537 (2012) (citation omitted); *Wolosoff*, 196 N.J. Super. at 564 (quoting *In re Kozlov*, 79 N.J. 232, 244 (1979)); *accord* Pl.'s Mar. 17, 2017 Letter 4–5, ECF No. 109.  National Union, at the very least, must first depose BD's Rule 30(b)(6) corporate designee(s), who will testify about the very

---

[8]     Regarding factor one, the entire Underlying Action file remains available to National Union, and the relevant nonlawyer players remain hale and hearty.  National Union's access to this file and these individuals, moreover (and again), allows it to construct a factor two argument about how it could have resolved better the Underlying Action.  *See supra* at 15–16.

same topics about which National Union seeks privileged attorney testimony.  National Union's attempt to trash the attorney-client privilege, in short, remains hopelessly premature.

National Union also cannot demonstrate it possesses "a legitimate need to see and otherwise use" BD's privileged information.  *See Mauti*, 208 N.J. at 537 (citation omitted). National Union needs no privileged information to assess, in the insurer's words, "(i) the defense and settlement of the RTI Action, (ii) BD's alleged good faith in requesting insurance coverage 10 years after its settlement with RTI, and (iii) BD's 'inadvertence' defense."  *See* Pl.'s Mar. 17, 2017 Letter 4–5, ECF No. 109.  National Union, again, can secure this precise information through numerous nonprivileged sources, including the Underlying Action court filings (*e.g.*, pleadings, motions, deposition transcripts, etc.), BD's other documents produced in this coverage action, and the depositions of BD's corporate designee(s) and fact witnesses in this action. National Union likewise can determine, through nonprivileged sources, the strategy "avenues BD and its counsel evaluated and rejected."  *See id.* at 4.  National Union need not inquire into why BD rejected such strategies because this information bears no relevance to any disputed coverage issue.[9]

Even if National Union had received the earlier notice to which it now claims entitlement, it never could have controlled BD's defense of the Underlying Action and thereby gained access to BD's privileged information.  *See* Pl.'s Mar. 17, 2017 Letter 3, ECF No. 109. National Union sold to BD excess policies which impose on the insurer no "obligat[ion] to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured."  Although the policies allow the insurer to participate in its policyholder's defense, National Union never would have associated in BD's litigation of

---

[9]      National Union's cited cases confirm parties can satisfy the "need" element "only in the . . . narrow[est] of circumstances."  *See, e.g.*, *Mauti*, 208 N.J. at 538.

ME1 24949766v.1

the Underlying Action.  National Union -- regardless of when it received notice of the Underlying Action -- would have done what it did in 2014; *i.e.*, denied coverage based upon the numerous non-late notice defenses articulated in its August 11, 2014 coverage declination letter and in its Complaint and Answer to BD's Counterclaims.

National Union's numerous coverage defenses, moreover, would have created serious conflict problems preventing National Union from ever controlling BD's defense.  *See Morrone v. Harleysville Mut. Ins. Co.*, 283 N.J. Super. 411, 421 (App. Div. 1995); *Cumberland Mut. Fire Ins. Co. v. Diedeich*, No. A-2110-93T1, 1995 WL 262281, at *2 (N.J. Super. Ct. App. Div. Mar. 13, 1995).[10]  No control means no access to BD's privileged materials.  *See NL Indus., Inc.*, 144 F.R.D. at 231–32 (holding the joint defense doctrine applies only where the insurer defends its insured).[11]

Because National Union cannot circumvent the attorney-client and work product privileges, this Court should quash the insurer's Subpoena.

---

[10]   National Union, again, would have rejected any defense obligation for the Underlying Action, and such rejection would have prevented it from challenging the reasonableness of BD's defense and settlement strategies.  *See Owens-Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 477 (1994); *Hebela v. Healthcare Ins. Co.*, 370 N.J. Super. 260, 278 (App. Div. 2004); Pl.'s Mar. 17, 2017 Letter 3, ECF No. 109.

[11]   National Union grossly misconstrues the significance of BD's Rule 26(a)(1) Initial Disclosures and Interrogatory responses.  *See* Pl.'s Mar. 17, 2017 Letter 1–2, ECF No. 109. Federal Rule 26(a)(1)(A)(i) requires parties to identify, in their Initial Disclosures, "individual[s] likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses."  BD identified "[v]arious attorneys at Paul, Weiss, Rifkind, Wharton & Garrison LLP" as possessing such information, but never represented -- in its Initial Disclosures or elsewhere -- that it would call these attorneys as witnesses or otherwise use these individuals to support its claims or defenses.  *See* Bartell Cert., Ex. H.  BD's responses to National Union's Interrogatories likewise identify "[v]arious attorneys at Paul, Weiss, Rifkind, Wharton & Garrison LLP" as individuals who "possess (or may possess)" certain knowledge or information relevant to the subject matter of this litigation.  *See* Bartell Cert., Ex. I.  BD's identification of underlying defense counsel neither subjects counsel automatically to depositions nor waives any privilege(s) associated with counsel's testimony.

## POINT II

## THIS COURT ALTERNATIVELY SHOULD GRANT BD'S PROTECTIVE ORDER MOTION BECAUSE BD DEMONSTRATES GOOD CAUSE FOR BARRING DISCLOSURE OF ITS PRIVILEGED INFORMATION

Limits exist regarding "the permissible scope of discovery." *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *2; *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, No. CIV.A. 11-3684 DMC, 2014 WL 1494517, at *2 (D.N.J. Apr. 16, 2014). A party, for just one example, can obtain discovery regarding only "**nonprivileged** matter . . . relevant to any party's claim or defense . . . ." *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *2 (emphasis added) (quoting Fed. R. Civ. P. 26(b)(1)); *Schmulovich*, 2007 WL 2362598, at *1 (citing same).

This Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *2; *Koninklijke Philips N.V.*, 2014 WL 1494517, at *2. A party may move for a protective order regarding "a subpoena issued to a nonparty if it believes its own interests are jeopardized by [such] discovery." *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *4 (citation omitted). Federal Rule 26(b)(2)(C) requires this Court to limit discovery where the propounding party can secure the requested information "from some other source that is more convenient, less burdensome, or less expensive" or where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at *2 (citation omitted); *Koninklijke Philips N.V.*, 2014 WL 1494517, at *2 (citation omitted).

BD demonstrates good cause for a Protective Order because the Subpoena seeks information protected by the attorney-client and/or work product privileges and because no privilege waiver or exception applies. *See supra* at 9–20. National Union, moreover, can secure the information it seeks and allegedly needs through numerous nonprivileged sources, including the Underlying Action court filings (*e.g.*, pleadings, motions, deposition transcripts, etc.), BD's documents produced in this coverage action, and depositions of BD's corporate designee(s) and fact witnesses in this action. *See supra* at 15–16, 19. At the end of the day, the burden and prejudice of disclosing privileged information outweighs significantly any alleged benefit from such disclosure.

This Court, for the foregoing reasons, should grant BD's Protective Order motion.

**CONCLUSION**

BD respectfully requests this Court either quash the Subpoena or issue a Protective Order

protecting from disclosure defendant's privileged information.

>McCARTER & ENGLISH, LLP
>Four Gateway Center
>100 Mulberry Street
>Newark, NJ 07102
>Phone:  (973) 639-2062
>Fax:  (973) 297-3846
>Email:  abartell@mccarter.com
>Attorneys for Defendant


>_s/ Anthony Bartell_
>By: Anthony Bartell (A 0079)

Dated:  June 2, 2017

23