# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | Civil Action No. 14-4318 (CCC) |
| **Plaintiff,** | **OPINION AND ORDER** |
| v. | |
| BECTON, DICKINSON AND COMPANY, | |
| **Defendant.** | |

**CLARK, Magistrate Judge**

      **THIS MATTER** comes before the Court on two motions: (1) a motion by Plaintiff National Union Fire Insurance Company of Pittsburgh, PA. ("National Union" or "Plaintiff") seeking the entry of a protective order prohibiting Defendant Becton, Dickinson and Company ("Becton" or "Defendant") from inquiring into certain subjects during Defendant's Federal Rule of Civil Procedure 30(b)(6) deposition of Plaintiff's corporate representative [Dkt. No. 122]; and (2) a motion by Defendant seeking to quash the deposition subpoena served upon Robert Atkins, Esq. of Paul, Weiss, Rifkind, Wharton & Garrison LLP, or, in the alternative, for the entry of a protective order barring Plaintiff from inquiring into privileged topics should Mr. Atkins' deposition be permitted to proceed [Dkt. No. 123]. Both motions are opposed [Dkt. Nos. 124, 125]. For the reasons set forth below, Plaintiff's motion for a protective order [Dkt. No. 122] is **DENIED**, and Defendant's motion [Dkt. No. 123] is **GRANTED in part and DENIED in part**.[1]

Additionally, as set forth below, the Order entered by the Court on July 28, 2015 granting

---

[1] Defendant's motion to quash is granted and Defendant's motion for a protective order is denied as moot.

Plaintiff's request to bifurcate and stay discovery related to Defendant's bad faith counterclaim [Dkt. No. 55] is hereby **VACATED** *sua sponte*.

## I.     BACKGROUND

Plaintiff filed its Complaint in this matter on July 9, 2014, seeking a declaratory judgment of its rights and obligations under certain umbrella liability insurance policies issued to Defendant. *See* Dkt. No. 1. Specifically, Plaintiff seeks a declaration that it is not obligated to defend or indemnify Defendant in connection with two antitrust lawsuits filed against Defendant (the "Underlying Actions") which were settled by Defendant prior to being tendered to Plaintiff. The Underlying Actions were instituted by Retractable Technologies, Inc. ("RTI") in state court in 1998 and then in federal court in 2001. The Underlying Actions were settled by Defendant in 2004 for $100,000,000.

Although the Underlying Actions were settled by Defendant in 2004, Plaintiff was not formally notified of the Underlying Actions until it received a letter from Defendant, dated June 13, 2014, demanding defense and indemnity costs arising therefrom. On August 11, 2014, subsequent to the filing of this action, Plaintiff notified Defendant of its denial of coverage for the Underlying Actions.

In response to Plaintiff's Complaint, Defendant filed its Answer and Counterclaim on August 19, 2014. *See* Dkt. No. 7. Defendant filed an Amended Answer and Counterclaim on June 23, 2016. *See* Dkt. No. 87. Defendant's Counterclaim asserts three causes of action for: (1) a declaratory judgment that it is entitled to coverage; (2) breach of contract; and (3) breach of the duty of good faith and fair dealing. *See Id.* Defendant's bad faith claim asserts that Plaintiff breached its good faith duties to Defendant through its alleged failure to conduct a reasonable

investigation of the Underlying Actions and Defendant's claim for coverage prior to filing this action and prior to concluding that Defendant was not entitled to coverage.

On March 13, 2015, Plaintiff filed a motion for judgment on the pleadings. *See* Dkt. No. 28. The arguments set forth by the parties in connection with Plaintiff's motion for judgment on the pleadings are relied upon by the parties in their present motions. In its motion for judgment on the pleadings, Plaintiff argued that it owed no coverage for the Underlying Actions because Defendant breached various policy conditions when it settled the underlying action without first notifying Plaintiff. Specifically, as relevant to the present motions, Plaintiff asserted that Defendant's failure to notify Plaintiff of the Underlying Actions until sixteen years after the commencement of the Underlying Actions and ten years after their settlement "constitutes late notice as a matter of law because it represents a fundamental breach of [Defendant's] obligations to [Plaintiff]." Dkt. No. 28 at p. 2. In opposition to Plaintiff's motion, Defendant claimed that Plaintiff could only be excused from its duties to provide coverage by proving it suffered "appreciable prejudice" stemming from Defendant's late notice, which requires a showing that Plaintiff: (1) irretrievably lost substantial rights; and (2) likely would have defended successfully against the Underlying Actions. Dkt. No. 34 at p. 15.

While Plaintiff's motion for judgment on the pleadings was still pending, Plaintiff filed a request to bifurcate Defendant's bad faith claim and related discovery pending a determination on Defendant's entitlement to coverage. *See* Dkt. No. 40. In support of its request, Plaintiff asserted that Defendant could not maintain a bad faith claim until it first established an entitlement to coverage, and because the Court would soon examine Defendant's bad faith claim in connection with Plaintiff's motion for judgment on the pleadings, a stay of all bad faith discovery was warranted. *Id.* In opposition, Defendant disagreed with Plaintiff's contention that its bad faith

claim would not be viable absent a determination of entitlement to coverage and argued that a bifurcation of discovery would waste the parties' and the Court's time and resources and would result in prejudice to Defendant. *See* Dkt. No. 44.

