

Squire Patton Boggs (US) LLP
The Legal Center
One Riverfront Plaza
1037 Raymond Blvd
Newark, NJ  07102

O    +1 973 848 5600
F    +1 973 848 5601
squirepattonboggs.com

Mark D. Sheridan
T    973-848-5681
mark.sheridan@squirepb.com

February 27, 2018

**VIA CM/ECF**

The Honorable Claire C. Cecchi
United States District Court Judge
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:   National Union Fire Ins. Co. of Pittsburgh, Pa. v. Becton Dickinson and Company
      Case No. 2:14-cv-4318-CCC-JBC

Dear Judge Cecchi:

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") respectfully requests permission to file a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure to dismiss Defendant Becton, Dickinson and Company's ("BD") counterclaim for bad faith or, alternatively, for bifurcation of BD's counterclaim pursuant to Federal Rules of Civil Procedure 26(d) and 42(b).

By way of background, National Union previously requested and received permission to file a motion for judgment on the pleadings, (Dkts. 22, 64, 84 n.1), and was invited to request bifurcation before this Court. (Dkt. 133, at 13 n.5.) Specifically, on February 13, 2015, National Union obtained leave to file a motion for judgment on the pleadings. (Dkt. 22.) On September 9, 2015, while National Union's motion was pending, BD filed a motion for leave to file an amended answer. (Dkt. 58.) Based on BD's request to amend its answer, this Court administratively terminated—"without prejudice"—National Union's motion on October 22, 2015. (Dkt. 64.) In a letter dated October 26, 2015, National Union requested the Court reconsider its administrative termination or reinstate the motion upon resolution of BD's motion for leave to file an amended answer because BD's proposed amendment would not affect several dispositive arguments raised in National Union's motion, including arguments addressing BD's counterclaim for bad faith. (Dkt. 67.) On May 23, 2016, the Magistrate Judge granted BD's motion to amend its answer, but declined to address certain arguments raised by National Union, stating that "[b]ecause [National Union's] motion was terminated without prejudice—*inherently allowing [National Union] to re-file its motion for judgment on the pleadings*—the Court finds that such arguments are better addressed at that time." (Dkt. 84.) (emphasis added.) At the time of that decision, the Magistrate

Hon. Claire C. Cecchi, U.S.D.J.
February 27, 2018
Page 2

Judge had already bifurcated and stayed BD's counterclaim, making additional motion practice regarding BD's counterclaim unnecessary until coverage was resolved. (Dkt. 55, at 2-3.)[1]

Against this backdrop, including the Court's January 30, 2018 Order, National Union filed a motion for judgment on the pleadings on the narrow issue of the viability of BD's counterclaim for bad faith or, in the alternative, for bifurcation of BD's counterclaim. (Dkt. 140.) By letter order dated February 21, 2018, the Magistrate Judge terminated National Union's motion on the grounds that National Union did not seek leave before filing the motion, but permitted National Union to submit a letter application to this Court, seeking leave to refile its motion. (Dkt. 141.)[2]

As demonstrated below, good cause exists for granting National Union leave to file.

## I. The Court Should Dismiss BD's Counterclaim For Bad Faith.

The Court should grant National Union leave to file a motion for judgment on the pleadings dismissing BD's counterclaim for bad faith because it fails as a matter of law.

Courts allow claims for bad faith to survive dismissal only if "no debatable reasons" existed for the insurer's actions. Hudson Universal v. Aetna Ins. Co., 987 F. Supp. 337, 341 (D.N.J. 1997) ("In order to impose "bad faith" liability, the insured must demonstrate that no debatable reasons existed for denial of the benefits available under the policy."); N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 2011 U.S. Dist. LEXIS 149162, at *21-22 (D.N.J. Dec. 27, 2011) (same). The basis of the rule is that "[a]n insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required to pay the claimant." Hudson, 987 F. Supp. at 341. Indeed, courts employ this rule to prevent insureds from using bad faith claims improperly for "in terrorem effect." Id. "When the [] complaint contains issues of material fact as to the underlying claim, dismissal of a related bad faith claim is proper." N.J. Title Ins. Co., 2011 U.S. Dist. LEXIS 149162, at *21-22. New Jersey courts may make this determination on the pleadings. Id.

