<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**<br><br>Plaintiff,<br><br>v.<br><br>**BECTON, DICKINSON AND COMPANY,**<br><br>Defendant. | Civil Action No. 14-4318 (CCC)<br><br><u>**OPINION**</u> |

**<u>FALK, U.S.M.J.</u>**

Before the Court is a motion by Plaintiff -- National Union Fire Insurance Company of Pittsburgh PA -- seeking to compel Defendant -- Becton, Dickinson and Company -- to produce its corporate designee, Andrew Walpole, for additional testimony pursuant to Federal Rule of Civil Procedure 30(b)(6) under certain conditions. [ECF No. 214.] The motion is opposed. For the reasons stated herein, National Union's motion is **GRANTED IN PART AND DENIED IN PART**.

<u>**BACKGROUND**</u>

This case involves a dispute over insurance coverage. Its background is grounded in a series of prior underlying lawsuits.

**<u>The RTI Action</u>**

In the late 1980s, engineer Thomas Shaw invented and patented a retractable

needle, designed to avoid accidental needle sticks, which he later named "VanishPoint." In 1994, Shaw incorporated Retractable Technologies, Inc. ("RTI"), and in 1997, RTI began selling VanishPoint. In 1998, RTI filed suit against Becton – a global company involved in the development, manufacturing, and sales of medical equipment – in Texas state court, alleging violations of state antitrust law (the "RTI Action"). In January 2001, after a voluntary dismissal in state court, the RTI Action was re-filed in the United States District Court for the Eastern District of Texas. On July 2, 2004, Becton settled the case by agreeing to pay RTI $100 million. In addition, Becton claimed to have spent $72 million defending the RTI Action.

**The Class Actions**

Following settlement of the RTI Action, between 2005 and 2007, direct and indirect purchasers of Becton's products filed several putative class actions in this Court, alleging that they had been overcharged by Becton and that Becton had violated the Sherman Act. In 2009, Becton settled the direct purchaser actions for $45 million and the indirect purchaser claims for $22 million; it also claimed to have paid more than $30 million to defend the lawsuits.

**Request for Coverage & Filing of Suit**

From 1985 through 2003, Becton had primary insurance through a number of different carriers, including Travelers Casualty and Surety Company (and/or various of its affiliates). Becton had excess insurance through National Union.

By letter dated June 13, 2014, Becton demanded that National Union pay its defense and indemnity costs arising from the RTI Action (filed in 1998) pursuant to three

liability policies covering the periods of October 1, 1994-2002 (the "1994, 1997, and 1999 policies").  On July 9, 2014, National Union filed the Complaint in this case seeking a declaratory judgment that it had no duty to defend or indemnify Becton for the $100 million paid to settle the RTI Action or for the $72 million incurred in defending the case (*National Union v. Becton, Dickinson & Company*, 14-4318 ("*Becton I*")).

At around the same time in June 2014, Becton demanded coverage from National Union for the $67 million paid to settle the Class Actions, as well as the $30 million expended to defend them, pursuant to the 1994, 1997, and 1999 policies above, as well as two policies issued in 1993.  On January 30, 2017, National Union filed its second Complaint in this court, seeking a declaration that it has no obligation to indemnify Becton for the monies paid to settle the Class Actions, or the defense costs associated with them (*National Union v. Becton Dickinson & Company*, 17-691 ("*Becton II*")).

Thereafter, in *Becton II*, National Union filed a motion for judgment on the pleadings, arguing that the Sherman Act claims in the Class Actions did not trigger coverage in the relevant policies.

On February 20, 2018, the Honorable Jose L. Linares, denied National Union's motion for judgment on the pleadings in *Becton II*, finding in part, that "a genuine issue of fact exists with regards to the meaning of the term 'unfair competition,'" which is language found only in the 1993 policies.

On June 4, 2018, the Honorable Claire C. Cecchi, U.S.D.J., consolidated *Becton I* and *Becton II* for all purposes under Civil Action 14-4318.

**The Amended Counterclaim**

On October 2, 2018, Becton wrote to the Undersigned submitting a consent order that would allow it to file an amended counterclaim. The proposed amendment was to include in Becton's counterclaim in *Becton I* a claim for coverage under the 1993 policies.

