**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY,<br><br>Defendant. | Case No. 2:14-cv-04318-CCC-MF |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S *SUB SILENTIO* APPLICATION TO PREVENT THIS COURT FROM CONSIDERING RELEVANT INFORMATION**

**McCarter & English, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Attorneys for Defendant

Of Counsel
Anthony Bartell

On The Brief
Anthony Bartell
Nicole Corona

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

SUPPLEMENTAL STATEMENT OF THE CASE....................2

A. National Union's Supplemental Interrogatories ....................2

B. National Union's Three Deposition Days With BD's Rule 30(b)(6) Designee....................3

C. Exhibits KK-OO ....................8

ARGUMENT

THE COURT SHOULD DENY NATIONAL UNION'S *SUB SILENTIO* APPLICATION BECAUSE BD PROPERLY OPPOSES THE INSURER'S SUMMARY JUDGMENT MOTION WITH HIGHLY RELEVANT AND ULTIMATELY ADMISSIBLE INFORMATION....................8

CONCLUSION....................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bethel v. Jenkins*,
988 F.3d 931 (6th Cir. 2021) ....................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................9

*Egan v. Live Nation Worldwide, Inc.*,
764 F. App'x 204 (3d Cir. 2019)....................8

*Ricoh Co. v. Katun Corp.*,
380 F. Supp. 2d 418 (D.N.J. 2005)....................9

*Smith v. Marcus & Millichap, Inc.*,
No. 18-14797, 2021 WL 939184 (11th Cir. March 12, 2021)....................8

*Waites v. Kirkbridge Center*,
529 Fed. Appx. 139 (3d Cir. 2013)....................10

*Wilcznski v. Redling*,
No. 12-4335 (MAS) (DEA), 2014 WL 5361916 (D.N.J. Oct. 21, 2014)....................10

**Rules**

Fed. R. Civ. P. 37....................9

**PRELIMINARY STATEMENT**

"Truth never damages a cause that is just." – Mahatma Gandhi.

The justice system remains, at its most fundamental, a quest for the truth. The truth arises only from a complete consideration of all relevant information. National Union fears that quest, and the truth resulting therefrom, because its cause remains fundamentally unjust. The insurer seeks to deprive its policyholder – on the flimsiest of grounds, and without a trial – of tens of millions of insurance dollars for which the policyholder bought and paid. National Union seeks to undermine this Court's quest by shielding from its purview highly relevant documents which reveal the truth; *i.e.*, the insurer incorrectly denied coverage for the underlying unfair competition and disparagement claims defended and settled by BD. The truth damages National Union's cause, and for good reason.

National Union's attempt to withhold information from this Court stands in stark contrast to its unfettered access to every conceivable document and bit of information even remotely relevant to BD's coverage claims and the insurer's defenses thereto. Rarely, moreover, has a litigant (and, especially, a recalcitrant insurance company) benefitted so greatly from its adversary's assistance in crafting its defenses to that adversary's claims. National Union has demanded – and BD largely has provided the insurer with – a veritable road map of the arguments, reasoning, facts and documents underlying and supporting its coverage claims. The insurer, however, complains BD has not done enough. National Union essentially demands that BD -- at this stage of the case, and before the parties have prepared their pre-trial submissions and exchanged trial exhibit lists – identify for the insurer, and set in stone, the exact documents and information on which BD will rely on trial. But, litigation does not work that way. Greater minds than counsels' decided long ago that the adversarial system inherent in litigation best leads to the truth. A litigant's arguments, moreover, remain in constant flux up to, and even through, the trial

of a case. Every litigant – including, no doubt, National Union – revises and hones its arguments as it gathers more information, puts in the hard work of preparing for trial, and tries its case. What National Union calls "gotcha litigation" actually constitutes simple "litigation."

The insurer, at bottom, offers no compelling, or even legitimate, reasons for why this Court, on this summary judgment motion, should turn a blind eye to highly relevant (and ultimately admissible) information bearing directly on its coverage defenses. The Court, therefore, should deny National Union's *sub silentio* application.

