# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> *Plaintiff,* <br><br> v. <br><br> BECTON, DICKINSON AND COMPANY, <br><br> *Defendant.* | Civil Action No. 2:14-cv-04318 (CCC-MF) <br><br> *Filed Electronically* <br> *Confidential – Filed Under Seal* |

**PLAINTIFF NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.'S RESPONSE TO BD'S SUPPLEMENTAL
OPPOSITION RELATING TO BD EXHIBITS KK-OO (DE NO. 301)**

## TABLE OF CONTENTS

Preliminary Statement...................................................................................................1

Argument.........................................................................................................................1

Conclusion ......................................................................................................................7

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bouder v. Prudential Fin., Inc.*,
 No. 06-4359, 2010 WL 2026707 (D.N.J. May 21, 2010) ...................................6

*Morris v. Wells Fargo Bank, N.A.*,
 No. 12-01909, 2013 WL 4081701 (D.N.J. Aug. 8, 2013), *report
 and recommendation adopted,* No. 12-1909, 2013 WL 4509973
 (D.N.J. Aug. 23, 2013)....................................................................................6

*Wilczynski v. Redling*,
 No. 12-4335, 2014 WL 5361916 (D.N.J. Oct. 21, 2014)................................5, 6

## PRELIMINARY STATEMENT

No matter how strongly BD[1] believes its own arguments, or how many times it repeats them, the "truth" is those arguments do not establish that BD complied with its discovery obligations.  BD's Supplemental Opposition, its latest effort to justify those failures through hyperbole and ad hominem attacks, is no more convincing than BD's prior opposition to National Union's Motion to Compel or Appeal on the same issues. BD should not be permitted to rely on Exhibits KK-OO in support of its Opposition.

## ARGUMENT

BD has the burden to establish that the Policies cover the antitrust claims it defended and settled.  (*See* Reply at 3.)  In an effort to do so, BD asserts that those claims were based "almost entirely" on BD's "advertising strategies."  (*Id.* at 9.)  A review of the complaints, mediation statements, and summary judgment briefs in the Underlying Actions – drafted by the BD lawyers who actually litigated those actions – does not support BD's assertion.  (*See* Mot. at 20-26; Reply at 9-10.)

Instead, it appears BD crafted this assertion years after the Underlying Actions settled in an effort to support its new claims for coverage.  Since BD's assertion forms the heart of its coverage claims, National Union has spent years trying to get BD to identify the specific collection of advertising documents, out of the millions of pages

---

[1] Capitalized terms shall have the definitions set forth in the Motion for Summary Judgment or BD's recent supplemental opposition (DE No. 301) ("Supp. Opp.").

produced, that BD contends RTI and the Class Action plaintiffs relied on, almost

exclusively, to support the long-settled antitrust claims BD previously concluded were

not covered.  As the Court held, such discovery relates to "one of the primary issues in

the case" and its "relevance and importance is beyond dispute . . . ."  (DE No. 225, at 8.)

After extensive efforts, National Union hoped it finally had obtained that

discovery.  Unfortunately, that was not the case.  Here are the indisputable facts relating

to efforts to get that discovery and BD's continued resistance to providing it:

- On **October 10, 2018**, in response to an Order from Chief Magistrate Judge Falk, BD provided a seven-page interrogatory response, verified by BD's Director of Risk Management Andrew Walpole, that identified the 33 documents on which BD's claims for coverage for the RTI Action were based.  National Union compiled the response and documents into a single bound volume, PX63.

- On **October 10, 2018**, BD provided an eleven-page amended interrogatory response, verified by Mr. Walpole, that identified the 50 documents on which BD's claims for coverage for the Class Actions were based.  National Union compiled that written response and documents into two bound volumes, PX68/69.  (PX63 and PX68/69 have been filed with the Motion as Exs. 55, 56, and 57.)

- On **July 12 and August 1, 2019**, National Union took the corporate deposition of BD.  As BD asserts, after meeting "numerous times with counsel," Mr. Walpole initially refused to confirm the specific documents on which BD's coverage claims were based, suggesting instead it could be any document in the millions produced. (ECF No. 231-1, at 3.)  But, once pushed, Mr. Walpole conceded that *all* documents that supported BD's claims for coverage under all Policies, and for both Underlying Actions, were contained solely in PX 63 and PX68/69.  (*See* Mot. at 22-23.)

- On **October 15, 2019**, in response to a subsequent motion to compel, BD represented to Chief Magistrate Judge Falk that "*Mr. Walpole confirmed repeatedly 'that all ... documents supporting BD's claim for coverage for the RTI Action ... were contained **solely** in BD's Supplemental [Interrogatory] Responses*

*[PX63]*.'"  (DE No. 220, at 17 (emphasis added); *see also id.* at 17-18 (citing testimony confirming the same was true for the Class Actions and PX 68/69).)

