NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A., <br><br> Plaintiff, <br><br> v. <br><br> BECTON, DICKINSON AND COMPANY, <br><br> Defendant. | No. 14cv4318 (EP) (JSA) <br><br> **OPINION** |

**PADIN, District Judge.**

Plaintiff National Union Fire Insurance Company of Pittsburgh, ("National Union") brings a motion, D.E. 405-1 ("National Union's Motion" or "National Union Mot."), requesting that the Court clarify and/or reconsider certain aspects of its September 5, 2024 Opinion, D.E. 389 ("SJ Opinion"), and Order, D.E. 390, which granted in part and denied in part National Union's renewed motion for summary judgment, D.E. 374.[1] Defendant Becton, Dickinson and Company ("BD") opposes National Union's Motion. D.E. 409 ("BD Opp'n"). National Union does not reply. *See* Dkt.

Defendant BD also brings a motion, D.E. 406 ("BD's Motion" or "BD Mot."), requesting that the Court clarify certain aspects of its SJ Opinion.[2] National Union opposes BD's Motion. D.E. 408 ("National Union Opp'n"). BD does not reply. *See* Dkt.

---

[1] National Union previously moved for summary judgment in 2020. D.E. 255. Judge Neals denied the motion but permitted National Union to file a renewed motion for summary judgment. D.E. 315. This Court primarily refers to the holdings in its Opinion resolving National Union's renewed motion for summary judgment in 2024, rather than Judge Neals's Opinion in 2022.

[2] BD's Notice of Motion was filed as D.E. 404 but its brief was filed as D.E. 406. For ease of reference, the Court refers to the brief filed at D.E. 406 as "BD's Motion" or "BD Mot."

For the reasons set forth below, the Court will **GRANT in part** and **DENY in part** National Union's Motion and **GRANT in part** and **DENY in part** BD's Motion.

I.   **BACKGROUND**[3]

    A.   **Factual Information**[4]

        *1.   The RTI Action*

BD is a global company primarily engaged in the manufacture and sale of medical supplies, systems, and devices. D.E. 315 at 2. In or around August 1998, Retractable Technologies, Inc. ("RTI") brought an action against BD and others in Texas state court. D.E. 374-2, Ex. 3. RTI alleged BD had "participated in an antitrust conspiracy and other illegal conduct" and "contracted . . . to exclude RTI from selling" certain retractable syringes and safety products that RTI developed. *Id.* ¶¶ 9, 11. Thereafter, RTI dismissed its state court action and, on January 29, 2001, filed a new action against BD and others in the United States District Court for the Eastern District of Texas (the "RTI Action"). *See* D.E. 374-2, Ex. 4 ("RTI Compl."). The RTI Action asserted claims for, *inter alia*, state and federal antitrust violations and business disparagement. *Id.* ¶¶ 29-49. The claims asserted in the RTI Action relied in part upon BD's advertising conduct during the periods covered by various insurance policies between National Union and BD. For example, BD's "Block Terumo" advertising campaign and "Safety Compliance Initiative" ("SCI") advertising campaign spanned periods covered by the Policies and were relied upon in the RTI Action to support the allegations against BD. D.E. 376-3, Ex. PP; D.E. 376-3, Ex. SS at 20:10-18,

---

[3] The Court assumes the parties' familiarity with the background of this case. Therefore, the background section is limited to facts relevant to the motion. For a fully detailed factual and procedural background, see the Court's initial Opinion on summary judgment, D.E. 315.

[4] There are two actions underlying the insurance coverage dispute between National Union, the insurer, and BD, the insured. D.E. 315 at 1-6. These are, respectively, the "RTI Action" and the "Class Actions," collectively referred to throughout this Opinion as the "Underlying Actions."

103:11-23; D.E. 374-2, Ex. 6 ¶ 32; D.E. 255-5, Ex. 18 ¶ 48; D.E. 377-2, Ex. CC ¶¶ 72-73; *see also generally* D.E. 375-4, Ex. 39.

On July 2, 2004, BD agreed to pay RTI $100,000,000 to settle the RTI Action. D.E. 374-2, Ex. 12 at 83. In its last Opinion, this Court held that there was a genuine issue of material fact regarding whether settlement of the RTI Action included the business disparagement claim, in addition to the allegations regarding anticompetitive practices and tortious interference. SJ Opinion at 24-26.