On July 28, 2015, the Court granted Plaintiff's request and bifurcated and stayed discovery related to Defendant's bad faith claim. *See* Dkt. No. 55. In its Order, the Court noted that although a large portion of the briefing submitted by the parties in connection with Plaintiff's request to bifurcate addressed the bifurcation of Defendant's bad faith claim in its entirety, such a request was dispositive and must be made before the District Judge. *Id.* at n. 1. Accordingly, the Court granted Plaintiff's request only insofar as all discovery regarding Defendant's bad faith claim would be "held in abeyance pending the District Court's decision on the issue of bifurcation of the trial of this matter." *Id.* at n. 2. To date, Plaintiff has not submitted a request to the District Judge to bifurcate this matter in its entirety.

Thereafter, on September 30, 2015, Defendant filed a motion for leave to amend its Answer. *See* Dkt. No. 58. On October 22, 2015, the Court entered an Order administratively terminating Plaintiff's motion for judgment on the pleadings pending disposition of Defendant's motion to amend. *See* Dkt. No. 64. Defendant's motion to amend was granted and Defendant filed its Amended Answer and counterclaims on June 23, 2016. Plaintiff has not renewed its motion for judgment on the pleadings.

The present motions arise from the parties' seemingly endless conflicts over the scope of proper discovery in connection with this matter. After numerous attempts to resolve the current disputes informally, the Court permitted the filing of the instant motions.

Plaintiff's motion seeks relief related to the 30(b)(6) deposition notice served by Defendant based upon the Order entered by the Court on July 28, 2015 granting Plaintiff's request to bifurcate

discovery related to Defendant's bad faith counterclaim. On January 26, 2015, Defendant served Plaintiff with the 30(b)(6) notice at issue seeking deposition testimony on twenty-one (21) topics and the production of all documents related to those topics (the "National Union Notice"). *See* Dkt. No. 122, Sheridan Decl. at Ex. 1. According to Plaintiff, six of the twenty-one topics included in the National Union Notice relate to Defendant's bad faith counterclaim. Plaintiff objected to the National Union Notice and advised Defendant that it would not provide a witness to testify on Topics 3, 4, 17 and 18.

After discovery related to Defendant's bad faith claim was bifurcated and stayed, Plaintiff reiterated its position that six of the topics in the National Union Notice, specifically Topics 3, 4, 12, 16, 17 and 18, seek information related to Defendant's bad faith claim and are therefore improper at the present stage of this litigation.[2] The Court ordered the parties to meet and confer and attempt to narrow and/or resolve their disputes regarding the scope of the National Union Notice. Following their meet and confer, Plaintiff agreed to designate a witness to testify as to Topics 16, 17 and 18 and Defendant agreed to withdraw Topic 12. The parties were unable to reach any sort of understanding or agreement as to Topics 3 and 4, which are now the subject of Plaintiff's motion.[3]

Plaintiff presently seeks to bar Defendant from inquiring into Plaintiff's claims handling procedures during Defendant's 30(b)(6) deposition of Plaintiff's corporate representative claiming

---

[2] The Court notes that although Plaintiff objects to the contested topics on the basis that they are improper in light of the Court's Order staying bad faith discovery, the National Union Notice was served approximately six months prior to the entry of the stay.

[3] Topic 3 seeks: National Union's procedures, from January 29, 2001 to the present, for handling claims for coverage, under its insurance policies (including [the policies at issue in this action]), for defense and indemnity costs arising from alleged advertising injury claims. National Union Notice at p. 7. Topic 4 seeks: Any and all manuals, guidelines or other documents, in effect from January 29, 2001 to the present, relating to, outlining, setting forth, describing, illustrating or otherwise demonstrating National Union's claims handling procedures, policies and/or practices, including all such manuals, guidelines or other documents as they relate to the Underlying Action[s] and/or [Defendant's] coverage claim. *Id.*

that such information relates to bad faith and is therefore improper based upon the Court's stay of bad faith discovery. In opposition to Plaintiff's motion, Defendant argues that the discovery into Plaintiff's claims handling procedures sought in the 30(b)(6) topics at issue relates to Plaintiff's claim of appreciable prejudice which requires Plaintiff to demonstrate that Defendant's late notice resulted in Plaintiff's loss of the opportunity to follow its claims handling procedures.

Defendant's motion arises out of a deposition subpoena served by Plaintiff on Robert Atkins, Esq. of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") on March 1, 2017 (the "Atkins Subpoena"). Dkt. No. 123, Bartell Cert. at Ex. D. Mr. Atkins represented Defendant in the Underlying Actions, and through the Atkins Subpoena, Plaintiff seeks information regarding Mr. Atkins' recollection and understanding of the events surrounding the litigation and settlement of the Underlying Actions. Plaintiff admittedly seeks privileged information including communications between Mr. Atkins and Defendant, evaluations of strategy, and impressions regarding the merits of the claims. Defendant claims that because the Subpoena seeks privileged information, it must be quashed. Alternatively, should Plaintiff be permitted to depose Mr. Atkins, Defendant seeks the entry of a protective order barring Plaintiff from inquiring into privileged subject matter.