---

[1] On January 30, 2018, the Magistrate Judge reconsidered, sua sponte, his prior orders bifurcating discovery related to bad faith pending a determination of coverage and vacated those orders, in part, based on a desire for the case to proceed in light of the length of time the litigation has been pending. (Dkt. 133, at 13.) Although the Court concluded that discovery on BD's claim for bad faith could proceed, the Court did find that "[i]n the event that [National Union] moves for bifurcation of the trial in this matter or to sever and stay [BD's] bad faith claim and such a request is granted by the District Judge, [National Union] may renew its request that bad faith discovery be stayed . . . ." (Id., at 13 n.5.)

[2] The Magistrate Judge entered the order permitting National Union to seek leave to refile its motion. He did so with full knowledge of the most recent scheduling order and did not find that order prohibited National Union from seeking leave. (See Dkts. 139, 140.) Nevertheless, BD argues that the scheduling order bars National Union from requesting leave and filing its motion. (Dkt. 142.) BD's argument—one that the Magistrate Judge already implicitly rejected—has no basis in the language of that order. The order states "the parties shall file any dispositive motions within thirty (30) days of the expert discovery deadline; i.e., by Wednesday, November 14, 2018." (Dkt. 139.) The plain language of the order does not prohibit filings before Wednesday, November 14. (Id.) Further, the order does not address the Magistrate Judge's prior comments acknowledging National Union's "inherent" right to re-file its motion for judgment on the pleadings or to request bifurcation of BD's counterclaim for bad faith. (Dkts. 84, 133, at 13 n.5.)

Hon. Claire C. Cecchi, U.S.D.J.
February 27, 2018
Page 3

National Union has numerous "fairly-debatable" reasons for its denial of coverage and institution of a declaratory judgment action. Indeed, BD's June 13, 2014 letter requesting insurance coverage for the RTI Action demonstrates that "[c]overage for the Underlying Actions, if any, is barred because BD failed to perform its obligations and comply with the terms, conditions, and provisions of the Policies." (Dkt. 1, at ¶ 37.) Those failures included BD's breach of the voluntary payments provisions of the Policies. (Id., at ¶¶ 38, 39, 40.)

Likewise, National Union did not have any obligation to indemnify BD in connection with a $100 million settlement. (Dkt. 1, at ¶ 43.) BD settled the RTI Action without National Union's knowledge or consent. (Dkts. 1, 87, ¶¶ 19-20.) In addition, the Settlement Agreement attached to BD's June 13 letter failed to allocate among potentially covered or uncovered claims and contained no evidence that the settlement included payment for damages covered by the policies. See Bldg. Materials Corp. of America v. Allstate Ins. Co., 424 N.J. Super. 448, 466-67 (App. Div. 2012) ("[Insured] cannot establish a prima facie case of covered loss for purposes of indemnity by demonstrating that the [underlying] claimants alleged [damages potentially covered under the policy]; rather, it must show that the underlying settlement actually included payment for such damages."). These defenses establish as a matter of law "fairly-debatable" issues regarding coverage for the underlying RTI Action. This Court should dismiss BD's counterclaim.

BD attempts to avoid this result by arguing that the "fairly-debatable" standard does not apply to its counterclaim because the counterclaim is based on National Union's alleged failure to investigate, not a denial of coverage. It also argues that its claim for bad faith for unreasonable claims handling may exist regardless of whether coverage exists. BD is incorrect. Decisions have applied the "fairly debatable" standard to both the denial of coverage benefits and allegations of improper claims handling. Hudson, 987 F. Supp. at 341; Badiali v. New Jersey Mfrs. Ins. Group, 220 N.J. 544, 559 (2015); Universal-Rundle Corp. v. Commercial Union Ins. Co., 319 N.J. Super. 223, 249 (App. Div. 1999); Wacker-Ciocco v. Gov't Emps. Ins. Co., 439 N.J. Super. 603, 611 (App. Div. 2015). Moreover, the Magistrate Judge rejected BD's contention. (See Ex. A, at 8:17-24 ("[M]y suspicion is that . . . if National Union's successful on the merits of this thing, there won't be much in the way of argument that there's still a viable bad faith claim.").[3]