National Union consented to Becton's proposed amendment only upon the parties' agreement to certain conditions, contained in the consent order, such as that Becton would provide a response to certain interrogatories, including one that states: "Identify each instance of 'unfair competition' . . . alleged by RTI to have been committed during the policy period . . . in any advertisement, publicity article, broadcast or telecast and arising out of Named Insured's advertising activities." (Pl.'s Letter dated September 27, 2019, at 5.)

## CURRENT DISPUTE

As part of the amendment compromise, Becton answered National Union's interrogatories. With respect to the question above, Becton provided a seven page narrative response that referenced 33 exhibits (totaling approximately 400 pages), but did not, according to National Union, "identify a single instance of unfair competition alleged by RTI to have been committed during the policy period . . . ." (*Id.*, Ex. D.) Upon receiving Becton's interrogatory answers, National Union chose, instead of moving to compel a more specific interrogatory response, "to pursue the information it sought through an alternative path" – a Rule 30(b)(6) deposition. (*Id.*)

On October 19, 2018, National Union served Becton with a Rule 30(b)(6) notice

that contained 64 specified topics, including Topic 22, which states:

> Identify [e]ach instance of "unfair competition . . . alleged [by RTI] to have been committed during the policy period . . . in any advertisement, publicity article, broadcast or telecast and arising out of [Becton's] advertising activities" in the RTI ACTION, and any DOCUMENTS or COMMUNICATIONS that RTI contended supported such allegations.

(Ex. E.)[1]

Becton designated Andrew Walpole as its 30(b)(6) designee and identified him as the individual to provide testimony on all of the subjects designated.

On July 12 and August 1, 2019, the 30(b)(6) deposition was held. The current dispute stems from Mr. Walpole's deposition testimony. National Union claims that Mr. Walpole "quickly made it clear that Becton's strategy was to avoid providing any answers and to instead point to its 400-page Supplemental Responses." (Pl.'s Letter at 6.) National Union contends that Mr. Walpole declined to identify any specific instance of unfair competition alleged to have been committed during the 1993 policy period. Becton contends that Mr. Walpole "answered specifically and sufficiently all of National Union's questions, including those related to Topic[] 22 . . . ." (Def.'s Letter dated October 15, 2019, at 2.)

Both sides provide expansive Q&A from the transcript, purporting to support their view of the deposition testimony, primarily with respect to Topic 22. The following is

---

[1] Topic 22 is the topic that the parties expansively discuss in their papers. However, as is discussed herein, National Union has raised concerns with additional Topics, specifically Topics 23-24 and 54-56, which cover related subject matter. Since the discussion and arguments are not materially different between the assorted Topics, they are discussed together herein.

representative of what occurred:

> Q. . . . I asked if BD made any statements about RTI's products other than to Mr. Shaw prior to February of 1997?
> A. I think I have to refer you to the interrogatory responses.

(Ex. F 188:1-5)

> Q. . . . Tell me what instance of unfair competition in that time period in an advertisement, publicity article, broadcast or telecast was alleged by RTI?
> A. I can'[t] give you a specific example.
> Q. Okay. But you're the corporate representative here today; correct?
> A. Correct.

(Ex. F at 266:9-19)

> Q. You understood or the company [Becton] understood it had an obligation not to waste AIG's time and to prepare to provide testimony under oath in response to those topics; correct?
> A. Yes.
> Q. And one of the topics was to identify each instance of unfair competition alleged by RTI that occurred in that time period; correct?
> A. Correct.
> Q. Tell me each instance, sir. We're here, we've got a court reporter and a videographer, tell me each instance.
> A. I would have to put you to the interrogatory response.

(Ex. F at 269:4-270:2)

> Q. . . . I need to understand more specifically than that, sir, with all due respect. Since the company is suing my client for hundreds of millions of dollars and bad faith allegations which include coverage under the '93 policy for advertising injury, I'd like you as the person that signed those interrogatories and is now under oath directing me to [Becton's Supplemental Response] to show me the '93 advertisement that you're talking about.
> MR. RUSSO: Same objection.
> Q. As you sit here today, can you do so?
> A. The company's position is that you will find the response in the interrogatory response.

(Ex F. at 365:20-367:11.)

At some point in the deposition, Becton's counsel indicated that its witness would

6

do no more than generally refer to its lengthy interrogatory answers and suggested that, if necessary, the matter be brought to the Court:

> MR. RUSSO: Objection, asked and answered. I'm going to instruct the witness not to answer these questions anymore. Chris, if you want to punt it to the Court, you're free to do so.