## SUPPLEMENTAL STATEMENT OF THE CASE[1]

### A. National Union's Supplemental Interrogatories

National Union's application arises entirely from BD's response to the insurer's August 17, 2018 Supplemental Interrogatories. Those Interrogatories sought information directed solely toward BD's coverage claims under National Union's insurance policy numbers BE 3087643 and BE 3087644, effective April 1, 1993 through October 1, 1994, and April 1, 1993 through April 1, 1994, respectively. BD could have answered those Interrogatories by referring to its document productions pursuant to Federal Rule 33(d), an option to which National Union frequently availed itself when responding to BD's Interrogatories:

> National Union refers BD to the non-privileged, non-objectionable portions of the BD CLAIM FILE, which is produced herewith.

BD, instead, provided National Union with a detailed seven (7) page substantive narrative containing relevant document citations. *See* ECF No. 215. BD thereafter supplemented its

---

[1] BD takes this opportunity to apologize for, and correct, the following clerical errors in its summary judgment Opposition Brief: Corona Cert., Ex. YY (not Z) contains the report of RTI expert H.E. Frech (*see* Opp. at 24); Corona Cert. Ex. M at Bates page BD43334 (and not BD43333) of RTI expert David Egilman's report discusses the April 15, 1998 marketing document (*see* Opp. at 14-15); and the correct citation for RTI's Third Amended Complaint remains Ex. 14 to the Mhatre Dec. (and not 18) (*see* Opp. at 15-16).

response with an eleven (11) plus page narrative, which also contained relevant document citations.[2] No good deed, as they say, goes unpunished.

**B. National Union's Three Deposition Days With BD's Rule 30(b)(6) Designee**

National Union received, and took full advantage of, a complete and fair opportunity to depose BD on the bases of its coverage claims, including on the documents it seeks to hide from this Court. On October 19, 2018, the insurer served on BD a Rule 30(b)(6) Deposition Notice containing an incredible sixty-four (64) separate Topics. *See* ECF No. 214-2. Rather than meet National Union's overbroad and burdensome Notice with an entirely justified motion for a Protective Order, BD again bent over backwards to make the deposition as substantive and productive as possible. BD designated as its corporate witness its current Director of Risk Management Andrew Walpole, and Mr. Walpole spent dozens of hours, and an extraordinary amount of effort, preparing to testify on these Topics. Mr. Walpole immersed himself fully in tens of thousands of documents, became intimately familiar with the underlying and coverage case files (including all discovery responses in such cases), interviewed current and former BD employees, and met numerous times with counsel.[3]

National Union deposed Mr. Walpole on July 12, 2019 and August 1, 2019. During both deposition days, Mr. Walpole expressly and repeatedly testified that BD will rely at trial on both its discovery responses and its entire document production:

> Q. Let me put it this way. If it's not in the interrogatory responses, is the company's answer that it knows of no such statements?

---

[2] BD responded to the Interrogatories subject to its objection that they "seek information already in National Union's possession."

[3] BD respectfully asks the Court to compare Mr. Walpole's deposition testimony with that of National Union's corporate designees. Such comparison will confirm that only one party took seriously its Rule 30(b)(6) obligations (hint – it was not National Union).

> A. Specific examples of those statements might be included in the documents that we produced. [*See* Mhatre Dec., Ex. 10 at 188:10-14]
>
> * * * *
>
> Q. If it's not, if there is no such statements mentioned in the rog responses, is the company's position that it does not know of any such statements?
>
> * * * *
>
> A. If there – if the rog responses don't provide specific examples and there's no examples in the document production -- [*Id.* at 189:5-13]
>
> * * * *
>
> Q. So to the extent there was advertising injury as defined in the policy we're looking at during that time period, it would be in those interrogatories? …
>
> A. It would be in the interrogatory response and/or in the document production. [*Id.* at 338:12-17]

*Accord id.* at 344:21-345:8.

Unsatisfied with Mr. Walpole's testimony – only because it raised the alarming specter that National Union might need to prepare its own case – the insurer moved to compel Mr. Walpole to return for yet another deposition day to respond again to questions regarding BD's coverage claim arguments. Although expressing serious reservations about the merits of National Union's position during oral argument, Magistrate Judge Falk eventually allowed the insurer an additional ninety (90) minutes of deposition time with Mr. Walpole. *See* ECF 225.

Mr. Walpole thereafter committed, again, countless hours preparing for his third deposition day by, among other things, reviewing and refreshing his recollection regarding Deposition Topics he last considered more than one year prior. Mr. Walpole also reviewed additional document binders, so BD could provide National Union with even more facts and information relevant to its coverage claims.