- On **November 19, 2019**, in support of its appeal of the Order granting National Union's motion to compel, BD also represented to Your Honor that "*Mr. Walpole confirmed repeatedly that these eighteen (18) pages [referencing the narratives in PX 63 and PX 68/69] contain 'all information' supporting BD's coverage claims.*" (DE No. 231-1, at 24-25 (emphasis added).)

Based on BD's sworn interrogatory responses, sworn corporate testimony, and representations to two separate Federal Judges, National Union took BD at its word that PX63 and PX68/69 contained "***all information***" supporting BD's coverage claims. National Union, therefore, expected the final 90 minutes of Court-ordered testimony by Mr. Walpole to be focused on which documents in PX63 and PX68/69 related to which provisions, and which Policies, in which years.  That turned out not to be the case:

- On **September 18, 2020**, after delays caused by his work commitments, National Union finally deposed Mr. Walpole.  He testified that, in June 2020, BD's counsel provided him a set of "[f]ifteen or 20" documents.  (Ex. 11, BD Tr. II at 11:17-22, 12:3-5, 13:16-21.)  Although he did not know if RTI or the Class Actions plaintiffs had relied on those documents to support their antitrust claims (*see id.* at 73:5-20, 73:22-74:3), Mr. Walpole testified that BD was now asserting those documents supported its claims for coverage.  (*Id.* at 12:20-25.)

- On **November 2, 2020**, after the close of discovery, weeks after Mr. Walpole's deposition, and just nine days before National Union's summary judgment brief was due, BD sent National Union a letter identifying for the first time the documents counsel provided to Mr. Walpole in June 2020 (the "November 2 Letter").  (Ex. 59.)  Rather than the "[f]ifteen to 20 documents" Mr. Walpole referenced, ***BD identified 260 documents totaling more than 8,000 pages***.  (*Id.*)

- On **November 16, 2020**, after a "meet & confer" call, National Union asked BD to withdraw its identification of those documents, or at least confirm which documents related to claims for coverage under which Policies and, for any document BD purported was an advertisement, to identify if, when, and where it

3

was published.  (Declaration of Christopher J. St. Jeanos ("St. Jeanos Decl."), Ex. 64.)[2]  BD refused to do so.  (*See id.* (complaining National Union was seeking information "to which it harbors no legitimate right").)

Later, on April 12, 2021, in its summary judgment Opposition, BD asserted that the "campaigns" on which its coverage claims are based purportedly each "generated hundreds of advertisements [that] collectively spanned the entire period covered by [the] Policies," and cited to Exhibits KK-OO.  (Opp. at 21, n.23.)  In BD's accompanying Certification, BD's counsel certified that Exhibits KK-OO were "a true and correct collection of advertising and marketing materials spanning from the period" 1985 through 2002.  (DE No. 267, Cert. ¶¶ 37-41.)

Amazingly, not one of the 139 documents at Exhibits KK-OO was contained within PX 63 or PX68/69; instead, all 139 documents were among those first identified in the November 2 Letter.  (*See* Exs. KK-OO; Exs. 55-57, 59.)  Thus, despite BD's verified interrogatory responses, sworn corporate testimony, and representations to the Court that PX63 and PX68/69 "*contain 'all information' supporting BD's coverage claims*," BD did not include a single one of those 83 documents in Exhibits KK-OO.

Instead, every document in Exhibits KK-OO, on which BD now asserts its coverage claims are based, was identified as such *after* the close of discovery and *after*

---

[2]   Contrary to BD's assertion (Russo Cert. at ¶ 5), National Union does not recall BD's counsel offering National Union additional time to depose Mr. Walpole.  (*See* St. Jeanos Decl. at ¶ 4.)

BD's corporate deposition.  BD offers no reason why it could not have identified that set

of documents during discovery – or, at the very least, in June 2020 when counsel

provided them to Mr. Walpole to prep for his final day of testimony – other than arguing

that almost two decades after settling the RTI Action, and seven years after this litigation

was commenced, BD is still trying to "hone[] its arguments."  (Supp. Opp. at 6.)

BD now argues that its tactics make no difference because the documents

themselves attached at Exhibits KK-OO were produced during discovery.  (*See id.* at 5,

6.)  But that misses the point.  "One of the primary issues in the case" is the identification

of the specific *set of documents*, out of the millions of pages produced, that BD contends

RTI and the Class Action plaintiffs relied on to support their antitrust claims, and that BD

now relies on in an effort to establish coverage.  (*See* DE No. 225, at 8.)