2.  *The Class Actions*

After the RTI Action settled, Louisiana Wholesale Drug Company, Inc. ("LWDC") filed a putative class action against BD in this Court on March 23, 2005. *See In re Hypodermic Prods. Antitrust Litig.*, No. 05-1602, D.E. 1 (D.N.J. Mar. 23, 2005). LWDC alleged that it was a direct purchaser of BD's products, and that BD had "stifl[ed] . . . competition" that "caused the artificial inflation of overall market prices . . . result[ing] in [LWDC] and the other Class members buying" BD's products "at supracompetitive prices." *Id*. at 13. Following the LWDC action, other direct and indirect purchasers of BD's products brought separate putative class actions against BD, which were later consolidated into a multidistrict litigation. *See* D.E. 375-2, Ex. 14 at 6; *see also* D.E. 374-2 Exs. 17-18. On April 27, 2009, BD settled the Class Actions with the direct purchaser plaintiffs for $45,000,000, and on July 30, 2013, with the indirect purchaser plaintiffs for $22,000,000. D.E. 374-2, Exs. 17-18. The claims asserted in the Class Actions also relied in part upon BD's advertising conduct during the periods covered by various insurance policies between National Union and BD. For example, BD's "Block Terumo" advertising campaign and SCI advertising campaign were also relied upon in the Class Actions to support the allegations against

3

BD.  D.E. 376-3, Ex. PP; D.E. 376-3, Ex. SS at 20:10-18, 103:11-23; D.E. 374-2, Ex. 6 ¶ 32; D.E. 255-5, Ex. 18 ¶ 48; D.E. 377-2, Ex. CC ¶¶ 72-73; *see also generally* D.E. 375-4, Ex. 39.

### 3. *BD Demands coverage from National Union*

On June 13, 2014, BD demanded insurance coverage from National Union for the RTI Action.  D.E. 374-2, Ex. 20.  Specifically, BD requested coverage for the $100,000,000 it paid to settle the RTI Action, plus its defense costs, under three commercial umbrella liability insurance policies issued by National Union to BD:  (1) Policy No. BE 309-14-79, in effect from October 1, 1994, to October 1, 1997 (the "1994 Policy"); (2) Policy No. BE 932-81-55, in effect from October 1, 1997, to October 1, 1999 (the "1997 Policy"); and (3) Policy No. 357-42-59, in effect from October 1, 1999 to October 1, 2002 (the "1999 Policy").  *See id.*; *id.*, Ex. 21 at 189, 232; *id.*, Ex. 22 at 251, 293; *id.*, Ex. 23 at 295.

In September 2014, BD demanded coverage for the Class Action.  *Id.*, Ex. 27.  BD requested coverage for the Class Actions under the 1994 Policy, 1997 Policy, and 1999 Policy, as well as two additional commercial umbrella liability insurance policies issued by National Union: (1) Policy No. 308-76-44, in effect from April 1, 1993, to April 1, 1994, and covering "occurrences or circumstances happening between the dates October 1, 1985, to April 1, 1993;" and (2) Policy No. 308-76-43, in effect from April 1, 1993, to October 1, 1994 (together, the "1993 Policies" and, collectively with the 1994 Policy, 1997 Policy, and 1999 Policy, the "Policies").  *Id.*, Ex. 24 at 344, 355; *id.*, Ex. 25 at 409, 504.

### 4. *The insurance policies*

While the Policies' language varies slightly, all provide BD with coverage for sums in excess of the amounts paid by underlying primary insurers that BD "becomes legally obligated to

4

pay . . . because of . . . Personal Injury or Advertising Injury."[5]  *Id.*, Ex. 21 at 235; *id.*, Ex. 22 at 277; *id.*, Ex. 23 at 322; *id.*, Ex. 24 at 346; *id.*, Ex. 25 at 411.  BD sought coverage for the Underlying Actions under the "Advertising Liability" provision in the 1993 Policies, the "Advertising Injury" provision in the 1994 Policy, 1997 Policy, and 1999 Policy, and the "Personal Injury" provision in all of the Policies.  SJ Opinion at 5.

B.   **Procedural History**

On July 9, 2014, National Union sought a declaration that it has no duty to defend or indemnify BD for the RTI Action.  *See generally* D.E. 1.  BD answered and counterclaimed for a declaratory judgment that National Union must pay its defense and indemnity costs for the RTI Action and for damages arising out of National Union's alleged breach of contract and breach of the duty of good faith and fair dealing.  *See generally* D.E. 181.