In opposition to Defendant's motion, Plaintiff claims that it should be permitted to obtain documents and testimony related to privileged matters allegedly placed at issue by Defendant in this matter including: (1) Defendant's analysis regarding the defense and settlement of the underlying actions; (2) the reasons underlying Defendant's belated request for coverage for the Underlying Actions; and (3) the basis for Mr. Atkins' decisions in the Underlying Actions. Additionally, Plaintiff argues that even if it is not permitted to depose Mr. Atkins regarding privileged matters, the Atkins Subpoena should not be quashed in its entirety because it seeks

relevant nonprivileged information from Mr. Atkins "regarding the [Underlying Actions], including [Defendant's] contemporaneous understanding of the asserted claims and defenses, rulings by the court, discovery and documents exchanged, settlement discussions, and representations made to RTI regarding insurance coverage." Dkt. No. 125 at p. 6.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999).

Pursuant to Rule (26)(b)(2)(C), courts are required to limit discovery where:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Similarly, pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" In moving for a protective order, the "burden of persuasion [is] on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986). The party seeking a protective order "must show good cause by demonstrating a particular need for protection." *Id.* Establishing "good cause" requires the movant to "specifically demonstrate [ ] that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994)).

Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). *OMS Investments, Inc. v. Lebanon Seaboard Corp.,* 2008 WL 4952445 (D.N.J. Nov. 18, 2008). In addition, pursuant to Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and the Court has a responsibility to enforce this duty. However, it is the party claiming undue burden that must establish same. *Nye v. Ingersoll Rand Company,* Civ. No. 08–3481(DRD), 2011 U.S. Dist. LEXIS 7383, at *6, 2011 WL 253957 (D.N.J. Jan. 25, 2011); *OMS Investments,* 2008 WL 4952445, at *2. If a subpoena falls outside the scope of permissible discovery, the Court has

authority to quash or modify it upon a timely motion by the party served. Fed. R. Civ. P. 45(d)(3).

Specifically, four circumstances exist which require the Court to quash or modify a subpoena. Rule 45(d)(3)(A) provides that:

> (A) On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> > (i) fails to allow reasonable time to comply;
> >
> > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> >
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> >
> > (iv) subjects a person to undue burden.

*Id.* In contrast, a court *may* quash or modify a subpoena where it requires "disclosing a trade secret or other confidential research, development, or commercial information." Rule 45(d)(3)(B)(i). The burden of the party opposing the subpoena "is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order. *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014). (internal quotation marks omitted); *see also Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (moving party bears a "heavy burden" of demonstrating that an enumerated need for quashing the subpoena exists).

## III.  DISCUSSION

### A. Bifurcation of Bad Faith Discovery

The events which have transpired in this matter subsequent to the Court's bifurcation and stay of bad faith discovery have given the Court cause to reassess whether such a procedure is

indeed the appropriate course of action. Accordingly, the Court *sua sponte* reconsiders the propriety of its previous Order.

As argued by Plaintiff in support of its request to bifurcate and as acknowledged by the Court in granting Plaintiff's request, New Jersey courts have adopted a "fairly debatable" standard which requires that "a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim."[4] *Taddei v. State Farm Indem. Co.*, 401 N.J. Super. 449, 461 (App. Div. 2008) (citing *Pickett v. Lloyd's*, 131 N.J. 457, 473 (1993)). Because discovery on a bad faith claim would be rendered needless if the insurer prevails on the coverage claim, "proof an insured is entitled to coverage as a matter of law is a necessary prerequisite to pursuing discovery regarding a bad faith claim." *Wacker-Ciocco v. Gov't Employees Ins. Co.*, 439 N.J. Super. 603, 614 (App. Div. 2015). In light of the view of the New Jersey courts that holding bad faith discovery in abeyance pending a determination of coverage "promotes judicial economy and efficiency by holding in abeyance expensive, time-consuming, and potentially wasteful discovery on a bad faith claim that may be rendered moot by a favorable ruling for the insurer," it appeared to this Court that the bifurcation of discovery on Defendant's bad faith claim would be in the best interests of the parties and the Court. *Procopio v. Gov't Employees Ins. Co.*, 433 N.J. Super. 377, 381 (App. Div. 2013).

However, while the Court is mindful of New Jersey law on this issue, such law does not bind this Court. "Although a federal court sitting in diversity applies the law of the forum state . .

---

[4] The Court notes that Defendant disagrees with Plaintiff's assertion that Defendant cannot maintain its bad faith absent a finding of coverage and argues that the "fairly debatable" standard does not apply to Defendant's bad faith claim which is not based upon a denial of coverage. A determination of whether Defendant's bad faith is subject to the "fairly debatable" standard is not within the scope of this Opinion and Order and the Court's analysis herein makes no findings as to this issue.