Applicable law does not support BD's counterclaim. Moreover, it lacks a plausible factual basis. Even BD concedes, "National Union rais[ed] – it's fair to say – fairly debatable coverage defenses." (Ex. A, at 6:11-13.) If, as BD concedes, National Union possessed "fairly-debatable" coverage defenses, National Union was justified in seeking a declaration that BD is not entitled to coverage. Indeed, BD's counterclaim is about National Union's use of the courts to adjudicate the parties' rights under the Policies. (Dkt. 87 ¶¶ 32, 34) (alleging that National Union acted in bad faith because it could not have conducted "an objectively reasonable investigation" since it filed the declaratory judgment action "before otherwise responding to BD's tender"). However, courts

---

[3] To the extent BD argues that its counterclaim for bad faith can exist regardless of whether coverage exists or the "fairly-debatable" test applies, the Third Circuit, this District, and New Jersey state courts have repeatedly rejected that position. On Air Entm't Corp. v. Nat'l Indem. Co., 210 F.3d 146, 153 n.11 (3d Cir. 2000) ("Courts construing New Jersey law have indicated that a finding of coverage under the insurance policy is a predicate to a bad faith claim."); Diebold, Inc. v. Cont'l Cas. Co., 719 F. Supp. 2d 451, 468 (D.N.J. 2010) (holding that New Jersey law "does not support [a] bad faith claim insofar as it is independent from the coverage dispute").

Hon. Claire C. Cecchi, U.S.D.J.
February 27, 2018
Page 4

have long recognized that an insurer's decision to seek judicial determination as to its rights and obligations under an insurance policy cannot give rise to a claim for bad faith.  See Cay Divers, Inc. v. Raven, 812 F.2d 866, 871 (3d Cir. 1987) ("In general, an insurer's seeking of a declaratory judgment on potential coverage and on the duty to defend . . . does not support a charge of bad faith."); Lincoln Nat'l Life Ins. Co. v. Schwartz, No. 09-03361, 2011 U.S. Dist. LEXIS 62031, at *19 (D.N.J. June 9, 2011) ("[D]ecision to petition this Court for a declaration of [] rights and obligations regarding the Policies does not give rise to a bad faith claim.").

       For these reasons, the Court should grant National Union leave to file a 12(c) motion to dismiss BD's counterclaim for bad faith.

## II.   If This Court Does Not Dismiss BD's Counterclaim, The Court Should Sever And Bifurcate BD's Counterclaim For Bad Faith.

       Alternatively, this Court has the authority to sever and stay claims, for purposes of pretrial proceedings, see Fed. R. Civ. P. 26(d), and/or for trial, see Fed. R. Civ. P. 42(b), in the interests of justice and efficiency.  See, e.g., Otsuka Pharm. Co. v. Torrent Pharms. Ltd., 118 F. Supp. 3d 646, 659-60 (D.N.J. 2015); Warner Lambert Co. v. Purepac Pharm. Co., Nos. 98-2749, 99-05948,00-02053, 2000 U.S. Dist. LEXIS 22559, at *32 (D.N.J. Dec. 22, 2000).

       In the event the Court does not dismiss BD's counterclaim, this Court should bifurcate BD's counterclaim for bad faith until it is determined that BD actually is entitled to coverage under the Policies.  Under applicable law, BD is not entitled to pursue its counterclaim for bad faith and any related discovery simultaneously with its claim for insurance coverage. Wacker-Ciocco, 439 N.J. Super. at 611-12 (reversing order denying severance of bad faith claim); Procopio v. Gov't Emps. Ins. Co., 433 N.J. Super. 377, 381 (App. Div. 2013) (holding that separation "promote[s] judicial economy and efficiency by holding in abeyance expensive, time-consuming, and potentially wasteful discovery on a bad faith claim that may be rendered moot by a favorable ruling for the insurer"); Diebold,, 719 F. Supp. 2d at 468 (holding that New Jersey law "does not support [a] bad faith claim insofar as it is independent from the coverage dispute"); Riverview Towers Apt. Corp. v. QBE Ins. Corp., 2015 U.S. Dist. LEXIS 57100, at *8 (D.N.J. Apr. 17, 2015) (granting an insurer's request to sever and stay insured's bad faith claim pending resolution of coverage claim); Hage v. UnumProvident Corp., 2007 U.S. Dist. LEXIS 97175, at *4 (D.N.J. Oct. 22, 2007) ("[E]vidence introduced to the jury regarding extra-contractual claims may prejudicially affect a jury's ability to decide a breach of contract claim.").