(Ex F. at 367:15-20.)

Following the deposition, National Union raised the issue with the Court and seeks the following relief:

1. Compelling Becton to produce its corporate designee, Andrew Walpole, for an additional 90-minutes of corporate testimony on Topics 22-24 and 54-56 of National Union's Amended 30(b)(6) Notice.

2. Compelling Becton to prepare Mr. Walpole to answer questions on those topics by identifying the specific portions of Becton's interrogatory responses and the documents referenced therein on which Becton relies for its claims for coverage for the RTI Action and Class Actions under the Advertising Liability and Personal Injury Provisions in the policies issued to Becton by National Union; and

3. Requiring that the continuing 30(b)(6) deposition be conducted under the supervision of Your Honor at the Martin Luther King Building and U.S. Courthouse, so as to ensure compliance with Your Honor's Order.

(Plaintiff's Letter dated September 27, 2019, at 1.)

## **DISCOVERY STANDARD**

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery regarding "any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving

the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* It is "well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).

## **DECISION**

This is a basic discovery dispute that involves the discovery process and rules, not the substance of the discovery. National Union served a 30(b)(6) deposition notice identifying certain topics as required by the Rule. The primary topic at issue was not objected to and appears to go to the primary or one of the primary issues in the case. Its relevance and importance is beyond dispute. The topic was the subject of an interrogatory question which resulted in a 7-page answer with about 400 documents attached. The letter briefs suggest that the interrogatory answer was drafted by lead counsel in this case and certified as true by Mr. Walpole, Becton's 30(b)(6) witness (the actual certification was not provided to the Court).

Rule 30(b)(6) requires an organization responding to a deposition notice identifying specific topics to be prepared to testify on the topics, such that the witness' testimony will bind the entity. The organization must prepare the witness to testify as to the organization's collective knowledge and information. In this instance, when Mr. Walpole was questioned on the key issue, the witness repeatedly referred generally (not specifically) to the lengthy 7-page interrogatory with 400 pages of documents attached. When asked for specificity, he apparently was unable to answer and refused to refer to the interrogatory and answer the questions specifically. This is improper and unfair.

A party is entitled to fully question a 30(b)(6) witness (and also a witness who has

8

certified interrogatories) **about** the interrogatory answers in a specific, detailed way. Repeated answers to deposition questions with general references to lengthy interrogatory answers without specifics is not sufficient. If the witness cannot answer the questions after reviewing and referring to the interrogatory answer, it may have certain consequences. It could mean that witness was not properly prepared. It could result in the answering party being precluded from using the information in the interrogatory answer in the proceedings in the case. Of course, this would depend on many factors.

There is an important, fundamental difference between deposition discovery and written discovery. In depositions, parties and witnesses must answer questions without assistance from their attorneys. Witnesses and lawyers may not confer during a deposition. Written discovery, on the other hand, is usually screened by or partially prepared by the lawyers. This is an important distinction and a deliberate aspect of the discovery process. And this is precisely what Defendant was effectively trying to avoid at the deposition at issue. Lawyers may prepare their witnesses; indeed 30(b)(6) witnesses have a duty to prepare. But once the deposition begins, the witness must do its best to answer proper questions. The wholesale reference to a multi-page interrogatory answer prepared by a lawyer, without an attempt to be more specific, is not sufficient.

The relief sought here is eminently reasonable. In a case involving hundreds of millions of dollars, the Court would be inclined to grant an additional 90 minutes of deposition of the key witness even absent what occurred. Under the circumstances here, it is essential. And it should be mentioned that the second request – that Mr. Walpole identify the specific portions of Becton's interrogatory responses and answer questions

on them – gives the witness and its lawyer a second chance to prepare for the questions that are now coming.

      In sum, Mr. Walpole is ordered to appear for 90 additional minutes of deposition and answer questions about the specific portions of the interrogatory answers.  At this time, the Court will deny the third aspect of the relief requested – that the deposition occur at the Courthouse.  These are sophisticated parties and professional attorneys and the Undersigned will be available by phone should any further deposition dispute occur.

      **SO ORDERED**.

      **s/Mark Falk**_____
      **MARK FALK**
      **United States Magistrate Judge**

**Dated: November 5, 2019**