When Mr. Walpole returned for his third deposition day on September 18, 2020, he testified at length about the [REDACTED]





ME1 36173058v.2

Contrary to National Union's misrepresentation, Mr. Walpole (and not certifying counsel) described the documents contained in Exhibits KK-OO as advertising materials, and Mr. Walpole will authenticate those documents at trial:





[4] BD, again, had produced such documents to National Union nearly two (2) years earlier, by at least October 5, 2018.



**C. Exhibits KK-OO**

Pursuant to National Union's request, BD identified for the insurer, on November 2, 2020, [redacted] BD had produced to National Union the vast majority of these documents by 2017, and the few remaining documents by October 5, 2018. National Union, in short, had received all of the documents of which it now complains more than two (2) years before the insurer filed its summary judgment motion.

**ARGUMENT**

**THE COURT SHOULD DENY NATIONAL UNION'S *SUB SILENTIO* APPLICATION BECAUSE BD PROPERLY OPPOSES THE INSURER'S SUMMARY JUDGMENT MOTION WITH HIGHLY RELEVANT AND ULTIMATELY ADMISSIBLE INFORMATION**

National Union provides no legitimate basis for shielding from this Court information relevant to the insurer's summary judgment motion. BD need not authenticate Exhibits KK-OO to use those documents to oppose National Union's summary judgment motion. "A summary-judgment motion must be supported by facts that can 'be presented in a form that would be admissible,' though the evidence need not yet be authenticated and admissible." *See Egan v. Live Nation Worldwide, Inc.*, 764 F. App'x 204, 208 (3d Cir. 2019); *see also Smith v. Marcus & Millichap, Inc.*, No. 18-14797, 2021 WL 939184, *7 n.2 (11th Cir. March 12, 2021) ("[E]vidence

does not have to be authenticated or otherwise presented in an admissible form to be considered at the summary judgment stage, 'as long as the evidence could ultimately be presented in an admissible form.'"); *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (summary judgment evidence "need not be 'in a form that would be admissible at trial.'").

National Union's position conflicts directly with well-established Supreme Court law:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). [5]

BD, in short, appropriately opposes National Union's summary judgment motion without needing to provide an authentication affidavit for its own production. BD remains prepared to authenticate all such evidence at trial. National Union, of course, remains free to file an appropriate *in limine* motion before trial with respect to BD's trial evidence.

BD, moreover, timely produced the subject documents to National Union well within the discovery period and a full two (2) years before the insurer filed its summary judgment motion. Even if BD had not timely produced such documents (which it did), courts refuse to impose the draconian exclusion sanction of Federal Rule 37 where, as here, "'[t]here is no evidence from which this Court could conclude that Defendant's failure to produce the file earlier was due to

[5] Even National Union's cited case supports the well-established rule that BD need not oppose summary judgment with admissible evidence as long as the evidence could be admissible at trial, like Exhibits KK-OO here. *See Ricoh Co. v. Katun Corp.*, 380 F. Supp. 2d 418, 437-38 (D.N.J. 2005) ("… evidence that would be admissible at trial may be used to test a summary judgment motion …").

willful deception or flagrant disregard of any court orders' and [National Union] 'was not prejudiced or surprised by the admission of evidence.'" *See Waites v. Kirkbridge Center*, 529 Fed. Appx. 139, 142 (3d Cir. 2013) (citation omitted).[6]

Mr. Walpole testified repeatedly that BD may rely at trial on any or all documents contained within its productions to National Union. *See supra* at 3-4. [REDACTED] National Union's counsel, moreover, rejected BD's offer to continue Mr. Walpole's deposition on the subject documents beyond the time allotted by the Court. *See* Certification of Mario Russo. Far from suffering any prejudice or surprise, National Union demanded BD identify its advertising materials, BD complied fully with that demand, and the insurer deposed Mr. Walpole about those materials.

## CONCLUSION

This Court should deny National Union's request to bury Exhibits KK-OO.

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Email: abartell@mccarter.com
Attorneys for Defendant

By: s/ Anthony Bartell
Anthony Bartell

Dated: April 12, 2021

---

6 *Wilczanski v. Redling*, No. 12-4335 (MAS) (DEA), 2014 WL 5361916, at *5 (D.N.J. Oct. 21, 2014) bears no relevance to this dispute because there, unlike here, the defendant refused to produce responsive documents, in violation of court discovery rulings, until summary judgment. BD, in stark contrast, produced to National Union the documents contained in Exhibits KK-OO by no later than 2018.