As a result of BD's conduct, National Union was deprived of the opportunity to

question BD, under oath, about why it believes the set of documents at Exhibits KK-OO

are advertisements, during the policy periods, that amounted to unfair competition, and

that plaintiffs in the Underlying Actions purportedly relied on to support their antitrust

claims.  Nor can National Union determine whether any of those documents were

published, let alone where or when.  Instead, National Union, and the Court, are left only

with BD's counsel's limited testimony on those key questions.

BD should not be permitted to benefit from its conduct, and rely on the recently

identified set of documents at Exhibits KK-OO in support of its opposition to National

Union's motion for summary judgment.  *See, e.g.*, *Wilczynski v. Redling*, No. 12-4335, 2014 WL 5361916, at *6 (D.N.J. Oct. 21, 2014) (prohibiting amendments after close of discovery when the "new" information was responsive to earlier discovery requests and within the proponent's control); *see also Bouder v. Prudential Fin., Inc.*, No. 06-4359, 2010 WL 2026707, at *27 (D.N.J. May 21, 2010) (excluding evidence).

Further, and contrary to BD's assertions (*see* Supp. Opp. at 6), the certification from BD's counsel is not sufficient to establish that the collection of documents at Exhibits KK-OO would be admissible at trial.  Indeed, nothing in that certification establishes that counsel (who, undoubtedly, will not testify at trial) has the personal knowledge necessary to certify that the collection of documents at Exhibits KK-OO are advertisements, during the policy period of the Policies, that RTI and the Class Action Plaintiffs relied upon to support their antitrust claims – especially when BD's corporate designee could not do so.  *See, e.g.*, Fed. R. Evid. 56(e) (In opposing summary judgment, "affidavits shall be made on personal knowledge, . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); District Ct. of N.J. Local R. 27 (same); *Morris v. Wells Fargo Bank, N.A.*, No. 12-01909, 2013 WL 4081701, at *4 (D.N.J. Aug. 8, 2013), *report and recommendation adopted,* No. 12-1909, 2013 WL 4509973 (D.N.J. Aug. 23, 2013) (Cecchi, J.) (certification improper where attorney did "not profess to have any personal knowledge regarding its subject matter").

6

Regardless, Exhibits KK-OO do not require a trial in this matter.  As BD asserts, "[t]he truth arises only from a complete consideration of *all relevant information*." (Supp. Opp. at 1 (emphasis added).)  Contrary to the Certification, all relevant information establishes that Exhibits KK-OO – mostly documents from BD's own files marked "Confidential" or "Confidential for Outside Counsel Only" – are not "advertisements," which BD agrees are "paid broadcast[s], publication[s] or telecast[s] to the general public …."  (Opp. at 6.)  Further, many of the documents are undated, and those with dates have different dates than those "certified" by counsel.

Finally, all relevant information – such as the complaints, mediation statements, and briefing in the Underlying Actions – establishes that the antitrust claims were not based "almost exclusively" on Exhibits KK-OO.  Indeed, when Mr. Walpole was asked whether RTI or the Class Action plaintiffs had relied on those documents, he conceded that, "off the top of my head, no, I don't know the answer to that question."  (Ex. 11, BD Tr. at 73:22-74:4.)  Of course, National Union's "quest" for the "truth" had to end there because, while BD's counsel provided Exhibits KK-OO to Mr. Walpole in June 2020, months before his deposition, BD's counsel did not tell National Union about those documents until November 2, 2020, six weeks *after* his deposition.

## CONCLUSION

National Union respectfully requests that the Court disregard Exhibits KK-OO submitted by BD in opposition to National Union's Motion for Summary Judgment.

Dated: April 22, 2021          Respectfully submitted,


By:  s/*Liza M. Walsh*
      Liza M. Walsh
      Katelyn O'Reilly
      Joseph L. Linares
      WALSH PIZZI O'REILLY
      FALANGA LLP
      Three Gateway Center
      100 Mulberry Street, Floor 15
      Newark, New Jersey 07102
      (973) 757-1100
      lwalsh@walsh.law
      koreilly@walsh.law
      jlinares@walsh.law

      -and-

      WILLKIE FARR & GALLAGHER
      LLP
      Christopher J. St. Jeanos
        (admitted *pro hac vice*)
      Lynnette Cortes Mhatre
        (admitted *pro hac vice*)
      787 Seventh Avenue
      New York, New York 10019
      (212) 728-8000
      cstjeanos@willkie.com
      lmhatre@willkie.com

      *Attorneys for Plaintiff*