On January 30, 2017, National Union filed another action in this district seeking a declaration that it has no duty to defend or indemnify BD for the Class Actions.  *See generally* No. 17-691, D.E. 1.  BD answered and counterclaimed for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing.[6]  *See generally* No. 17-691.  The RTI Action and the Class Actions were subsequently consolidated on June 4, 2018.  D.E. 163.

Thereafter, National Union moved for summary judgment on its claims and BD's counterclaims.  On July 12, 2022, the Court conditionally denied certain portions of National

---

[5] The 1993 Policies refer to "Advertising Injury" as "Advertising Liability."  *See* D.E. 374-2, Ex. 24 at 346; D.E. 374-2, Ex. 25 at 411.  The 1999 Policy also excludes coverage for Personal Injury. D.E. 366-2 at 309.

[6] On February 20, 2018, the Court denied National Union's motion for judgment on the pleadings for the Class Actions, concluding that "no determination of coverage c[ould] be rendered at this juncture" and that National Union was not "entitled to judgment . . . based upon the language in the policies" alone.  No. 17-691, D.E. 31 at 9-10.

5

Union's motion for summary judgment. D.E. 315 at 1 n.1. National Union's motion as to the conduct-based claims was conditionally denied and it was granted an opportunity to take discovery related to "advertisements" that were not produced by BD prior to close of discovery. *Id*. at 15-16. Additionally, the Court conditionally denied National Union's motion as to its assertion that BD was not entitled to coverage because the antitrust statute of limitations barred plaintiffs' recovery of damages in the Underlying Actions and therefore excused National Union's obligation to provide coverage for time-barred conduct. *See id*. at 15 n.8. In denying the motion, the Court found "it [wa]s not clear from the record whether any damages sought in the Underlying Actions were speculative in nature," which may have provided an exception to the statute of limitations. *Id*. Accordingly, the Court concluded National Union could seek leave of Court to renew its arguments on the coverage claims and statute of limitations upon completion of supplemental discovery. *Id*. at 15-16.[7]

In accordance with the Court's July 12, 2022, decision, BD responded to supplemental interrogatories, and produced Andrew Walpole, its 30(b)(6) representative, for a supplemental deposition. *See* D.E. 374, Exs. 35-36, 38; D.E. 375, Exs. 37, 39. After the Court granted leave, D.E. 363, National Union filed a renewed motion for summary judgment on its claims and BD's counterclaims. D.E. 374. The Court granted in part and denied in part National Union's motion for summary judgment. SJ Opinion at 28. Specifically, this Court held that BD was not entitled to coverage under the 1993 Policies for either of the Underlying Actions because the four-year statute of limitations for antitrust claims meant that BD never faced liability in the Underlying Actions for conduct that would have taken place during the period covered by the 1993 Policies. *Id.* at 13-20. This Court also held that BD was not entitled to coverage under the Advertising

---

[7] On July 13, 2022, this matter was reassigned to the undersigned. D.E. 317.

Injury provision in the 1994 Policy, 1997 Policy, and 1999 Policy for the Class Actions, but that a genuine issue of material fact existed regarding whether BD was entitled to coverage under the Advertising Injury in the 1994 Policy, 1997 Policy, and 1999 Policy for the Class Actions. *Id.* at 20-25. This Court additionally held that a genuine issue of material fact existed regarding whether BD was entitled to coverage under the Personal Injury provisions in the 1994 Policy, 1997 Policy, and 1999 Policy for either of the Underlying Actions. *Id.* at 26-27. National Union now asks the Court to clarify and/or reconsider certain portions of its SJ Opinion on National Union's renewed motion for summary judgment. *See* National Union Mot. BD also asks this Court to clarify certain portions of its SJ Opinion. *See* BD Mot.

National Union and BD raise overlapping issues. For the reasons described in this Opinion, the Court will: **GRANT** National Union's Motion to specify that BD is not entitled to any coverage under the Personal Injury provision in the 1999 Policy; **DENY** National Union's Motion and BD's Motion regarding BD's entitlement to coverage for the RTI Action under the final annual period in the 1999 Policy; **DENY** National Union's Motion regarding BD's entitlement to coverage for either of the Underlying Actions under several policy periods in the 1994 Policy, the 1997 Policy, and the 1999 Policy; and **GRANT** BD's Motion regarding the availability of National Union's defense obligation under the 1993 Policies.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(e), a court may grant a motion for reconsideration if the moving party shows one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Motions for reconsideration

7

should be granted sparingly."[8] *Williams*, 32 F. Supp. 2d at 238. It is not a litigant's "second bite at the apple" so that he can merely reargue his position. *Levi v. Holt*, No. 05-1533, 2006 WL 680852, at *1 (M.D. Pa. Mar 16, 2006).