. the conduct of discovery and bifurcation are matters of federal procedural law." *Riddle v. Royal Indem. Co.*, No. 3:05CV-540-S, 2007 WL 542389, at *1 (W.D. Ky. Feb. 16, 2007) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965); *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938)). Therefore, this Court's determination regarding the bifurcation and stay of bad faith discovery is made pursuant to Federal Rule of Civil Procedure Rule 42(b) and is not dictated by New Jersey law. *See Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-CV-00155, 2013 WL 98059, at *1 (W.D. Ky. Jan. 7, 2013) (finding "overwhelming precedent where federal courts have applied Federal Rule of Civil Procedure 42(b) rather than state law to decide bifurcation issues – many of which appear to be in the precise context of [bad faith claims]").

Pursuant to Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Medpointe Healthcare, Inc. v. HiTech Pharmacal Co., Inc.,* 2007 WL 188285, at * 5 (D.N.J. Jan. 22 2007); *see also Idzojtic v. Pennsylvania R.R. Co.,* 456 F.2d 1228, 1230 (3d Cir. 1972) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability").

In determining whether bifurcation under Rule 42(b) is proper, "courts should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *SenoRx, Inc. v. Hologic, Inc.,* 920 F.Supp.2d 565, 567 (D. Del. 2013) (citations omitted). The moving party has the burden of demonstrating that bifurcation would best serve the interests of judicial economy and that no party would be unduly prejudiced by separate trials. *Ortho–McNeil v. Teva Pharmaceuticals USA,* 2003 WL

25888720, at *2 (D.N.J. Jan. 28, 2003) (citing *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 180 F.R.D. 254, 256 (D.N.J. 1997)); *see also Rodin Properties–Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.,* 49 F.Supp.2d 709, 721 (D.N.J. 1999) ("Because 'a single trial tends to lessen the delay, expense and inconvenience to all parties,' the burden rests on the party seeking bifurcation to show that it is proper").

At the time the Court found that bifurcating and staying all bad faith discovery would be in the best interests of the Court and the parties, this matter had been pending for approximately one year, it appeared that a decision on Plaintiff's motion for judgment on the pleadings would be forthcoming, and discovery was still in its early stages. As it stands now, this case has been pending for well over three years, Plaintiff has seemingly abandoned its previous position that this matter should be resolved on the pleadings alone, and despite the passage of a significant amount of time, due to constant disputes between the parties, it does not appear that discovery is nearing the finish line. The present posture of this litigation leads the Court to conclude that a continued stay of bad faith discovery is improper under the considerations of Rule 42(b).

While some cases may indeed be simplified and expedited by holding bad faith discovery in abeyance pending a determination of coverage, it has become exceedingly clear that this case is not one of them. The Court need look no further than Plaintiff's presently pending motion to reinforce this finding. Plaintiff's motion, which was filed in June of 2017, seeks relief related to the National Union Notice which was served in January of 2015. The basis for Plaintiff's objection to the now three-year-old National Union Notice is that it improperly seeks discovery related to Defendant's bad faith claim, and it appears certain that a continuation of the present stay will result in countless more disputes over the contours of Defendant's discovery requests and whether such requests may in some way cross the border into the bad faith arena. Unfortunately, the parties'

present disputes are far from the only significant issues the parties have raised to the Court requesting intervention.

Furthermore, although the Court noted in granting Plaintiff's bifurcation application that this stay would only apply to discovery and only remain in place pending an application to the District Judge for bifurcation of the trial of this matter, no such application was ever made. Because Plaintiff has not requested that a final determination on the issue of coverage be made prior to addressing Defendant's bad faith claim, the only practical effect of the present stay is to subject the parties and the Court to not one, but two, contentious and protracted discovery periods.

Based upon the foregoing, the Court finds that continuing the stay of bad faith discovery in this matter would be an affront to judicial economy and will not serve the interests of the parties or the Court. Accordingly, because the Court finds that the bifurcation and stay of bad faith discovery in this matter is improper under the consideration of Rule 42(b), the Court's July 28, 2015 Order [Dkt. No. 55] is hereby **VACATED** and discovery on Defendant's bad faith claim shall proceed immediately.[5]

### B. Plaintiff's Motion for a Protective Order [Dkt. No. 122]

Plaintiff's motion seeks the entry of a protective order barring Defendant from inquiring into Topics 3 and 4 during its 30(b)(6) deposition of Plaintiff's corporate representative. Plaintiff contends that Topics 3 and 4 of the National Union Notice seek information related to Defendant's bad faith claim, and therefore represent an attempt by Defendant to circumvent this Court's previous Order staying all discovery related that claim. Plaintiff claims that because Topics 3 and 4 relate to Defendant's bad faith claim and "because testimony on such topics will not promote

---

[5] In the event that Plaintiff moves for bifurcation of the trial in this matter or to sever and stay Defendant's bad faith claim and such a request is granted by the District Judge, Plaintiff may renew its request that bad faith discovery be stayed pending a final determination of Defendant's entitlement to coverage.

fairness and efficiency among litigants or comply with [this Court's] broad authority to regulate discovery," good cause exists for the entry of a protective order. Dkt. No. 122 at p. 5. Beyond its argument that the discovery sought relates to Defendant's bad faith claim and is therefore in violation of this Court's stay of such discovery, Plaintiff does not allege any injury it will suffer as a result of responding to Defendant's inquiries. Accordingly, because Plaintiff does not allege the infliction of any clearly defined and serious injury, and in light of the Court's decision to vacate the stay of bad faith discovery, Plaintiff's motion for a protective order [Dkt. No. 122] is **DENIED**.