       Prior to issuing its order dated January 30, 2018, the Magistrate Judge bifurcated discovery related to BD's claim for bad faith.  (Dkts. 55, 102.)  The Magistrate Judge reasoned that, given the "inherently dependent nature of [BD's] bad faith [c]ounterclaim on its coverage claim, bifurcation of discovery is in the best interest of both the [c]ourt and the parties."  (Dkt. 55, at 2-3.)  The Magistrate Judge further reasoned that "[w]ith bad faith claims, bifurcation "promotes judicial economy and efficiency by holding in abeyance expensive, time-consuming, and potentially wasteful discovery on a bad faith claim that may be rendered moot by a favorable ruling for the insurer," and that "premature disclosure of privileged material regarding a bad faith claim could 'jeopardize the insurance company's defense.'" (Id.)

Hon. Claire C. Cecchi, U.S.D.J.
February 27, 2018
Page 5

BD moved for reconsideration, but the Magistrate Judge again denied BD's request and upheld its stay of discovery related to bad faith. (Dkt. 102.)  The Magistrate Judge questioned the independence of BD's counterclaim, stating "I still think in the vast majority, if in just about -- if not in just about every case, . . . what happens with the issue of coverage is going to have a great bearing on the question of bad faith." (Ex. A, at 12:12-18.)  The Magistrate Judge concluded, "I'm relatively confident that until there is a finding of coverage or no coverage, [the District Court] is not going to be interested in dealing with the bad faith issues."  (Id., at 13:3-5.)  Although the January 30 Order lifted the earlier orders bifurcating discovery, in part, due to the length the case has been pending, the January 30 Order provided that the Magistrate Judge would reconsider staying discovery if this Court granted a motion to bifurcate. The Magistrate Judge noted "[i]n the event that [National Union] moves for bifurcation of the trial in this matter or to sever and stay [BD's] bad faith claim and such a request is granted by the District Judge, [National Union] may renew its request that bad faith discovery be stayed . . . ." (Dkt. 133, at 13 n.5.)

Bifurcation serves judicial economy by permitting the parties to focus on resolution of BD's claim for coverage under the terms of the Policies, rather than the distinct and independent issue of National Union's handling of BD's claim.  Further, allowing discovery regarding the counterclaim for bad faith to proceed simultaneously with the coverage dispute increases the likelihood for expensive, time-consuming disputes as well as the chance that National Union will suffer prejudice. Hage, 2007 U.S. Dist. LEXIS 97175, at *4.  Because the counterclaim for bad faith is contingent but separate from the claims regarding insurance coverage, discovery may be undertaken efficiently after resolution of the issue of coverage.  This two-tier process is precisely how New Jersey courts address bad faith claims. See, e.g., Wacker-Ciocco, 439 N.J. Super. at 611-12; Procopio, 433 N.J. Super. at 381.  Further, adjudicating a bad faith counterclaim simultaneously with a breach of contract claim may prejudicially affect a trier of fact's ability to decide the breach of contract claim. Hage, 2007 U.S. Dist. LEXIS 97175, at *4.

Although the January 30 Order understandably expressed a desire for the litigation to proceed more quickly, it is unnecessary to undertake contentious and unnecessary discovery related to bad faith given the significant issues regarding the viability of BD's counterclaim.  (Dkt. 133.)  As outlined above, those issues include New Jersey's "fairly-debatable" test, which BD concedes National Union has met here.  Hudson Universal, 987 F. Supp. at 341; N.J. Title Ins., 2011 U.S. Dist. LEXIS 149162, at *21-22; Badiali, 220 N.J. at 559; Wacker-Ciocco, 439 N.J. Super. at 611-12; Universal-Rundle Corp., 319 N.J. Super. at 249-51.  A desire to close discovery, while understandable, should not deprive the insurer of the protections established in applicable New Jersey law.  Accordingly, if this Court does not grant National Union's motion for judgment on the pleadings, National Union respectfully submits this Court should sever and stay BD's counterclaim under Federal Rules of Civil Procedure 26(d) and 42(b).

National Union respectfully requests leave to refile its motion for judgment on the pleadings or, alternatively, for bifurcation of BD's counterclaim.  (Dkt. 140.)

Respectfully submitted,

/s/ Mark D. Sheridan
Mark D. Sheridan

cc:      Counsel of Record (via CM/ECF)