A motion for clarification, conversely, is granted "to explain or clarify something ambiguous or vague, not to alter or amend" previous rulings. *Tq Delta, LLC v. Adtran, Inc.*, No. 14-954, 2019 WL 9406455, at *1 (D. Del. Oct. 3, 2019).

### III. ANALYSIS

#### A. There Is No Coverage Under the 1999 Policy for Personal Injury

The Court previously determined that "National Union [had] not demonstrated as a matter of law that it [was] entitled to a declaratory judgment that BD is not entitled to coverage under the 'Personal Injury' provisions" of the 1994 Policy, 1997 Policy, and 1999 Policy for either of the Underlying Actions, finding that a genuine dispute of material fact existed. SJ Opinion at 20. National Union asks the Court to reconsider and/or clarify this statement regarding the 1999 Policy in particular. National Union Mot. at 4-5. The Court will **GRANT** National Union's Motion on this issue because there is "a need to correct a clear error of . . . fact to prevent manifest injustice." *See Blystone*, 664 F.3d at 415.

The interpretation of an insurance policy is a question for the Court to decide as a matter of law. *Wimberly Allison Tong & Goo v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504,

---

[8] "Motions for reconsideration must be strictly reviewed for at least four reasons. First, it would tend to undercut the court's first decision and transform it into an advisory opinion, which is prohibited. Second, motions for reconsideration run counter to the operation of the Federal Rules of Civil Procedure, which provide all the necessary safeguards to promote fair decisions. Third, broad interpretation of motions for reconsideration is not supported by controlling precedent. And last, but not least, reconsideration of dispositive decisions on grounds advanced by [movant] hinders the court's ability to decide motions awaiting resolution that have yet to be reviewed once, let alone twice." *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

510 (D.N.J. 2008). Under New Jersey law, "[i]nsurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" *Memorial Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 532 (N.J. 2012) (quoting *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010)).[9] "In assessing the meaning of provisions in an insurance contract, courts first look to the plain meaning of the language at issue." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) (citing *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008)). "If the language is clear that is the end of the inquiry." *Id*. "[I]n the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Id*. (quoting *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195 (N.J. 2001)).

"When an ambiguity exists, courts should interpret the contract in accordance with the 'reasonable expectations' of the insured." *Shotmeyer v. N.J. Realty Title Ins. Co.*, 948 A.2d 600, 605 (N.J. 2008) (quoting *Performance Ins. Co. v. Jones*, 887 A.2d 146, 152 (N.J. 2005)); *see Memorial Props.*, 46 A.3d at 532 ("The terms of insurance contracts are given their 'plain and ordinary meaning,' with ambiguities resolved in favor of the insured." (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992)). Still, "courts will not manufacture an ambiguity where none exists" and an "insurance policy is not ambiguous merely because two

---

[9] The parties' briefs assume New Jersey law controls. *See* D.E. 374 at 28-46; D.E. 376 at 9-10, 35, 43 n.13. "Where parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law." *Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 229 (D.N.J. 2023) (collecting cases) (internal quotation omitted); *see also Dejewski v. Nat'l Beverage Corp.*, No. 19-14532, 2024 WL 2744981, at *3 n.10 (D.N.J. May 29, 2024). Accordingly, the Court applies New Jersey law.

9

conflicting interpretations of it are suggested by the litigants." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270 (quoting *Fed. Ins. Co. v. Campbell Soup Co.*, 885 A.2d 465, 468 (N.J. App. Div. 2005)).