### C. Defendant's Motion to Quash or for a Protective Order [Dkt. No. 123]

Defendant objects to the Atkins Subpoena on the grounds that it seeks the disclosure of privileged information. Pursuant to Federal Rule of Civil Procedure 45, the Court must quash or modify a subpoena that "requires disclosure of privileged or protected information, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). While Plaintiff does not dispute that it seeks privileged information, Plaintiff claims that Defendant, through its assertion that Plaintiff must demonstrate "appreciable prejudice" in order to succeed on its late notice defense to coverage, has put certain privileged subjects at issue in this litigation and has thereby waived any claim of privilege. Specifically, Plaintiff asserts an entitlement to documents and testimony regarding three privileged matters: (1) Defendant's analysis regarding the defense and settlement of the Underlying Actions; (2) the reasons underlying Defendant's belated request for coverage for the Underlying Actions, which "relate to [Defendant's] 'good faith' and/or 'inadvertence' defense"; and (3) the basis of the decisions made by Defendant's counsel in the Underlying Actions to show appreciable prejudice. Dkt. No. 125 at p. 8.

When a case is based on federal diversity jurisdiction, courts are to decide issues of privilege based on state law. *See In re Ford Motor Corp.*, 110 F.3d 954, 965-66 (3d Cir. 1997).

Thus, the Court considers the attorney-client and work-product privilege under New Jersey law. The attorney-client privilege exists to promote full and frank discussions between attorneys and their clients, *see United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 561 (App. Div. 1984), and protects confidential communications made in the course of a professional relationship. *See* N.J.S.A. 2A:84A-20; *Rivard v. Am. Home Prod., Inc.*, 391 N.J. Super. 129, 153 (App. Div. 2007). There is no dispute among the parties that the Atkins Subpoena seeks privileged information. Rather, Plaintiff claims that any privilege in the information sought has been waived by Defendant's actions which have placed otherwise privileged information at issue.

Unlike the federal privilege, the New Jersey state attorney-client privilege is qualified and may be required to yield when the party seeking to pierce the privilege establishes: (1) there is a legitimate need to reach the evidence sought to be shielded, (2) there is a showing of relevance and materiality of that evidence to the issue before the court, and (3) the party seeking to bar assertion of the privilege has shown by a fair preponderance of the evidence, including all reasonable inferences, that the information cannot be secured from any less intrusive means. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 100 (D.N.J. 1990) (citing *In re Kozlov,* 79 N.J. 232, 243–44 (1979)).

Under the first and second prongs, the Court determines whether Plaintiff has demonstrated a legitimate need for the privileged information sought and that such information is relevant and material to the issues before this Court.[6] Plaintiff argues that Defendant has waived the attorney client privilege by placing the advice of counsel in the Underlying Actions at issue in this litigation. "[A] privilege may be waived "implicitly" where a party puts a confidential communication "in issue" in a litigation. *State v. Mauti*, 208 N.J. 519, 532 (2012) (citing *Kinsella v. Kinsella,* 150 N.J.

---

[6] It appears that Plaintiff's arguments either do not distinguish between the first and second prongs or that Plaintiff has omitted a discussion of the second prong. Accordingly, the Court will address the first two prongs together.

276, 300 (1997)). This waiver occurs in circumstances where "the party who places a confidential communication in issue voluntarily creates the "need" for disclosure of those confidences to the adversary." *Mauti*, 208 N.J. at 532. For example, "a plaintiff in a medical malpractice action cannot claim that her medical records are privileged" and "where a party to a real estate transaction alleges misrepresentations during negotiations, she cannot claim attorney-client privilege in respect of her attorney's participation in those negotiations." *Id.* (citations omitted).

Plaintiff's overarching contention is that Defendant has placed the requested information at issue by asserting that Defendant must demonstrate appreciable prejudice in order to succeed on its late notice defense to coverage. Under New Jersey law, an insurer asserting a prompt notice provision in its policy as a defense to liability bears the burden of proving that the provision was breached and that it incurred "appreciable prejudice" as a result. *Cooper v. Geico Ins. Co.,* 51 N.J. 86, 94 (1968). Courts consider two main factors in determining whether an insurer incurred appreciable prejudice. *Morales v. National Grange Mut. Ins. Co.,* 176 N.J. Super. 347, 355 (1980). The first is "whether substantial rights have been irretrievably lost by virtue of the failure of the insured to notify the carrier in a timely fashion." *Id.* This factor requires the insurer to "establish more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim." *Id.* "Rather, [the insurer] must show that substantial rights have been *irretrievably* lost." *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 817 F. Supp. 1136, 1158 (D.N.J. 1993). The second factor considers the likelihood that the insurer would have been successful in defending against the injured party's claim if it had received timely notice. *Morales,* 176 N.J. Super. at 355–56.