National Union argues, as it did in its renewed motion for summary judgment, D.E. 375 at 10 n.3, that "by its express terms . . . the 1999 Policy does not provide Personal Injury coverage." *See id.* at 3 (specifying that the Personal Injury provision applies only to the 1994 Policy and the 1997 Policy); *see also id.* at 33 n.15. Thus, there is no "coverage for all three policy periods in the 1999 Policy . . . for the RTI Action or the Class Actions." National Union Mot. at 4-5. The Court reviewed the 1999 Policy, which was issued to BD by National Union and was effective from October 1, 1999, to October 1, 2002. D.E. 374-2, Ex. 23. The Court finds that, in fact, there exists a "Personal Injury Exclusion," which amends the policy to include the following exclusion: "this policy does not apply to any Personal Injury." D.E. 366-2 at 309. BD did not dispute the exclusion's applicability and even conceded that the 1999 Policy "contains an explicit coverage exclusion for personal injury and/or [certain] advertising claims . . . ." D.E. 376 at 5. Nor did BD pretend in its description of the various policies that the 1999 Policy provided coverage for personal injury. *Compare id.* at 4 (describing the 1993 Policies as providing coverage for "claims alleging 'Personal Injury' and 'Advertising Liability'") *and id.* at 4-5 (describing the 1994 Policy and 1997 Policy together as providing coverage "for claims alleging Personal Injury or Advertising Injury"), *with id.* at 5-6 (describing the 1999 Policy—discussed separately from the 1994 Policy and 1997 Policy—as providing coverage only "for 'Advertising Injury'").

BD argues that National Union is not entitled to reconsideration on this issue because National Union failed to properly argue in the parties' renewed summary judgment briefs that the 1999 Policy, unlike the 1994 Policy and the 1997 Policy, provided no coverage for Personal Injury.

10

Opp'n at 5. The Court agrees that National Union did not clearly and consistently distinguish the 1999 Policy from the 1994 Policy and 1997 Policy.[10] The Court nevertheless finds that National Union sufficiently raised the distinction in its renewed summary judgment brief and is entitled to reconsideration on this issue. *See Ivan v. Cnty. of Middlesex*, 612 F. Supp. 2d 546, 551 (D.N.J. 2009) (explaining that reconsideration may be granted when "'dispositive factual matters' . . . were brought to the court's attention but not considered" (quoting *Yurecko v. Port Auth. Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (D.N.J. 2003)).

Therefore, the Court reconsiders its earlier finding that there is a triable issue of fact as to whether BD is entitled to coverage under the 1999 Policy Personal Injury provision for the RTI Action and the Class Actions. National Union demonstrates that it is entitled to a declaration that BD cannot obtain any Personal Injury coverage under the 1999 Policy. Therefore, the Court will **GRANT** National Union a declaration that BD is not entitled to coverage under the 1999 Policy for Personal Injury.

---

[10] National Union often lumped the 1999 Policy with the 1994 Policy and 1997 Policy in its arguments regarding what obligations it owed BD for coverage. *See, e.g.*, D.E. 375 at 10 ("BD seeks coverage under . . . the Personal Injury provision in the 1994, 1997, and 1999 Policies."); *id.* at 36 (arguing that BD was not entitled to coverage under "the Advertising Injury and Personal Injury provisions in the 1994, 1997, and 1999 Policies"); *id.* at 37 (arguing that "the 1994, 1997, and 1999 Policies provide coverage only for amounts . . . because of . . . Personal Injury or Advertising Injury"); *id.* at 38 (arguing "the Underlying Actions do not implicate the torts specified in the Advertising Injury and Personal Injury provisions in the 1994, 1997, and 1999 Policies"); *id.* at 39 ("National Union is entitled to summary judgment on BD's claims for coverage for the RTI Action and the Class Actions under the Advertising Injury and the Personal Injury provisions in the 1994, 1997, and 1999 Policies."). National Union distinguishes the 1994 Policy from the 1995 Policy and 1997 Policy in only two footnotes and one bullet point in its factual background section. D.E. 375 at 3, 10 n.3, 33 n.15. The Court grants reconsideration here but advises National Union that "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

### B. The Court Did Not Address the Statute of Limitations Applicable to the Business Disparagement Claims

In its SJ Opinion, this Court explained that because "[a]ntitrust actions must be commenced 'within four years after the cause of action accrued,'" BD could not have been liable in the RTI Action—which was filed in 2001—for conduct predating 1997. SJ Opinion at 17-18 (quoting 15 U.S.C. § 15b). For the same reasons, the Court found that BD could not have been liable in the Class Actions, which were first filed in 2005, for conduct predating 2001. *Id.*

BD asks this Court to clarify that its antitrust statute of limitations ruling does not apply to the business disparagement claims that BD settled in the Underlying Actions, which are potentially subject to a different statute of limitations. BD Mot. at 8. On the other hand, National Union argues that the Court's logic underlying its antitrust statute of limitations holding applies to the statute of limitations for business disparagement claims. National Union Mot. at 9. It follows, according to National Union, that because the statute of limitations for business disparagement claims is two years, BD could not have been liable in the RTI Action for business disparagement predating 1999 and could not have been liable in the Class Actions for business disparagement predating 2003.[11] *Id.*; *see also* National Union Opp'n at 4.