The positions taken by the parties as to whether Defendant put the information sought "at issue" are at opposite ends of the spectrum. According to Plaintiff, Defendant has "tak[en]

positions related to counsel's advice" in the Underlying Actions by asserting in this action that Plaintiff must demonstrate appreciable prejudice in order to deny coverage based upon Defendant's untimely notice and by claiming and that no such appreciable prejudice exists because Plaintiff could not have achieved a more favorable settlement. Dkt. No. 125 at p. 14. By taking such positions, Plaintiff argues that Defendant has placed its communications with its counsel in the Underlying Actions at issue and rendered the privileged discovery sought "necessary for fair resolution of this action." *Id.* In contrast, Defendant argues that because it "will not prove its claims or defenses by disclosing or describing an attorney-client communication," it has not waived its claim of privilege by placing any confidential communications at issue. Dkt. No. 123 at p. 17.

As set forth above and as relevant to the present dispute, the second prong of the appreciable prejudice test requires the insurance carrier to demonstrate that it would have had a meritorious defense had there been timely notification. *Morales,* 176 N.J. Super. at 357. Although Plaintiff cites to certain specific areas of inquiry which it contends have been rendered "necessary" by Defendant's purported reliance on the conduct of its counsel, its overarching contention is that in order to "fairly explore 'appreciable prejudice' and [Defendant's] positions, [Plaintiff] must be permitted to examine the attorneys who made the decisions in the [Underlying Actions] with full knowledge of the privileged information they had before them at the time." Dkt. No. 125.

There are two significant flaws in Plaintiff's argument that Defendant has placed the subject privileged information at issue by contending that Defendant must demonstrate appreciable prejudice. First, while it is not clear that Defendant is correct in its assertion that a party must directly and specifically rely on a privileged communication in order for the privilege to be waived, Plaintiff's characterization of Defendant's purported "at issue" waiver of any privilege held in the

Underlying Actions is vastly overbroad. Were the Court to accept Plaintiff's argument that Defendant's conduct in this matter amounts to an "at issue" waiver of privilege, it would follow that any insurer attempting to demonstrate the existence of appreciable prejudice based upon an insured's untimely notice of a claim would be entitled to the insured's privileged communications and information related to the litigation and/or settlement of the underlying claim merely based upon the policyholder's assertion that its actions did not cause the insurer to suffer appreciable prejudice. Plaintiff has failed to provide any authority which would support such a result.

The second flaw in Plaintiff's argument is found in Plaintiff's mischaracterization of the relevant inquiry and the burden of proof in determining the existence of appreciable prejudice. Plaintiff contends that "[w]ithout exploration of the nature of the communications and advice provided by [Defendant's] former counsel" it will be "unfairly prevented from opposing [Defendant's] oft-repeated assertion that [Plaintiff] could not have achieved better results than [Defendant's] counsel achieved." Dkt. No. 125 at 12-13. Such an argument may indeed support Plaintiff's request to pierce Defendant's privilege were the relevant inquiry targeted at the effectiveness of Defendant's counsel in the Underlying Actions and the burden placed on Defendant to make such a showing. There is, however, no such requirement. Instead, the relevant inquiry is what Plaintiff would have done if faced with the same lawsuit and the burden is placed on Plaintiff to demonstrate what better arrangement it would have been able to obtain had Defendant provided timely notice. *See Chem. Leaman*, 817 F. Supp. at 1159.

Tellingly, although there are numerous cases involving insurers asserting appreciable prejudice as a defense to coverage based upon the insured's late notice of a claim which has already been litigated and/or settled, Plaintiff fails to cite to a single such case, let alone one in which a court found a waiver of privilege or conducted any extensive inquiry into the effectiveness of the

insured's counsel in the handling of the underlying claim. In such cases, rather than probing into the minutia of the strategy and conduct of the policyholder's counsel, courts have focused on the reasonableness of the outcome achieved by the insured in the underlying action and whether the insurer has demonstrated that had timely notice of the claim been provided, the insurer would have achieved a more favorable resolution. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 563 (3d Cir. 2001) (finding that the settlement reached by policyholder in the underlying action which "appear[ed] to reasonably reflect the parties' various responsibilities" did not support a finding of appreciable prejudice); *Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.*, 88 F. Supp. 2d 360, 368–70 (D.N.J. 2000) (stating that insurer's speculative assertions regarding the actions it would have taken which may have led to a better outcome in the underlying action failed to demonstrate appreciable prejudice and finding that the settlement entered into by the insured was "reasonable as a matter of law when compared with the facts of [the] case").

"With the benefit of 20–20 hindsight, it is relatively easy to opine how any case could be prepared for trial and tried more effectively." *First Specialty Ins. Corp. v. Novapro Risk Sols., LP*, 468 F. Supp. 2d 1321, 1336 (D. Kan. 2007). However, an insurer's "mere assertion that [its insured] could have or should have done some things differently or better in the [underlying action] does not mean that [the insured] did a poor job, nor does it mean that a better job would have resulted" in a better resolution or settlement. *Id.* at 1336. While the Court understands Plaintiff's desire to probe into the strategy and conduct of counsel in the Underlying Actions in order to demonstrate what Plaintiff would have done to achieve a more favorable resolution, because the appreciable prejudice inquiry is focused on the actions Plaintiff could have taken and not the actions taken by Defendant, the privileged discovery sought is not necessary or material to this action.