In its own opposition to BD's Motion, however, National Union argues that both clarification and reconsideration are appropriate *only* if there are "matters or controlling decisions the Judge has overlooked." National Union Opp'n at 2 (quoting L. Civ. R. 7.1). Yet, National Union does not identify any argument relating to the statute of limitations *for business disparagement claims* that this Court overlooked. In fact, National Union concedes that it did not

---

[11] The parties dispute whether the statute of limitations from Texas applies for business disparagement or whether the statute of limitations from New Jersey applies for business disparagement. For purposes of the present Opinion, the Court assumes, without deciding, that the applicable business disparagement statute of limitations is two years.

12

raise a statute of limitations defense for the business disparagement claims. National Union Mot. at 9. "[N]ew arguments will not be entertain[ed] in a Motion for Reconsideration" that could have been raised in the previous briefing. *Associated Builders and Contractors, Inc. v. City of Jersey City, New Jersey*, No. 14-5445, 2017 WL 5951582, at *3 n.7 (D.N.J. Nov. 29, 2017); *see also Brenner v. Local 514, United Bd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Judge Neals previously instructed National Union that it "may renew its statute of limitations arguments after discovery on an appropriate motion." D.E. 315 at 15 n.8. Having chosen to forgo these arguments or having overlooked their utility, National Union may not use a motion for reconsideration and/or clarification as an opportunity to raise those arguments now. *Bruni v. City of Pittsburgh*, 941 F.3d 73, 84 n.11 (3d Cir. 2019) ("Plaintiffs did not make this argument at summary judgment below, and it is therefore forfeited."). Nor do National Union *or* BD identify anything ambiguous or vague regarding the Court's holding that the antitrust statute of limitations meant that BD did not face liability for antitrust conduct predating the filing of the Underlying Actions by more than four years. Indeed, the SJ Opinion did not even mention the statute of limitations for business disparagement, much less ambiguously refer to it.

The Court will therefore **DENY** National Union's Motion regarding its request that this Court adjudicate a business disparagement statute of limitations argument that National Union did not make. The Court will also correspondingly **DENY** BD's Motion because the Court's holding was not ambiguous. National Union may advance its argument at trial, but it may not use a motion for reconsider/clarification to make new arguments. *Unimed Int'l, Inc v. Fox News Network, LLC*, No. 20-17335, 2024 WL 1585389, at *2 (D.N.J. Apr. 10, 2024).

### C. There May Be Coverage Under the 1993 Policies for Defense

In its SJ Opinion, this Court held that because the antitrust statute of limitations precluded BD's antitrust liability in the RTI Action for conduct predating 1997 and antitrust liability in the Class Actions for conduct predating 2001, BD "never faced potential liability in the Underlying Actions for conduct occurring during the coverage periods [under the 1993 Policies]." SJ Opinion at 17. BD asks this Court to clarify whether its ruling applies to only National Union's indemnity obligations or whether its ruling includes both National Union's indemnity coverage obligations and its defense coverage obligations. BD Mot. at 12. The Court clarifies that its ruling did not include National Union's defense coverage obligations.

New Jersey law distinguishes between the "fact-sensitive indemnity issues" that arise in insurance coverage cases and the duty to defend, which depends upon a facial examination of the underlying allegations. *General Accident Ins. Co. of Am. v. State, Dep't of Env't. Prot.*, 672 A.2d 1154, 1156 (N.J. 1996). Unlike the duty to indemnify, "[l]iability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy." *Voorhees*, 607 A.2d at 1255. To determine the scope of defense coverage, courts may also "loo[k] beyond a complaint to the underlying facts alleged by the claimant" to determine what allegations the insured faced. *Spartan Oil Co. v. New Jersey Property Liability Ins. Guard Ass'n*, No. 2487-10, 2012 WL 2052108, at *3 (N.J. Super. Ct. App. Div. June 8, 2012). As a result, "the duty to defend is often held to be broader than the duty to indemnify." *General Accident Ins.*, 672 A.2d at 1156. Regardless of the claim's merit, an "insurer has a duty to defend" if the underlying allegations correspond to the language of the policy. *Voorhees*, 607 A.2d at 1259. And if the allegations are "ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." *Id.* Under New Jersey law, it is immaterial