In addition to its arguments that the privileged information it seeks has been placed at issue in connection with the appreciable prejudice inquiry, Plaintiff contends that the evidence in question is necessary to a determination of whether Defendant acted in good faith regarding its untimely request for coverage. According to Plaintiff, in response to its requests for communications related to Defendant's decision to tender its claim, Defendant stated that no such non-privileged communications exist. Therefore, Plaintiff asserts that "the only way to determine whether [Defendant] made a coverage analysis based upon considered judgment – thus negating any arguable basis of 'good faith' or 'inadvertence' – would be through privileged documents and information from the defense team who was providing such information." Dkt. No. 125 at p. 12. While the Court agrees that information regarding the circumstances surrounding Defendant's decision to tender its claim to Plaintiff would be relevant to a determination of whether Defendant undertook such actions in good faith, Plaintiff fails to explain how such a determination necessitates the disclosure of privileged information or how Defendant has placed privileged information relevant to this inquiry at issue.

Accordingly, because Plaintiff has failed to establish that Defendant placed the privileged information sought at issue in this matter or that such information is material to the issues before this Court, the Court finds that Plaintiff has failed to meet the first and second prongs under *Kozlov.*

Although the Court finds that Plaintiff has failed to meet the first and second prongs, even if Plaintiff had demonstrated that the information sought was necessary and material, Plaintiff would still fail to meet the third prong which requires Plaintiff to establish that the privileged information it seeks cannot be obtained from any less intrusive source. A showing may be made under the third prong, for example, where "a significant witness or employee had passed away before discovery could be taken from that person, in which case the interview report of a deceased

employee would qualify as being substantially needed and not obtainable by a less intrusive source." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 233 (D.N.J. 1992) (citing *HM Holdings v. Lumbermens Mut. Cas. Co.,* 259 N.J. Super. 308 (N.J. App. Div. 1992)) (internal quotations omitted). "Absent such a circumstance, the insurers should develop their own information from the factual material and sources provided." *Id.*

Plaintiff claims that there are no less intrusive sources from which it can obtain information related to (1) Defendant's analysis regarding the defense and settlement of the Underlying Actions; (2) the reasons underlying Defendant's belated request for coverage for the Underlying Actions, which "relate to [Defendant's] 'good faith' and/or 'inadvertence' defense"; and (3) the basis of the decisions made by Defendant's counsel in the Underlying Actions to show appreciable prejudice. Dkt. No. 125 at p. 8. According to Plaintiff, Defendant has failed to "explain exactly where it provided information regarding the[se] three topics" and Plaintiff's conducting an examination of "pleadings and discovery from the [Underlying Actions] does not provide a complete picture." *Id.* at p. 13. Furthermore, Plaintiff contends that no non-privileged information will "disclose what avenues [Defendant] and its counsel evaluated and rejected" in settling the Underlying Actions. *Id.*

The Court finds Plaintiff's arguments in this regard to be wholly unavailing. As to the first category of information Plaintiff seeks, it seems to the Court that Plaintiff may obtain such information from a variety of non-privileged sources in the Underlying Actions, including the pleadings, motions, deposition transcripts, communications between opposing counsel, and any discovery produced therein. By examining such sources, Plaintiff should be able to develop its own information and impressions regarding the Underlying Actions and present its arguments as

to what it would have done differently and what more favorable outcome it would have achieved under the second part of the appreciable prejudice inquiry.

Furthermore, even in the unlikely event that Plaintiff cannot obtain the necessary information in the first category from the sources set forth above or if certain documents "were likely destroyed," Plaintiff has made no attempt to secure such information through non-privileged deposition testimony. The same holds true for Plaintiff's request for privileged information as relevant to the second category. Although Plaintiff does not deny that information regarding Defendant's analysis and settlement of the Underlying Actions and the reasons underlying Defendant's untimely request for coverage is presumably available from Defendant's 30(b)(6) designee, Plaintiff, without explanation or justification, has not conducted its 30(b)(6) deposition of Defendant's representative prior to seeking this information from Mr. Atkins. Absent any meaningful argument as to Plaintiff's inability to procure the necessary information through the wide variety of available non-privileged sources and in light of Plaintiff's lack of effort to obtain the information at issue from those sources, especially from readily available sources such as Defendant's 30(b)(6) witness, the Court cannot accept Plaintiff's arguments that piercing the privilege is necessary.

As to the third category, while information regarding the basis of the decisions made by Defendant's counsel explicitly targets privileged information which may only be obtainable through counsel's testimony on privileged matters, as set forth above in the Court's discussion of the first and second prongs, Plaintiff has failed to demonstrate that the impressions and strategies of counsel in the Underlying Actions bear the requisite relevance and materiality to the issues before the Court in this matter in order to justify a waiver of privilege. Although the Court understands "that the availability of the privileged materials sought . . . would make it much easier

for [Defendant] to develop [its] suit[], such is not the criteria for a waiver of the attorney-client or work product privileges. If ease of application were the criterion, the privileges would cease to exist." *NL Indus., Inc.* 144 F.R.D. at 233 (citations omitted). Therefore, because Plaintiff has failed to establish that the necessary information it seeks is unavailable from non-privileged sources, the Court finds that Plaintiff has failed to meet the third prong. Based upon the foregoing, the Court finds that Plaintiff has failed to demonstrate that it is entitled to seek privileged information from Mr. Atkins in this matter.