14

whether the insured actually faced liability. *Id.* All that matters is whether the cause of action, if sustained (even if groundless), could impose a liability covered by the policy. *Id.*

This Court previously found that "the mere presence of allegations of liability during the coverage period [of the 1993 Policies] does not survive the statute of limitations argument." SJ Opinion at 18. The Court clarifies that this cannot be grounds for precluding defense coverage under the 1993 Policies because the availability of defense coverage hinges upon whether the *allegations* in the Underlying Actions, if sustained, could have subjected BD to liability for injuries that fall within the scope of the policy's coverage provisions. *Voorhees*, 607 A.2d at 1259. It is not material that the statute of limitations for antitrust claims rendered the allegations in the Underlying Actions groundless. "[T]he duty to defend 'is not abrogated by the fact that the cause of action stated cannot be maintained against the insured in law or in fact . . . .'" *Spartan Oil*, 2012 WL 2052108, at *3 (quoting *Abouzaid v. Mansard Gardens Assocs. LLC*, 23 A.2d 338, 347 (N.J. 2011)). For the reasons explained below, this Court clarifies that its grant of summary judgment based on the antitrust statute of limitations extends only to National Union's obligation to provide indemnification coverage and not to defense coverage.

*First*, the Underlying Actions brought allegations premised upon conduct that took place during the period covered by the 1993 Policies. For example, in the RTI Action, BD faced allegations that it conspired to restrain trade through its "Block Terumo" advertising campaign. D.E. 374-2, Ex. 6 ¶¶ 32-33. BD's "Block Terumo" advertising campaign began in 1988 and ran past 1992, *i.e.*, the period covered by the 1993 Policies. D.E. 376-3, Ex. PP; D.E. 376-3, Ex. SS at 20:10-18, 103:11-23; D.E. 374-2, Ex. 6 ¶ 32. The plaintiffs in the Class Actions also relied on the "Block Terumo" campaign to similarly allege that the advertising campaign restrained trade through unfair competition and disparagement. D.E. 255-5, Ex. 18 ¶ 48; D.E. 377-2, Ex. CC ¶¶

15

72-73; *see also* SJ Opinion at 26-27 ("In the Class Actions, the underlying pleadings reference . . . BD's advertising campaigns."). In addition to being relied upon in the complaints, exhibits that were part of the "Block Terumo" advertising campaign during 1993 Policies' coverage period were used in various depositions in the Underlying Actions to support the underlying plaintiffs' allegations.[12] Therefore, a facial review of the complaints and a review of the underlying facts indicates that BD faced time-barred allegations about conduct that took place during the coverage period of the 1993 Policies.

*Second*, if sustained, the allegations in the Underlying Actions could have subjected BD to liability for injuries that fell within the Advertising Liability provisions of the 1993 Policies. As this Court previously explained, an "advertising injury" provision provides coverage under New Jersey law only if there is "(1) a causal connection between the advertising and the injury" and "(2) the injury falls within one of the . . . categories defined by the policy." *Id.* at 16 (citation modified) (quoting *Tradesoft Tech., Inc. v. Franklin Mut. Ins. Co.*, 746 A.2d 1078, 1087 (N.J. Super. Ct. App. Div. 2000)). This Court previously found that thee was a triable issue of fact regarding whether the advertisements in Exhibits KK and LL, including the "Block Terumo" advertisements, constituted an advertising injury.[13] The Court first found that a reasonable jury

---

[12] The documents in Exhibits KK and LL reference various advertising campaigns, including the "Block Terumo" advertising campaign, a "Safety Compliance Initiative" advertising campaign, and others. D.E. 375-4, Ex. 39 at 9-11 (demonstrating reliance in the Underlying Actions on the "Safety Compliance Initiative advertising campaign" to show that "BD competed unfairly and disparaged its competitors"), 11-12 (demonstrating reliance in the Underlying Actions on the "Block Terumo campaign" to show "that BD competed unfairly through its advertising and marketing campaigns to prevent Terumo, RTI, and others from gaining market share"). Both advertising campaigns, and others, spanned time covered by the 1993 Policies.

[13] Unlike the 1994 Policy, the 1997 Policy, and the 1999 Policy, the 1993 Policy does not limit Advertising Injury (referred to as "Advertising Liability" in the 1993 Policies) to "[i]njury arising *solely* out of [the insured's] advertising activities." SJ Opinion at 6 (emphasis added). Therefore,

16

could find that the advertisements in Exhibits KK and LL "resulted in unfair competition, or libel, slander, or defamation during the policy period of the 1993 Policies." SJ Opinion at 15-17. The Court then found that a reasonable jury could find that there was a causal connection between the advertisements and the injuries alleged by the plaintiffs in the Underlying Action. *Id.* at 17. If sustained, the alleged injuries—although meritless because of the statute of limitations—nevertheless would have fallen within the scope of the 1993 Policies' coverage provisions.