Even if it is not permitted to question Mr. Atkins regarding privileged matters, Plaintiff contends that Defendant cannot meet its burden to quash the Atkins Subpoena in its entirety because in addition to seeking privileged information, Plaintiff seeks to question Mr. Atkins regarding non-privileged information relevant to this matter. In addressing Plaintiff's arguments in this respect, it is important to note the events leading to the identification of Mr. Atkins as a possible witness in this matter.

Defendant's Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) identified "[v]arious attorneys at [Paul Weiss]" as individuals likely to have discoverable information, including information regarding Defendant's "defense and settlement" of the Underlying Actions. Dkt. No. 125, Sheridan Decl. at Ex. 1. Defendant again identified "[v]arious attorneys at [Paul Weiss]" in its responses to Plaintiff's interrogatories but objected to providing most of the information sought based upon its assertion that such information was privileged. *Id.* at Ex. 2. Although Defendant provided non-privileged written discovery to Plaintiff, including the "voluminous" record in the Underlying Actions, Plaintiff claims that the information produced "did not meaningfully address [its requests]." *Id.* at p. 4. In December 2016, Plaintiff asked Defendant to identify the Paul Weiss attorneys referenced in Defendant's Initial Disclosures and

discovery responses. Defendant identified Mr. Atkins but advised that it would not voluntarily produce any Paul Weiss attorneys for deposition.[7] On March 17, 2017, Plaintiff served the Atkins Subpoena.[8]

According to Plaintiff, Defendant's identification of Mr. Atkins through its Initial Disclosures indicates that Mr. Atkins is a potential witness in this matter and, therefore, that Defendant cannot prevent Plaintiff from, at the very least, obtaining Mr. Atkins' deposition testimony on non-privileged subjects. As an initial matter, it appears to the Court that in a vast majority of cases similar to the present matter, the attorneys in the underlying actions will indeed possess relevant knowledge and therefore will likely be identified as individuals with such knowledge in an insured's Rule 26 disclosures. However, Plaintiff fails to cite to any authority which supports Plaintiff's assertion that Defendant's identification of Mr. Atkins unequivocally entitles Plaintiff to take his deposition. In the absence of such authority, the Court declines to deny Defendant's requests for relief based solely upon Defendant's statements that Mr. Atkins possesses relevant knowledge. Instead, the Court considers Defendant's motion in light of the entirety of the facts presently before this Court.

Although the Court is sympathetic to Plaintiff's desire to depose Mr. Atkins, it appears to the Court, that at this time, it is appropriate to quash the Atkins Subpoena in its entirety. The parties in this matter have demonstrated a complete lack of cooperation and it seems certain that a deposition of Mr. Atkins would be largely unproductive and result in a multitude of objections further complicating and delaying discovery in this matter. While the Court does not doubt that

---

[7] In addition to Mr. Atkins, Defendant identified William Michael, Esq. However, Plaintiff has not sought to depose Mr. Michael.

[8] Plaintiff also served a subpoena on another attorney that represented Defendant in the Underlying Actions, identified as W. David Carter, Esq. of Mercy Carter Tidwell, LLP. However, the parties are attempting to resolve their dispute regarding Mr. Carter's deposition and accordingly the deposition of Mr. Carter is not at issue in the present motions.

Mr. Atkins is in possession of the information Plaintiff seeks regarding "[Defendant's] contemporaneous understanding of the claims and defenses, rulings by the court, discovery and documents exchanged, settlement discussions, and representations made to RTI regarding insurance coverage," Plaintiff has not yet taken the 30(b)(6) deposition of Defendant's corporate representative and cannot therefore claim that such testimony is insufficient to provide the information needed. Furthermore, it does not appear that Defendant has attempted to use or inject Mr. Atkins' knowledge or testimony as part of a claim or defense in this action. However, although the Court grants Defendant's motion to quash, Plaintiff may seek to depose Mr. Atkins in the future, if, after deposing Defendant's 30(b)(6) witness and reviewing the available non-privileged documents, Plaintiff can show a need for Mr. Atkins' testimony.[9] Based on the foregoing, Defendant's motion to quash is **GRANTED** and Defendant's motion for a protective order is **DENIED as moot**.

## III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 30th day of January, 2018,

**ORDERED** that the Court's July 28, 2015 Order granting Plaintiff's request to bifurcate and stay discovery related to Defendant's bad faith claim [Dkt. No. 55] is **VACATED**; and it is further

**ORDERED** that Plaintiff's motion for a protective order [Dkt. No. 122] is **DENIED**; and it is further

---

[9] Plaintiff is cautioned that a renewed request to depose Mr. Atkins will not be granted absent a demonstration by Plaintiff that such a deposition is necessary to obtain specific information which Plaintiff has first attempted to seek from less intrusive sources.

**ORDERED** that Defendant's motion to quash and for a protective order [Dkt. No. 123] is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendant's motion to quash the Atkins Subpoena is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for a protective order is **DENIED as moot**.


     s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**