National Union cites *Spartan Oil* to support its argument that time-barred conduct does not necessarily give rise to defense liability. National Union Opp'n at 12-13. *Spartan Oil*, however, explains that what matters for determining the availability of defense coverage is "what the claimant actually alleged as the basis for [the insured's] liability." 2012 WL 2052108, at *6. In *Spartan Oil*, the underlying complaint alleged that the insured was responsible for oil contamination in violation of various New Jersey state laws. *Id.* at *1, 4. Although the conduct was indeed time-barred, the *Spartan Oil* court found that because the policy *excluded* coverage for contamination occurring after delivery, and because the alleged oil contamination could not have occurred without having first been delivered, the insurer was not obligated to provide defense coverage. *Id.* at *6. Here, there are no such analogous facts. The allegations in the Underlying Actions do not rely on conduct that is necessarily excluded from the terms of the relevant policies. Therefore, *Spartan Oil* does not entitle National Union to a declaration that it has no defense obligation under the 1993 Policies.

Accordingly, because there is a genuine issue of material fact regarding whether the underlying plaintiffs' *alleged* injuries fall within the scope of the 1993 Policies, National Union is

---

it is enough for purposes of defense coverage, that the injury alleged satisfy the causal connection and fall within a category defined by the policy.

not entitled to a declaratory judgment that it has no obligation to provide defense coverage under the terms of the 1993 Policies. The Court therefore clarifies that it did not grant summary judgment with respect to National Union's *defense* obligation under the 1993 Policies.

>   **D.    The Court Did Not Address Specific Coverage Periods Under the 1994, 1997, or 1999 Policies**

National Union argues that the Court should specify that its holding that National Union failed to demonstrate BD is not entitled to coverage under the Advertising Injury provision of the RTI Action does not apply to the final annual period in the 1999 Policy (*i.e.*, the period of time from 2001 to 2002). National Union Mot. at 5 (citing SJ Opinion at 22); *see also* D.E. 405-2, Ex. A. National Union argues that this must be the case because the RTI Action was filed *before* the final annual period in the 1999 Policy, and therefore, the related conduct and injury occurred prior to the start of that final policy period. National Union Mot. at 6.

However, this argument similarly fails to appear anywhere in National Union's renewed motion for summary judgment. Because National Union also chose to forgo the argument that the final annual period in the 1999 Policy could not provide coverage for the RTI Action, this argument is also forfeited, and the Court will not consider it upon a motion for reconsideration/clarification. *See Bruni*, 941 F.3d at 84 n.11; *see also supra* Section III.B. Accordingly, the Court will **DENY** National Union's Motion for reconsideration/clarification regarding its request that this Court adjudicate the argument that the final coverage period in the 1999 Policy should be excluded from coverage. Again, National Union may advance this argument at trial, but it may not maintain it here. *Unimed*, 2024 WL 1585389, at *2.

IV. CONCLUSION

For the reasons stated above, the Court will **GRANT in part** and **DENY in part** National Union's Motion and **GRANT in part** and **DENY in part** BD's Motion. Specifically, the Court will

- **GRANT** National Union's Motion requesting a declaration that BD is not entitled to any coverage under the Personal Injury provision in the 1999 Policy;

- **DENY** National Union's Motion requesting a declaration that BD is not otherwise entitled to coverage for the RTI Action under the final annual period in the 1999 Policy, and for the same reasons, **DENY** BD's Motion requesting clarification that there is a triable issue of fact regarding coverage for the RTI Action under the final annual period in the 1999 Policy;

- **DENY** National Union's Motion requesting that the statute of limitations for business disparagement claims entitles it to a declaration that BD is not entitled to coverage for either of the Underlying Actions under various policy periods in the 1994 Policy, 1997 Policy, and the 1999 Policy; and

- **GRANT** BD's Motion requesting clarification that there is a triable issue of fact regarding coverage under the 1993 Policies for defense coverage. An appropriate Order accompanies this Opinion.

Dated: September 16, 2025

_Evelyn Padin_
Evelyn Padin, U.S.D.J.

19